1  Todd E. Kennedy, Nevada Bar No. 6014
   Martina L. Jaccarino, Nevada Bar No. 5676
2  Black & LoBello
   10777 West Twain Avenue, Third Floor
3  Las Vegas, Nevada 89135
   702-869-8801 (Telephone)
4  702-869-2669 (Fax)
   tkennedy@blacklobellolaw.com
5  mjaccarino@blacklobellolaw.com

6  *Attorneys for Defendants Colleen McCarty,*
7  *Steve Kanigher and KLAS, LLC*

8              **UNITED STATES DISTRICT COURT**

9                    **DISTRICT OF NEVADA**

10  JACK FERM,

11        Plaintiff,                          Case No. 2:12-cv-00782-RFB-(PAL)

12  vs.

13  COLLEEN MCCARTY, an individual;      **DEFENDANTS' OPPOSITION TO**
    STEVE KANIGHER, an individual; and   **PLAINTIFF'S MOTION FOR**
14  KLAS, LLC, a Nevada limited liability **PRELIMINARY AND MANDATORY**
    company,                             **INJUNCTION**
15
16        Defendants.

17  **I.    INTRODUCTION**

18

19        For the second time in this action Plaintiff Jack Ferm ("Ferm") has filed a motion seeking a

20  mandatory injunction censoring speech.  Ferm previously sought a similar injunction in 2012,

    making essentially the same arguments.  *See* Dkt #22.[1]
21
22        At issue in his current motion (Dkt. #164) are three (3) news articles located at Defendants'

23  web site, www.8newsnow.com, which Ferm represents are Exhibits A, B and C attached to his

24  motion (Dkt #164-1). Ferm requests the Court issue an injunction to remove from those articles

25  because they purportedly state that "Plaintiff has been convicted of a crime and also stating that the

    crime was a Felony…." *See* Dkt #164 at 2:19-21.  The three articles that Ferm attached to his motion
26

27  ---
    [1] The Court did not reach the merits on that motion but denied it procedural grounds for lack of subject
    matter jurisdiction. *See* Dkt #112.

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

as Exhibits A, B and C, however are misleading because those are **not** the articles currently located on Defendants' web site.

The actual, current articles do not state that "Plaintiff has been convicted of a crime and also stating that the crime was a Felony" or similar language.  In fact, one of the articles expressly states that:

> Jack Ferm was not convicted but instead entered a "no contest" plea agreement with the AG's office, in which he plead no contest to one count of "Theft-obtaining money in excess of $2,500 by a material representation", and agreed to pay restitution to the charged victims. The plea agreement also allows that if Ferm makes full restitution by the end of a probation period, he may request an amended criminal information reducing his charge to "Attempted Theft," a misdemeanor.

*See* Declaration of Ron Comings, attached as Exhibit 1.

Ferm's proffered grounds for injunctive relief do not exist and the Court should deny his motion.  Moreover and notwithstanding Ferm's misrepresentations, established U.S. Supreme Court principles disfavor restraining the media and the relief sought by Ferm here is extraordinary.  *See Alexander v. United States*, 509 U.S. 544, 550 (1993)(the U.S. Supreme Court has explicitly held that "permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints") and *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)(prior restraints on speech constitute "the most serious and least tolerable infringement on First Amendment rights").

**Procedural History**

Ferm complains about three articles that were originally published on March 9, 2009, and November, 2011.  Ferm did not file suit in this case until May, 2012.  Dkt #1.  Upon filing suit, Ferm did not immediately file a motion seeking injunctive relief.  Rather, he only filed his first injunction motion on August 28, 2012.  Dkt. #22.[2]  The motion was denied when the Court dismissed the action

---

[2]  Defendants had filed their initial response to the complaint, a motion to dismiss, only a few days earlier, on August 13, 2012.  In response, Ferm commenced an avalanche of motions (*see Dkt. #s. 16, 22, 23, 30, 31, 54, 60, 61, and 63),* strongly suggesting that his intent was to harass defendants and drive up costs.

BLACK & LOBELLO

10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

on January 28, 2013, for lack of subject matter jurisdiction, granting leave to amend. Ferm did file an amended complaint on February 22, 2013. Dkt. #131.   But he never, until now (almost two *years* later), sought to renew his injunctive request.  There is no excuse for such delay.[3]

Ferm is asking this Court, at the beginning of this case when absolutely none of Defendant's stories have been adjudicated as defamatory, to limit Defendants' free speech rights and serve as editor and moderator of the media.  This Court has made it clear that it has *not* reached the merits regarding any of Defendants alleged statements, and that discovery should proceed.  Indeed, contrary to Ferm's conclusory assertions that this Court has already ruled on the merits, the Court on January 20, 2015 denied Ferm's motion for summary judgment on those very issues. Dkt. #173. The Court made no rulings finding any statement at issue defamatory. All the Court found was that Ferm had, with one exception, made sufficient allegations to proceed to discovery.

Injunctions are not proper in defamation actions—they are most certainly not proper at the beginning of a case.  However, even if, in theory, injunctions were proper, Ferm cannot satisfy the burden required for an injunction to issue.  Foremost, the current form of the articles that he complains of do not make the statements which Ferm alleges are defamatory.  Second, he has delayed far too long to seek an equitable remedy.  Third, he has not demonstrated a likelihood of success. Fourth, he has not shown the likelihood of irreparable injury.  Fifth, the balance of equities do not tip in his favor.  Finally, the injunction requested is not in the public's interest.  Ferm's motion must be denied.

## II.   FACTUAL STATEMENT

### A.   THE U.S. JUSTICE FOUNDATION, CONTEMPT PROCEEDINGS AGAINST FERM, AND  FERM'S ARREST AND PLEA AGREEMENT

---

[3]  Ferm has attempted to suggest he did not file a renewed motion because of the stay put in place by Magistrate Leen. The Magistrate actually put in place two stays. First a stay on *discovery* (on October 23, 2012) pending resolution of the dispositive motions and, Second, a stay on further proceedings while the Court addressed Ferm's avalanche of abusive motions. He could not, however, contend he believed that the stay prevented the filing of motions after he filed his Second Amended Complaint. First, he failed to object to Defendants filing a motion to dismiss (despite his long history of filing motions and seeking sanctions for any perceived procedural defalcation by Defendants) and *Ferm filed his own motion for summary judgment.* Dkt. #139. Ferm obviously knew there was absolutely nothing preventing him from filing his own motions, including one renewing his injunction motion.

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

1    In 2008 Jack Ferm masterminded a litigation mill called the U.S. Justice Foundation

2    ("USJF"), which promised to stop foreclosures and protect homeowners from losing their homes due

3    to foreclosure.[4]   Although Ferm, by his own admission, is not a licensed attorney, he and USJF

4    promised the public that, for a few thousand dollars, they would "prepare all of the paperwork

5    necessary to keep you in your home."[5]

6    Several Nevada judges soon discovered that these so-called "pro per plaintiffs" were actually

7    being "advised" by Ferm and USJF.  A succession of contempt proceedings quickly followed in both

8    state and federal district courts in Nevada, and Ferm was quickly ordered to shut down his operation.[6]

9    In the spring of 2009, during a six-week span, Ferm was (1) held in contempt by two judges[7] for

10   misrepresentations and the unauthorized practice of law,[8] (2) sued by the State Bar of Nevada for

11   the unauthorized practice of law[9], and (3) arrested by the Nevada Attorney General for multiple

12   counts of theft by misrepresentation.[10]  During one contempt hearing, Judge Hunt noted that he had

13   confronted a number of complaints prepared by USJF "[a]nd in each of those cases in which the

---

[4]  Dkt. #133-1; Dkt #133-2; Dkt. #16-1 at ¶2; Dkt. #133-7. Defendants factual background evidence relies in large part on the documents and evidence previously submitted to the Court as part of their Motion to Dismiss, Or in the Alternative, For Summary Judgment.  Those exhibits were submitted separately as Dkt. #133.

[5] *Id.*

[6]  Dkt. # 133-4 through 133-12.

[7]  The contempt proceedings are discussed at length in Defendants' Motion to Dismiss (Dkt. #132) and their Reply in Support thereof (Dkt. #144).

[8]  Dkt. #133-4 through 133-12. On February 17, 2009, Judge Ken Cory, Nevada State District Court Judge, directed the issuance of an Order to Show Cause to Ferm/U.S. Justice Foundation.  The hearing was set for March 10, 2009. (*See* Judge Cory OSC, Dkt. 133-8).  Judge Cory, however, elected to defer the hearing in light of other contempt rulings and pending proceedings. Judge Cory warned Ferm that he would refer the matter for further proceedings if the refund was not paid. (*See* Eighth Judicial District Court Minute Order, Exhibit G to Second Amended Complaint, and Transcript from 3/10/09 hearing, Dkt. #133-9).

[9] Dkt. # 133-13.

[10] Dkt. # 133-14.

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

1   Court has conducted hearings on Motions to Dismiss the Court has observed/found that the

2   complaints were frivolous and that they were without any foundation in law or fact."[11]

3       On March 11, 2009, immediately after Ferm's arrest, the Nevada Attorney General issued a

4   Press Release which described USJF as a "scheme" and "a mortgage rescue scam," whereby Ferm

5   "misled customers into believing his service would stop ongoing foreclosures on their homes without

6   the need to retain an attorney" and that "[t]he Attorney General's office has received numerous

7   complaints about misrepresentations made by Ferm, including several clients who paid thousands of

8   dollars to USJF with no legal documents having been prepared or filed on their behalf."[12]   Thus, by

9   the end of the second week of March 2009, Ferm was publicly exposed.  By then, Ferm and his front

10  organization were already <u>widely</u> known to the public as a sham operation misleading clients and

11  engaged in the unlawful practice of law.

12      In September of 2011, Ferm entered into a Plea Agreement with the Nevada Attorney

13  General.[13]  He agreed to plead *nolo contendere* to "THEFT - OBTAINING MONEY IN EXCESS

14  OF $2,500.00 BY A MATERIAL MISREPRESENTATION," which is a felony in Nevada.  Under

15  the terms of the Plea Agreement, Ferm agreed to pay $192,168.00 in restitution to his victims.  *If,*

16  *and only if,* Ferm pays the restitution according to the deadlines set forth in the Plea Agreement,

17  Ferm "may then request" that the State amend the Criminal Information to charge Ferm with

18  "ATTEMPTED THEFT" rather than "THEFT."  Ferm will then be sentenced accordingly.   There is

19  no provision in the Plea Agreement for any outcome other than formal entry of a conviction and

20  sentencing.   The Plea Agreement further provides that Ferm waives "the right to appeal the

21  conviction."[14]  ***To date, Ferm has <u>not</u> completed the restitution payments***.

22  **B.**    **THE ARTICLES THAT ARE THE SUBJECT OF FERM'S MOTION**

23      At issue are the following three web-articles that Ferm identifies in his declaration (*see* Ferm

---

24  [11] Dkt. #133-5 at 5:6-12.

25  [12] Dkt. # 133-14.

26  [13] Dkt. # 133-16.

27  [14] *Id.*

28

Dec., Doc. 164-1, at ¶9), which he describes as:

> Ferm Exhibit A.          "The Article that states: State AG's office Cracking Down on Mortgage Modification Scams" (Ferm Dec. at ¶9A).

The article Ferm attaches to his declaration as Exhibit A, is the November 15, 2011 Article bearing that heading.  However, that is not the current article on Defendants' web page.  *That article was amended in 2012 and no longer appears on the KLAS Website.*  *See* Declaration of Ron Comings, attached as Exhibit 1.  The current version of the article, the only version viewable by the public on KLAS's website, does not contain the language which Ferm claims is defamatory ("Plaintiff has been convicted of a crime and also stating that the crime was a Felony").  On the contrary, the current viewable article expressly states that Ferm was not (yet) formally convicted and clarifies Ferm's undisputed criminal proceedings:

> Jack Ferm was not convicted but instead entered a "no contest" plea agreement with the AG's office, in which he plead no contest to one count of "Theft-obtaining money in excess of $2,500 by a material representation", and agreed to pay restitution to the charged victims. The plea agreement also allows that if Ferm makes full restitution by the end of a probation period, he may request an amended criminal information reducing his charge to "Attempted Theft," a misdemeanor.

*See* Declaration of Ron Comings, attached as Exhibit 1-A.

> Ferm Exhibit B.          "The Article Designated Jack Ferm and Mario Sanders" (Ferm Dec. at ¶9B).

This document offered by Ferm is an incomplete document—no such document appears in that form on the KLAS website.  It appears to just be an *incomplete portion* created by Ferm of the amended article attached as Exhibit 1-A to this Opposition.  More importantly, however, the article does not contain the purportedly offensive language that Ferm complains about (*i.e.,* "Plaintiff has been convicted of a crime and also stating that the crime was a Felony").  Moreover, there is nothing in the article that is inaccurate or that Ferm otherwise disputes.  Ferm did plead *nolo contendere* to "theft by material misrepresentation."  Ferm is paying restitution.  If Ferm fully pays, he will plead

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801  FAX: (702) 869-2669

1    guilty to "attempted theft."[15]

2        Ferm Exhibit C.        March 10, 2009 Article Regarding Ferm.

3        This article also does not state that "Plaintiff has been convicted of a crime and also stating

that the crime was a Felony."  This article recounts court <u>contempt</u> proceedings in front of Judge

4    Cory on March 10, 2009, which is not the subject of Ferm's Motion.   More importantly, however,

5    this article is from 2009.  The statute of limitations on defamation is two (2) years.  NRS 11.190(4).

6    Ferm admits he was aware of the story at the time it was done (Motion at p.8), but did not file suit

7    until May, 2012.  Any claim based upon this article is time barred.

8    **III.    ARGUMENT**

9        Ferm seeks a mandatory injunction that would require KLAS to remove from its website

10   stories that he believes are defamatory because they summarize the outcome of his criminal case as

11   a "conviction."  But those stories no longer appear on the KLAS website.[16]   The one old story he

12   believes is defamatory because he disputes whether he was "ordered" to refund his victim's money

13   by that particular judge is of no moment even if it were not time barred.   The story is true or

14   substantially true, but also, there is no dispute that Judge Hunt found him in contempt for the

15   unauthorized practice of law and ordered him to refund all his victims' money, and Judge Delaney

16   entered a similar order.[17]  He cannot show defamation, but there is no possibility of irreparable harm

17   where the "order" he disputes existed was ordered by two *other* judges.

18       Because Ferm's request is barred by the First Amendment and because Ferm cannot satisfy

19   the elements required of a party moving for a mandatory injunction, this Court must deny Ferm's

20   request.

21   **A.    AN INJUNCTION IS A PRIOR RESTRAINT ON KLAS' SPEECH AND STRONGLY**

**DISFAVORED**

22

23       Ferm is asking the Court for extraordinary measures which are rarely appropriate, and are

24   expressly improper here.  Ferm seeks an Order from this Court requiring KLAS to take down certain

25   ───────────────

[15] Dkt. # 133-16.

26

[16] Comings Dec., Exh. 1.

27

[17] Dkt. #s 133-7 and 133-12.

28

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801  FAX: (702) 869-2669

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

1  articles from its website.[18]  Ferm's request implicates KLAS' First Amendment rights and the Court

2  must scrutinize under the highest legal standards, those imposed by the U.S. Constitution.

3  The Supreme Court has explicitly held that "permanent injunctions—i.e., court orders that

4  actually forbid speech activities—are classic examples of prior restraints."  *Alexander v. United*

5  *States*, 509 U.S. 544, 550 (1993).  Because prior restraints on speech constitute "the most serious

6  and least tolerable infringement on First Amendment rights,"  *Neb. Press Ass'n v. Stuart*, 427 U.S.

7  539, 559 (1976), the Court has declared that prior restraints against speech are presumptively invalid.

8  *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971)(a party moving for a prior restraint

9  carries a "heavy burden" to justify the restraint); *Neb. Press Ass'n*, 427 U.S. at 589 (Brennan, J.,

10  concurring)(the First Amendment provides "greater protection against prior restraints than it does

11  against subsequent punishment for a particular speech")(emphasis removed)); *Long Beach Area*

12  *Peace Network v. City of Long Beach*, 574 F.3d 1011, 1021 (9th Cir. 2009).

13  Importantly, this presumption of invalidity applies even when the speech at issue is not the

14  type that is constitutionally protected.  *See e.g. Near v. State of Minnesota*, 283 U.S. 697, 736

15  (1931)(rejecting restraint on publication of any periodical containing "malicious, scandalous and

16  defamatory" matter); *Konigsberg v. Time, Inc.*, 288 F. Supp. 989, 989 (S.D.N.Y. 1968)("To enjoin

17  any publication, no matter how libelous, would be repugnant to the First Amendment to the

18  Constitution."); *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089 (C.D. Cal. July 20,

19  2012)(holding that while "vile, hurtful speech . . . has the capacity to cause real and significant injury

20  . . . the private harm suffered by victims of the speech is a lesser harm than the harm that would be

21  done to our constitutional traditions if courts were to carve out exceptions to the traditional rule and

22  enjoin speech.").

23  And, Courts are extremely reluctant to issue an injunction in the area of First Amendment

24  rights where speech has not yet been ruled defamatory.  *See Evans v. Evans*, 162 Cal. App. 4th 1157,

25  1167-69, 76 Cal. Rptr. 3d 859, 867-69 (Cal. App. Ct. 2008)(cited by Ferm) (holding invalid a

---

26  [18] Ferm also, without citation to authority or evidence also suggests an order directing the removal of links
27  from third party websites.  This, of course, is outside of KLAS's power and would restrict the speak of third
parties not before the court.

preliminary injunction restricting speech not found defamatory after a trial on the merits).[19]   As

stated by a California court, "[w]hile [a party] may be held responsible for abusing his right to speak

freely in a subsequent tort action, he has the initial right to speak freely without censorship." *Gilbert*

*v. Nat'l Enquirer, Inc.*, 51 Cal. Rptr. 2d 91, 97 (Cal. 1996).

Similarly, the validity of a prior restraint is subject to higher scrutiny when the restraint will

be imposed upon the news media reporting on criminal matters. *Nebraska Press Ass'n*, 427 U.S. at

559. As articulated by the *Nebraska Press Ass'n* Court:

> A responsible press has always been regarded as the handmaiden of effective judicial
> administration, especially in the criminal field.   Its function in this regard is
> documented by an impressive record of service over several centuries.   The press
> does not simply publish information about trials but guards against the miscarriage
> of justice by subjecting the police, prosecutors, and judicial processes to extensive
> public scrutiny and criticism.
>
> * * *
>
> We have learned, and continue to learn, from what we view as the unhappy
> experiences of other nations where government has been allowed to meddle in the
> internal editorial affairs of newspapers.   Regardless of how beneficent-sounding the
> purposes of controlling the press might be, we . . . remain intensely skeptical about
> those measures that would allow government to insinuate itself into the editorial
> rooms of this Nation's press.

427 U.S. at 559-61 (internal citations omitted).

Injunctions issued in the area of First Amendment rights are also disfavored because of their

practical efficacy. *Id.* at 565.   To that end, because an injunction "must be couched in the narrowest

terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the

essential needs of the public order," *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S.

175, 183 (1968), the usefulness of an injunction is debatable, particularly when it runs the risk of

restricting otherwise free speech. *Neb. Press Ass'n*, 427 U.S. at 56; *N.Y. Times Co. v. United States*,

403 U.S. 713, 744 (1971)(Marshall J., concurring)(noting "a court of equity will not do a useless

thing.").[20]

---

[19] *See* Dkt. 22 at p. 11.

[20]  *See also*, *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087 (C.D. Cal. July 20, 2012).

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

Supreme Court jurisprudence demonstrates that injunctions are not appropriate in defamation actions. *See e.g. Near*, 283 U.S. at 718-19. Rather, monetary damages and other punishments to remedy past speech are the favored method. *Id.* (noting "[p]ublic officers, whose character and conduct remain open to debate and free discussion in the press, find their remedies for false accusations in actions under libel laws providing for redress and punishment, and not in proceedings to restrain the publication of newspapers and periodicals."); *see also Pennekamp v. Florida*, 328 U.S. 331 (1964) (reversing lower court's judgment of contempt against a newspaper editor who purportedly published libelous statements about judges, and noting "when the statements [about a judge] amount to defamation, a judge has such remedy in damages for libel as do other public servants."); *Cmty. for Creative Non–Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987) ("The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.") (internal citation omitted).

Here, Ferm seeks a mandatory injunction that would censor speech that has not been found defamatory. As a matter of law and public policy, an injunction in the area of First Amendment rights is an improper prior restraint.

Ferm acknowledges that there is a "modern" trend in a few jurisdictions which allows injunctive orders *only after* a final determination that the speech in question is defamatory. *See e.g., Balboa Island village Inn v. Lemen*, 156 P.3d 339 (Cal. 2007). The central tenant of those cases, however, is that a remedial injunction may be proper in some circumstances, *but only after a full trial on the merits. Id.* Ferm fails, however, to cite a single Nevada case adopting such a rule.

Ferm's reliance on *San Antonio Cmty. Hosp. v. Southern Cal. Dist. Council of Carpenters*, 125 F.3d 1230 (19th Cir. 1997) as creating a blanket authorization for preliminary injunctions is misplaced. That case is a unique *labor* case sharing no similar facts or circumstances. There, a disgruntled labor union having a dispute with a contractor performing work within a hospital picketed *the hospital* (with which the Union had no dispute) with a banner proclaiming "this medical facility is full of rats." *Id.* at 1233. There was no dispute regarding lack of truth—all admitted that the proclamation was false and let the public to wrongly believe the hospital suffered from a rodent

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

infestation. *Id.* at 1236.[21] That is quite the opposite of the facts in this case, where there is a live dispute as to truth or substantial truth of the stories at issue (and where the court has denied cross dispositive motions, ruling that discovery is necessary before reaching the merits) which involve the media reporting on matters of public concern regarding Ferm's legal and criminal troubles, where Ferm is a public figure, requiring that he prove actual malice *by clear and convincing evidence.*[22]

**B.    THE STANDARDS GOVERNING PRELIMINARY AND MANDATORY INJUNCTIONS ALSO COMPEL DENIAL HERE**

In addition to the fact that injunctions in the area of First Amendment rights are disfavored, injunctions are also limited generally. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "'A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.*, quoting *Winter v. Natural Resources Defense Counsel*, 555 U.S. 7, 24 (2008). Therefore, in general, a party seeking a preliminary injunction must establish four factors: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent the issuance of an injunction, (3) the balance of equities tips in his favor, and (4) the injunction is in the public interest. *Cottrell*, 632 F.3d at 1131.

In cases like this one, however, where Ferm seeks mandatory preliminary relief, Ferm is subject to an elevated burden. *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994). This heightened standard is applied because Ferm does not merely seek to preserve the status quo; rather, he seeks to alter the status quo by requiring Defendants to take affirmative action, which cannot be undone after a trial on the merits. *Id.* Therefore, this Court must be "extremely cautious about issuing a preliminary injunction" unless Ferm demonstrates the law and the facts are ***clearly in his favor. Id.***; *Chudacoff v. University Medical Center of Southern Nevada*, 609 F. Supp. 2d 1163, 1178 (D. Nev. 2009). Indeed, "mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is

---

[21] *San Antoinio* has been criticized and limited, both in its dissent (Kozinski), and other cases. *See e.g. Oakley, Inc. v. McWilliams,* 879 F.2d 1087, 1090 (C.D. Cal. 2012) (noting that in the "infrequent instances where other courts have upheld injunctions of defamatory speech, there have usually been unique and extenuating circumstances, and vigorous dissents.").

[22] *Nevada Indep. Broad. Corp. v. Allen*, 99 Nev. 404, 414, 664 P.2d 337, 344 (1983).

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801  FAX: (702) 869-2669

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

capable of compensation in damages.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)(quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)); see *also Venetian Casino Resort v. Local Joint Exec. Bd.*, 45 F. Supp. 2d 1027, 1031 (D. Nev. 1999)(emphasizing that mandatory injunctions are disfavored).

Ferm cannot satisfy the four elements required for a mandatory injunction. His case is doubtful at best, and the law and the facts are *not* in his favor.

## C.   FERM FAILED TO MEET HIS BURDEN

The original stories on KLAS's website which Ferm primarily complains about used the word "conviction" to describe and summarize the outcome of his criminal action. One of the core threshold issues in this case is whether that characterization is true or substantially true. *See Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82 (2002) (statement not defamatory if it is absolutely true or substantially true), *citing Mark v. Seattle Times,* 635 P.2d 1081, 1092 (1981) (The doctrine of substantial truth provides that minor inaccuracies do not amount to falsity unless the inaccuracies "would have a different effect on the mind of the reader from that which the pleaded truth would have produced.").[23]

However, for purposes of this motion seeking removal of stories from the KLAS website, those stories (originally uploaded in November, 2011) are irrelevant. Both were amended in 2012 to clarify the timing of formal entry of a conviction for Ferm under his Plea Agreement. The original versions no longer appear on the website and Ferm's request that they be ordered removed is therefore moot. *See John Doe #1 v. Reed*, 697 F.3d 1235 (9th Cir. 2012).

While Ferm's motion spends significant effort mischaracterizing this Court's rulings and complaining about those earlier articles, the Motion fails entirely to present any evidence or

---

[23] Defendants have briefed for the Court on several occasions the law and the facts which make the use of that word in connection with Ferm's criminal case true or substantially true in a defamation context. *See* Dkt.#s 10, 26, 32, 34, 37, 45, 132, 144, which are incorporated by reference.

argument as to how or why the articles currently available are defamatory.

### 1. FERM CANNOT MAKE A SHOWING THAT HE HAS A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE HE CANNOT ESTABLISH THE ELEMENTS OF A DEFAMATION CLAIM

In Nevada, a claim for defamation requires the Plaintiff to prove four elements: (1) a false and defamatory statement by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Pegasus v. Reno Newspapers, Inc.,* 57 P.3d 82, 90 (Nev. 2002). Where, as here, the plaintiff is a public figure, the requisite intent required is elevated from negligence to actual malice. *Pegasus v. Reno Newspapers, Inc.,* 57 P.3d 82, 90 (Nev. 2002). Therefore, to succeed, Ferm must demonstrate, *by clear and convincing evidence,* that Defendants acted with reckless disregard for the truth. *Nevada Indep. Broad. Corp. v. Allen,* 664 P.2d 337, 344 (Nev. 1983).

### a. FALSITY IS A NECESSARY ELEMENT OF THE CLAIM; THE AMENDED ARTICLES ARE TRUE

As to the amended Articles, Ferm's primary complaint is not relevant. The articles accurately reflect his Plea Agreement and do not characterize it as a current "conviction." To be sure, any issues he wishes to continue raise as to the content and the description of his Plea Agreement in the amended articles have not been detailed in his Motion—the articles themselves contain accurate descriptions of his Plea Agreement and how his Plea Agreement will ultimately resolve.

For example, the amended article "State AG's office Cracking Down on Mortgage Modification Scams" (Exh 1-A), accurately reflects that (1) Ferm was indicted, (2) he pled no contest to one count of theft/obtaining more than $2,500 by material misrepresentation and (3) agreed to pay $192,168.00 in restitution. These are all facts contained within Ferm's Plea Agreement. Dkt. # 133-16. The article *also clarifies* the timing issue with respect to formal entry of conviction for Ferm, which is also simply a reflection of the Plea Agreement which expressly provides that, if he fully pays restitution, he will plead *guilty* to "attempted theft." *Id.*

The only other issue raised by Ferm is the use of the word "scam,' Ferm also protests that Defendants maligned him by describing him and USJF as a "scam." Describing Ferm as a "scam"

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

1    is not actionable and will not support a defamation claim.  First, Defendants did not use "scam" to

2    describe Ferm or USJF.  Instead, the word "scam" is used to describe the charges against him: both

3    news reports Ferm complains of state that Ferm was "**indicted** by the grand jury in October 2009

4    *for* running a scam."[24]   This is a substantially true description of the crimes Ferm was charged

5    within the Grand Jury Indictment.[25]

6            Second, statements of opinion are not actionable because they are not assertions of "fact"

7    that can be proven either true or false.  *Pegasus* at 87.  A statement is an opinion when a reasonable

8    person would likely understand it as such, rather than a statement of existing fact.  *Nevada Ind.*

9    *Broadcasting*, 664 P.2d at 342.  Here, any reference to Ferm as a "scam" or as engaged in a "scam"

10   is an opinion and therefore is not actionable.[26]

11           Even if the references to Ferm as a "scam" are considered to be statements of fact implying

12   illegal conduct, those statements are not actionable because they are true or substantially true.

13   *Pegasus,* 57 P.3d at 90 (truth is a defense to defamation).  A "scam" is defined as "a fraudulent or

14   deceptive act or operation."  MIRRIAM-WEBSTER'S NEW UNABRIDGED DICTIONARY at 1615 (1983).

15   The Grand Jury Indictment charges Ferm with making misrepresentations to consumers in an effort

16   to obtain payments from them.[27]   Thus, Ferm was arrested, charged and prosecuted for his

17   involvement with a "scam."[28]   Upon Ferm's arrest, the AG issued a Press Release referring to Ferm's

---

18   [24]  Comings Dec., Exh. 1-A and 1-B.

19   [25]  Dkt. #133-15; #133-14.

20   [26]  *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987) (discussion of interactions with timeshare
21   salespeople, together with conclusion that it was a "scam," was protected by the First Amendment. "The
     lack of precision [in the meaning of the word 'scam' makes the assertion 'X is a scam' incapable of being
22   proven true or false."); *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1012-13 (Cal. App. Ct. 2001)
     (dismissing libel claim because describing plaintiff as a "scam" constituted nonactionable opinions);
23   *KCNC-TV v. The Living Will Center*, 879 P.2d 6, 11-12 (Colo. 1994) (a news broadcast referring to the
     marketing of a living will package as a "scam" was protected); *Maid of Mist Corp. v. Alcatraz Media, LLC*,
24   2007 WL 7119047, at *19 (N.D. Ga. 2007) (entering summary judgment against defendant on slander
     counterclaim because description of defendant as a 'scam' was substantially true where the evidence showed
25   that defendant had deceived customers).  *See* Dkt. #133-7 at p.4 (Judge Hunt finding Ferm had "misled
     clients").

26   [27]  Dkt. # 133-15.

27   [28]  *Id.;* Dkt. #133-14.

28

activities as a "scheme" and "a mortgage rescue scam."[29]  The admissions in Ferm's Plea Agreement also support the conclusion that USJF was a "scam"—he admits guilt (at least as to the attempted crime and admits that the State could prove all elements of the charges against him.[30]

Finally, as to the March, 2009 article, to the extent it is not barred by the statute of limitations, it similarly is true or substantially true.  The Minute Order (attached to the Second Amended Complaint) reflects the following facts: (1) Judge Cory was aware of Judge Hunt's Order in Federal Court and various other lawsuits in the District Court; (2) Ferm's attorney argued that Ferm intended to comply with Judge Hunt's Order—i.e., refund money paid to him and the US Justice Foundation by so-called "clients"; (3) the State Bar had filed a Complaint against Ferm the day before the hearing; (4) Ferm agreed to refund $1,000 to Ms. Jayne; (5) the Court continued the matter to allow Ferm the opportunity to refund Ms. Jayne; (6) if Ferm did not refund Ms. Jayne, Judge Cory intended to revisit the issue by transferring it to Department 15, because that department was handling the Complaint filed by the State Bar of Nevada and was thus related to the contempt proceedings.

The transcript of the proceedings further undermines Ferm's arguments, and shows a dispute between the parties of material facts.[31]  After discussing the various other proceedings filed against Ferm, the following soliloquy occurred:

> THE COURT:    All right, then let's do this.  Rather than even refer this to Department 15, upon [the representation that Ferm will pay Jayne in three days] we will simply wait. I will put this on my chambers calendar so that nobody has to be present in court again.  We won't require a further court appearance.  If I am provided with proof of receipt by Ms. Jayne of that amount of money, I'm going to end this proceeding.

---

[29]  Dkt. # 133-14.

[30]  Dkt. #133-16. Additionally, Ferm actively deceived and misled the public by claiming he was capable of representing clients in legal proceedings even though he is not a member of the Bar in any state. (Dkt. #133-7 at p. 3-4).  Judge Hunt determined Ferm "misled clients of the U.S. Justice Foundation to believe they were being represented by attorneys." (*Id.* at 4:4-5). Judge Hunt and Judge Delaney both based their contempt findings, in part, on findings that the form complaints and other legal filings prepared by USJF were "frivolous."  These facts also indicate that any reference to Ferm and USJF as a "scam" are accurate and Ferm cannot meet his burden of showing a likelihood of success.

[31] Dkt. # 133-9, at p. 16.

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801  FAX: (702) 869-2669

****

> If it is not paid, if I don't have proof of payment, then I will go ahead and refer it to Department 15.

As shown, Judge Cory <u>did</u> require Ferm to repay Ms. Jayne <u>upon Ferm's representation to do so, or face the risk of legal consequence — i.e., contempt proceedings considered by a different Department</u>. By continuing the hearing to allow Ferm the opportunity to repay Ms. Jayne, Judge Cory <u>deferred</u> the hearing. Thus, Ferm has failed show that he is likely to prevail on this issue—the article is true or substantially true and *certainly the article has not been adjudicated as defamatory.*

**b.    The Stories At Issue Are Absolutely Privileged, Thus Negating The Second Element**

Ferm cannot prevail additionally claims because the stories and articles at issue are absolutely protected by the fair report privilege. The stories were fair and true descriptions of Ferm's criminal prosecution, and consequently he is unlikely to prevail.

When a defamation claim concerns reports on judicial proceedings, a substantially true report of the proceedings, in addition to not being defamatory, is privileged. This privilege provides absolute immunity for fair and accurate reports with respect to court proceedings. *Dorsey v. Nat'l Enquirer*, 973 F.2d 1431, 1434-37 (9th Cir. 1992). As the Ninth Circuit has recognized, courts should account for "a 'certain amount of literary license' and exercise of a 'degree of flexibility' in determining what is a 'fair report.'" *Id.* When the news media reports on matters of public interest that involve legal and judicial proceedings, the First Amendment requires that a report be "fair and true." *Pegasus*, 57 P.3d at 88; *Unelco Corp.*, 912 F.2d at 1057. "The law has long recognized a special privilege of absolute immunity from defamation given to the news media and the general public to report newsworthy events in judicial proceedings." *Sahara Gaming v. Culinary Workers Union Local 226,* 984 P.2d 164, 166 (Nev. 1999).

When a news report involves legal terms or technicalities, courts recognize that some inaccuracies are bound to occur. *Pegasus,* 53 P.3d at 88; *Hopkins v. Keith*, 348 So. 2d 999, 1002 (La. Ct. App. 1977). In other words, errors in labeling or errors in terminology do not prevent a

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

statement from being substantially true. *Dorsey v. Nat'l Enquirer*, 973 F.2d 1431, 1434-37 (9th Cir. 1992). In similar fashion, a media report is "fair and true" if it captures "the substance, the gist, the sting of the libelous charge." *Crane v. Arizona Republic*, 972 F.2d 1511,1519 (9th Cir. 1992). Thus, the defamatory character of an imprecise report is measured by its impact on the average reader. *Id*. Only where the challenged content produces a different effect on the reader will the report will be considered untrue under the fair report privilege. *Id*.

Hence, a Louisiana court dismissed a defamation claim where the media reported that plaintiff was a "convicted gambler" and "ha[d] been convicted of running a gambling game," when, in fact, plaintiff had not been convicted, he had forfeited a substantial bond for gambling related charges. *Hopkins*, 348 So. 2d at 1000. The *Hopkins* court found the editorial was "substantially true." *Id*. And, while the court agreed with plaintiff that a conviction may be technically different from a bond forfeiture, the court refused to find the statements defamatory:

> While a bond forfeiture is not technically or legally the same as a conviction and carries significant legal distinctions, the similarities between the two, particularly in the lay mind, cannot be overlooked. A conviction is a judicial determination of guilt. A forfeiture of bond is a decision by the person charged not to appear for trial, thereby avoiding a judicial determination of guilt or innocence. The Legislature has equated bond forfeiture to convictions in some instances. . . . Viewed in context, the error is relatively insignificant and a relatively minor deviation from the truth.

*Id*. at 1002. In emphasizing the error or inaccuracy as insignificant, the Court further stressed that "the media must be allowed 'breathing space'" to avoid a "chilling effect" on speech. *Id. See also Dorsey v. Nat'l Enquirer*, 973 F.2d 1431, 1437 (9th Cir. 1992) (the media must be afforded some leeway in determining what constitutes a "fair report.").

Here, Defendants reported to the citizens of Nevada that the Attorney General saw people taking advantage of desperate homeowners, and took action to successfully prosecute those who were preying on the collapsed housing market. Ferm entered into a Plea Agreement admitting the state could prove the facts, and agreed to plead guilty to at least attempting the crime charged. Defendants' stories and articles regarding Ferm's legal plights are substantially true and accurate. Defendants cannot be held liable merely because Ferm does not like the stories, or because Ferm has found a few hyper-technical inaccuracies (which at most amount to a distinction of the *timing* of his

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801  FAX: (702) 869-2669

1  conviction and a quibble about whether a particular judge "ordered" him to repay money or he

2  volunteered—having already been ordered by other judges to make refunds) or because Ferm inserts

3  words and statements *not* found in the reports at issue and interprets the stories different than the

4  average reader would.  *Grillo v. Smith*, 144 Cal. App. 3d 868, 874, 193 Cal. Rptr. 414, 418 (Cal.

5  App. Ct. 1983) ("A publication is not responsible for every strained interpretation a plaintiff might

6  put on its words).  Because the stories at issue are "fair and true," Ferm is unlikely to succeed on his

7  claims and the requested injunctive relief must be denied.

8          **c.**       **Ferm Has Not Established That Defendants Acted With Malice**

9        As stated, when a plaintiff in a defamation action is a public figure, the plaintiff must prove

10  that Defendants acted with actual malice when they expressed the supposed defamatory statements.

11  *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002); *Nevada Indep. Broad. Corp. v. Allen*,

12  664 P.2d 337, 344 (Nev. 1983).

13                  **i.**       **Ferm is a Public Figure**

14        Ferm appears to concede that he is a public figure, since he continues to argue the malice

15  standard in his court filings.  There are two categories of public figures: general public figures and

16  limited public figures.  *Pegasus*, 57 P.3d at 91.  General purpose public figures are those who

17  "'achieve such pervasive fame or notoriety that [they] become[ ] a public figure for all purposes and

18  in all contexts.'"  *Id.*, quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342-43 (1974).  A limited

19  purpose public figure is a person who has achieved fame or notoriety in a particular area of public

20  concern by "voluntarily inject[ing] himself . . . into a particular public controversy or public

21  concern."  *Id.*  In *Pegasus*, the Nevada Supreme Court conclusively determined that a person or

22  entity that offers goods or services to the public and advertises its good and services to the public is

23  a limited public figure for the purpose of news reporting covering the quality of those services.  57

24  P.3d at 92 ("We agree with our sister states' rational that a place of public accommodation has

25  voluntarily injected itself into the public concern for the limited purpose of reporting on its goods

26  and services.").

27        Ferm is, at the very least, a limited public figure.  Starting in 2008 and commencing through

28

today, Ferm voluntarily and pervasively thrust himself into the middle of what has been termed the "mortgage/foreclosure crisis" in Southern Nevada—an area that is unquestionably a matter of public concern.  By spearheading USJF and acting as its principal leader, spokesperson, and cheerleader, Ferm became a limited public purpose figure in order to attract potential "clients" and offer services to these "clients" facing foreclosures.  Ferm acknowledges his extensive, personal involvement in this area.  For example in 2008, Ferm referred to himself as a "regular" on a television station—KVVU Fox 5 Las Vegas—where he acted as a so-called "Consumer Advocate" to "inform the public of the extent of the foreclosure problem and how that could be stopped."[32]

Ferm also contacted public officials regarding the crisis.[33]   And, Ferm's biography brags about his numerous guest appearances on radio and television shows "across the country" as well as his authorship of books regarding asset protection.[34]  Importantly, at least *nine* witnesses called to testify against Ferm before the Grand Jury saw Ferm on television—during one of his KVVU Fox 5 broadcasts—and were therefore persuaded to contact Ferm and USJF *because of* the broadcast.[35] Certainly, this fact alone demonstrates that Ferm voluntarily thrust himself in the public debate regarding the "mortgage/foreclosure crisis" and therefore made him a limited public figure for the purposes of this area of public interest.  As a result, Ferm must demonstrate that Defendants acted with actual malice when they reported the alleged defamatory statements.

### ii. Ferm Has Not and Cannot Establish that Defendants Acted With Malice

Nevada law defines actual malice as a defendant's "knowledge of the falsity of the statement

---

[32]   *See* Blog entry, 133-21; Verified Complaint, Dkt. 133-3 at ¶13.  These were actually infomercials designed to advertise the US Justice Foundation, and Ferm paid for the airtime. (Exhibit 15 at 94:17-95:20). However, although they were paid advertisements, they were deceptively presented as though they actual news segments and many members of the public believed they were news segments. (*Id*. at 95:21-24).

[33] Dkt. 133-3 at ¶13.

[34]  Dkt. # 133-1.

[35]  Grand Jury Transcripts, Dkt. #32-14 through 32-17 at pp. 12-15, 36-37, 53, 79, 107, 128, 177, 190-191, 208).  As discovery in this case proceeds, Defendants expect to present significantly more evidence establishing Ferm was a public figure.

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

or a reckless disregard for the truth."[36] *Nevada Indep. Broad. Corp. v. Allen*, 99 Nev. 404, 414, 664 P.2d 337, 344 (1983), citing *New York Time Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Reckless disregard, in turn, is defined as "a 'high degree of awareness of [the] probable falsity [of the statement].'" *Id.*, quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). The test is therefore a subjective one—i.e., whether the Defendant "'entertained *serious doubts*" regarding the truthfulness of the statement. *Id.* at 414-15, citing *St. Amant v. Thompson*, 390 U.S. 727 (1968). "[T]he focus [is] on what the defendant *believed* and *intended to convey,* not what a reasonable person would have understood the message to be." *Id.* at 415.

The Supreme Court has previously articulated three types of circumstantial evidence that may support a finding of actual malice: evidence the report was (1) fabricated or a product of the reporter's imagination; (2) based on an unreliable source, and; (3) "so inherently improbable that only a reckless man would have put them in circulation." *St. Amant*, 390 U.S. at 732. Importantly, failure to investigate the story, by itself, does not establish actual malice. *St. Amant*, 390 U.S. at 732; *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)(holding that "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.").

Here, Ferm cannot demonstrate Defendants acted knowing their reports were false or with reckless disregard for the truth. Defendants have already submitted sworn testimony denying such allegations.[37] In response, Ferm has offered . . . nothing but his bare contrary conclusions.[38]

Defendants did not base their stories on "unreliable sources," nor did they entertain "serious

---

[36] *Cf.* NRS 41.332 (defining "actual malice" as "that state of mind arising from hatred or ill will toward the plaintiff and does not include that state of mind occasioned by a good faith belief in the truth of the publication or broadcast.")

[37] *See* Kanigher Dec., Dkt. #32-2; McCarty Dec., Dkt. #32-1.

[38] Ferm discusses, without citation beyond referencing "Wikipedia" what he claims are tenants of journalism ethics. Wikipedia is not proper authority. *See* Cobello v. DeVito, 832 F. Supp.2d 1231, 1235 n1. (D. Nev. 2011) ("this is poor evidence, as any person on Earth (or with a communications link to Earth from outer space, for that matter) can edit a Wikipedia article, including Plaintiff herself."). In any event, the standards and tests for actual malice in defamation are constitutional in nature and defined by Supreme Court precedent. Ferm's discussion of some person's view of journalism ethics is *apropos of nothing* in this context.

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

doubts" about the truthfulness of their reports or about the veracity of the source.[39] *St. Amant, supra*; *Buendorf v. Nat'l Public Radio, Inc.,* 822 F. Supp. 6, 12 (D.D.C. 1993)(finding that even where defendants "could have been more diligent in their research," the failure to do so does not constitute "reckless disregard."); *Nanji v. Nat'l Geographic Soc'y,* 403 F. Supp. 2d 425, 430 (D. Md. 2005) (determining that plaintiff's defamation claim failed as a matter of law because defendant publication had relied upon court records and statements from prosecutors). Similarly, Defendants' news stories were not fabricated or a product of Defendants' imagination. They were, at worst, a variance in legal terminology.

Having reviewed the Plea Agreement and received a list from the Attorney General, Defendants believed their reports were true. Both stories that Ferm complains of provide a true and accurate summary of various prosecutions in Nevada of people preying on homeowners attempting to avoid foreclosure. Ferm cannot overcome this evidence because he has failed to present any admissible evidence of his own indicating Defendants acted in reckless disregard—just his own speculation.

Ferm's Plea Agreement has various facets and could be described in many ways. The law recognizes that the media is required to summarize a significant amount of facts and consequently affords considerable leeway on how such facts are reported. *Crane*, 972 F.2d at 1519. Ferm pled no contest to felony theft and will be sentenced for that crime unless he pays nearly $200,000 (which he has not yet done), at which point he will be convicted of attempted theft, this is not an occasion where reckless disregard for the truth may be found. *Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 425 (Tex. 2000) (holding that "the First Amendment protects [a media] organization's choice of which material to include in its broadcast.").[40]

---

[39] Their declarations, Dkt #32-1 and #32-2, discuss at length their investigation and beliefs as to the truth of their stories. Ferm has offered no admissible contradictory evidence.

[40] The Supreme Court of Texas in *Huckabee* determined that (1) the media is not required to cover stories from all perspectives and points of view, (2) the media may omit facts so long as the omission does not "so distort[ ] the viewers' perception that they receive a substantially false impression of the event," and (3) a media's failure to convey a story as accurately as it could does not constitute actual malice. 19 S.W.3d at 425-26.

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

## 2.   FERM IS NOT ENTITLED TO AN INJUNCTION BECAUSE HE IS NOT LIKELY TO SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

### a.   Ferm's Delay In Requesting A Preliminary Injunction Undermines His Assertion of Immediate, Irreparable Harm

Ferm has failed to satisfy the requirements for an injunction because he cannot show that he is likely to suffer irreparable harm.  Ferm must establish that irreparable harm is *likely*, not just that it is possible.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  One pivotal factor cutting against his request for a preliminary injunction is the fact that he delayed his request for Preliminary Injunction for nearly two years.  The controlling Complaint in this action was filed on February 22, 2013 and the Motion for Preliminary Injunction at issue was filed on January 5, 2015.  This Court has previously stated that a delay of only three months cut against a finding of irreparable harm.  *American Civil Liberties Union of Nevada v. City of Las Vegas* 13 F.Supp.2d 1064, 1084 (Dist. NV 1998).  The Court denied the ACLU of NV its request for preliminary injunction when a local mall sought to enforce its policy of forbidding distribution of political leaflets in its quasi-public areas.  In addressing the three (3) month delay the Court stated:

> Plaintiffs seek a preliminary injunction from this court three months after filing their complaint in this case and over two years after the Mall opened. Such a delay "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir.1985) (plaintiff's long delay before seeking a preliminary injunction was one of three reasons for court's finding that plaintiff failed to sustain its burden of proving irreparable injury). Plaintiffs' delay also undermines plaintiffs' assertion of immediate, irreparable harm because plaintiffs are seeking a *change* in the status quo; *i.e.,* an order enjoining the enforcement of a City ordinance which was enacted three years ago in 1995. See *Kobell v. Suburban Lines, Inc.,* 731 F.2d 1076, 1092 n. 27 (3rd Cir.1984) ("the district court may legitimately think it suspicious that the party who asks to preserve the status quo through interim relief has allowed the status quo to change through unexplained delay"); see also *3570 East Foothill Blvd., Inc. v. City of Pasadena,* 912 F.Supp. 1257, 1267 (C.D.Cal.1995), aff'd, 99 F.3d 1147 (9th Cir.1996) (finding that enjoining city from enforcing adult business zoning ordinance would be especially harmful because such a radical change from the status quo would occur without any public comment, time for legislative deliberation, or opportunity to study the secondary effects).

Similarly, a moving party's delay in seeking injunctive relief weighs against equitable relief, particularly where the harm has already occurred and the parties cannot be returned to the status quo.

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

*McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 965 (9th Cir. 2010); *Cloud Found. v. U.S. Bureau of Land Mgmt.*, 802 F. Supp. 2d 1192, 1207 (D. Nev. 2011).  "Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm." *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985). Ferm cannot invoke this Court's equitable powers and obtain the extraordinary relief he seeks, when he slept on his rights for nearly two years and concentrated his efforts on attacking Defendants on his blog rather than approaching the Court.

      **b.**    **The "Irreparable Harm" Alleged Is Compensable By Damages And Therefore Does Not Support A Preliminary Injunction**

A showing of "irreparable harm" requires Ferm to prove that he will suffer some harm "for which compensatory damages is an inadequate remedy." *Dixon v. Thatcher*, 742 P.2d 1029 (Nev. 1987).  Importantly, lost income, damaged reputation, and inability to find another job is not considered "irreparable harm." *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 846 (7th Cir. 2005). Indeed, in the context of a wrongful discharge action, the Supreme Court has noted: "an insufficiency of savings or difficulties in immediately obtaining other employment . . . will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray,* 415 U.S. 61, 92 n.68 (1974).  Further, Ferm has acknowledged repeatedly that he sued Robert Massi and others for making essentially the same statements made by KLAS. Thus, it only follows that there is an alternative explanation for any damage he alleges was caused here.

Ferm fails to articulate the precise harm that he will face, but seemingly argues that he will lose employment opportunities and income opportunities because he has already lost a job because he *speculates* prospective employers find the KLAS news stories. *See* Ferm Dec., Dkt. 164-1. Ferm's arguments does not satisfy a showing of "irreparable harm."  The statements within Ferm's own declaration regarding these purported losses are speculative and/or hearsay, and Ferm has failed to present any admissible evidence showing an actual loss.[41]  In any event, loss of employment or

---

[41] Ferm's declaration only evidences that he applied for jobs he did not get.  If offers nothing admissible as to why.

business opportunities are economic losses which, by definition, wrongs that may be remedied by damages—particularly in defamation cases.

### c.   Ferm Cannot Demonstrate That Any Alleged Harm Is Likely

Ferm cannot show that the harm he fears is *likely*. In fact, on July 11, 2012, Ferm testified—at a status check related to the underlying criminal case that gave rise to the disputed statements in this action—that he had a *job offer* and simply needed to go through training before he would begin to generate an income from it. (Doc 11-15 at pg. 4, ¶¶ 19-22). Therefore, the harm Ferm fears is not only unlikely, it is controverted by his own experiences. Similarly, any future harm is not only speculative—as proven by the fact that he has already received a job offer—but it is also not the type of irreparable harm that an injunction is designed to prevent. If the statements are found to be defamatory, the harm is capable of monetary compensation. *See e.g. Near v. State of Minnesota*, 283 U.S. 697, 718-19 (1931) (noting that monetary damages, and not injunctions, are preferred in defamation actions).

Proving imminent injury caused by Defendants is an element of any injunctive claim, which he has failed to satisfy. Here, Ferm's own sworn testimony and admissions negates his claims that defendants' stories at issue are likely to cause irreparable harm—he previously alleged that his reputation was ruined by Massi even before he was held in contempt and arrested. (Doc. 11-3). Then, after suing Massi, Ferm was twice held in contempt and then arrested on charges to which he ultimately entered a plea that has, or even in the most hyper-technical of distinctions inevitably will, end in conviction and criminal punishment (which is ongoing since he is effectively serving probation now and paying restitution). Ferm's reputation was already destroyed long before the stories by Defendants which are at issue here were published. At this point, actual damage is very much in doubt given whose reputation and character were, as he admits, already destroyed by others (on the same subject matter) and through is own very public wrongdoing.[42]

---

[42] *See Lamb v. Rizzo*, 391 F.3d 1133, 1137-38 (10th Cir. 2004) (discussing the libel-proof plaintiff doctrine, and explaining that a party may not recover damages for defamation when his public reputation is so diminished at the time of publication that he could not be further injured by allegedly false statements about his criminal activities).

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801  FAX: (702) 869-2669

### 3.   THE BALANCE OF EQUITIES DOES NOT TIP IN FERM'S FAVOR

The balance of equities do not tip in Ferm's favor.  To determine that they do, this Court would be required to find that equity favors restricting the First Amendment rights of the press in favor of an individual who has been held in contempt *twice* for the unauthorized practice of law, barred from submitting any mortgage-related filings in this Court, arrested by the Attorney General's office for conduct associated with wide-scale fraud, pleads no contest to theft by material misrepresentation, and then turns on the press for reporting on his misconduct.  The balance of equities generally favors free speech. *Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012)(holding that the "public interest in upholding free speech and association rights out-weighed the interest in continued enforcement of [ ] campaign finance provisions."); *Phelps-Roper v. Nixon*, 545 F.3d 685, 691 (8th Cir. 2008).  In this instance, an injunction poses a much higher risk of harm to KLAS and to the public in general than it does to Ferm, who is not likely to succeed on the merits and who has not demonstrated the requisite irreparable harm and nothing Defendants have said has been finally adjudicated as false and defamatory.

### 4.   THE INJUNCTION IS NOT IN THE PUBLIC'S INTEREST

For similarly reasons, as expressed above, an injunction is not in the public's interest. *Farris, supra*.  In sum, an injunction in this case is not proper because the First Amendment forbids it and because Plaintiff has not demonstrated that the law is ***clearly in his favor*** with respect to the facts governing the issuance of a mandatory injunction.

## IV.   CONCLUSION

For these reasons, Plaintiff's Motion for Preliminary and Mandatory Injunction must be denied.

Black & Lobello

By: __/s/  Todd E. Kennedy_____
Todd E. Kennedy, Nevada Bar No. 6014

*Attorneys for Defendants Colleen McCarty,
Steve Kanigher and KLAS, LLC*

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

## CERTIFICATE OF SERVICE

I certify that on the 27th day of January, 2015, I caused to be served a true and correct copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY AND MANDATORY INJUNCTION** by mailing in a first class, postage-paid envelope to the following:

    Jack Ferm
    1812 W. Sunset Blvd., Suite 1-134
    St. George, Utah 84770

_Bonnie L. Lindsay_
An Employee of Black & Lobello

**BLACK & LOBELLO**
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

# EXHIBIT 1

# EXHIBIT 1

Todd E. Kennedy, Nevada Bar No. 6014
Martina L. Jaccarino, Nevada Bar No. 5676
Black & LoBello
10777 West Twain Avenue, Third Floor
Las Vegas, Nevada 89135
702-869-8801 (Telephone)
702-869-2669 (Fax)
tkennedy@blacklobellolaw.com
mjaccarino@blacklobellolaw.com

*Attorneys for Defendants Colleen McCarty,*
*Steve Kanigher and KLAS, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JACK FERM, | |
| Plaintiff, | Case No. 2:12-cv-00782-RFB-(PAL) |
| vs. | |
| COLLEEN MCCARTY, an individual; STEVE KANIGHER, an individual; and KLAS, LLC, a Nevada limited liability company. | **DECLARATION OF RON COMINGS** |
| Defendants. | |

Ron Comings declares as follows:

1.      I am the news director for KLAS, LLC.  I have personal knowledge of the facts stated here, except those stated on information and belief.  As to those facts, I believe them to be true.  I make this declaration in support of Defendant's Opposition to Plaintiff's "Notice of Motion and Motion for Order To Show Cause Why Defamatory False Content Should Not Be Removed From the 8newsnow.com web/blog site with Points and Authorities In Support Thereof."

2.      In November 2011, two articles which, among other things, mentioned Jack Ferm's criminal case as a successful prosecution by Nevada state authorizes were uploaded to the KLAS website.  The first was uploaded originally on November 15, 2011, and was entitled "State AG's Office Cracking Down On Mortgage Modification Scams."  The Second was first uploaded on

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

November 16, 2011, and was entitled "Desert Underwater:  Scam Artists Prey On Struggling

Homeowners."

       3.     Neither of those two articles are presently available in their original form on the

KLAS website.  In 2012, they were clarified as an accommodation to give more detail on the

specifics of plaintiff Jack Ferm's plea agreement.  The current version of the two articles, and the

only versions now available, are attached to this declaration as Exhibits A and B.

       4.     The revisions to the articles were as an accommodation, and in no way a concession

that the original articles were untrue or defamatory.

       I declare under the penalty of perjury that the foregoing is true and correct.

       Dated this _26_ day of January, 2015.

_Ron Comings_
Ron Comings

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801 FAX: (702) 869-2669

EXHIBIT A

 @8NewsNOW > US Officials Say 2 Warships Moving Toward Libya: U.S. officials said the  << Back

 TODAY'S DEAL  |  ABOUT  PROGRAM GUIDE  CONTACT  E-ALERTS

DESERT UNDERWATER

# State AG's Office Cracking Down on Mortgage Modification Scams

*Posted: Nov 15, 2011 4:08 PM PST*
*Updated: Apr 05, 2012 10:30 AM PDT*
By Steve Kanigher, I-Team Reporter - email



William Vargas

Con artists who promise to help homeowners modify their mortgage loans for a fee but wind up ripping them off have caught the attention of Nevada Attorney General Catherine Cortez Masto and her Mortgage Fraud Strike Force.

**See Complete Slideshow**

So, too, have criminals who perpetrate other types of mortgage fraud. These are recent examples of individuals who have been convicted of or who have reached plea agreements in Clark County for crimes where homeowners were victims.



Michael Sinclair

**William Vargas and Michael Sinclair**

Both men were indicted by the grand jury in June 2009 for using their Las Vegas company, Federal Housing Aid, to fraudulently extract loan modification fees from victim homeowners in 2008. One victim was a 75-year-old Bakersfield, Calif., man who was charged $899 on his credit card by the company but didn't receive any help in his bid to resolve a pending foreclosure. Vargas and Sinclair also were charged with taking $799 each from women in Victorville, Calif., and Midlothian, Ill., $899 from a Lake Elsinore, Calif., woman who eventually lost her home to foreclosure, and $949 from a Florida City, Fla., woman who also lost her home. Sinclair pleaded guilty to felony mortgage fraud/pattern of mortgage lending fraud and was sentenced in September 2010 to a maximum five years



Justin Sabo



Jack Ferm

probation and ordered to pay $30,160 in restitution. Vargas pleaded guilty to felony theft/obtaining more than $250 by material misrepresentation from a person older than 60. He was sentenced in May 2010 to three years probation and ordered to pay $21,000 in restitution.

**Justin Sabo, Thomas Gentile and Julio Martinez**

Indicted by the grand jury in October 2009, Sabo and Gentile were charged with falsely using the identities of a 73-year-old Las Vegas man and 59-year-old Las Vegas woman in early 2009 to secure a $65,000 loan against their property, causing the victims to lose more than $3,000. Gentile pleaded guilty to felony theft/obtaining more than $2,500 by material misrepresentation from a person older than 60 and was sentenced in March to five years probation beginning with six months in jail. Sabo pleaded guilty to gross misdemeanor attempted theft/obtaining more than $2,500 by material representation from a person older than 60 and was sentenced in March to a maximum three years probation. Both men were also ordered to pay $65,000 in restitution. Martinez was charged with acting without lawful authority by notarizing a signature purported to be that of the male victim when Martinez knew the signature was false. Martinez pleaded guilty to that misdemeanor.

**Jack Ferm and Mario Sanders**

Mario Sanders

Ferm and Sanders, doing business as US Justice Foundation in Las Vegas, were indicted by the grand jury in October 2009 for running a scam in which they used television ads to lure homeowners into believing the company would provide assistance to clients in the preparation of both complaints against predatory lenders and documents to stop foreclosures. Instead, the two men were accused of collecting fees from each of five Southern Nevada homeowners without providing services. Ferm was charged with doing the same to five additional victims, including a 79-year-old woman and 65-year-old man. In September, Ferm pleaded no contest to felony theft/obtaining more than $2,500 by material misrepresentation and agreed to pay $192,168 in restitution. Sanders pleaded guilty to the same charge in September. Sentencing is pending.

**Cindy Birkland and Jeffery Tye Brown**

Birkland, doing business as Sapphire Mortgage, and Brown, doing business as DB Financial Group, were named in May 2008 in a 34-count criminal complaint in which they were accused of forgery, theft, making false written statements to obtain credit, obtaining

signatures under false pretenses and racketeering in connection with Clark County incidents in 2007. In one case Brown and Birkland were accused of wrongfully obtaining a mortgage loan for a Las Vegas home by falsifying the income of a man they recruited into the scheme. To engineer the scheme they were accused of claiming on loan applications that the man, a restaurant worker, was actually a trucking company executive earning nearly $23,000 a month. Brown ultimately pleaded guilty to felony mortgage fraud and was sentenced in June 2010 to a prison term of 12 to 30 months with credit for time served. He was also ordered to pay $23,685 in restitution. Birkland pleaded guilty to gross misdemeanor conspiracy to unlawfully receive a fee of more than $1,000. In January she received three years probation and was ordered to pay $6,000 in restitution.

**Doninador Palalay and Marie Tejada Medina**

Indicted on 13 counts in August 2010, Palalay and Medina were accused of using the companies PDM Financial Group and Golden Springs Group of Companies to extract up-front fees from Southern Nevadans in exchange for false promises of saving the victims' homes from foreclosure. The alleged victims included five homeowners who paid the fees and a senior citizen who was induced into investing $20,000 into an unlawful mortgage business. Palalay pleaded guilty to felony theft/obtaining more than $2,500 by material misrepresentation and was sentenced in February to nine months in jail, followed by five years probation and $36,332 in restitution. Medina pleaded guilty to felony theft/obtaining more than $250 by material misrepresentation and was sentenced in March to 30 days in jail, followed by a maximum five years probation and $37,332 in restitution.

**Christopher Lloyd Brown**

Brown was accused in a criminal information of obtaining $115,000 from a Las Vegas woman in October 2010 by falsely claiming he would use the money to buy her a home in Henderson. He was accused of forging a trustee's deed for the property and filing it with the Clark County Recorder while failing to purchase the home, pocketing the money instead. He pleaded guilty to felony theft/obtaining more than $2,500 by material misrepresentation and agreed in June to pay $115,000 in restitution. Sentencing is pending.

**Joseph Lawrence Yorkus and James Robert Bartczak**

Yorkus and Bartczak, under the guise of Great Western Business Services, were initially indicted in March on 12 counts related to felony theft and mortgage lending fraud in Clark County. One alleged victim was a 68-year-old woman who wrote a $2,700 check to Great Western in January after receiving a letter from the company falsely claiming that it took over servicing of her mortgage loan from Bank of America. Last spring Yorkus and Bartczak were also accused in a criminal information of committing a related crime through the companies BAC Collections, Fresh Start Consultants and Learn Your Rights. Yorkus ultimately pleaded guilty to felony mortgage lending fraud and felony theft/obtaining between $250 and $2,500 by material misrepresentation. He was sentenced in August to consecutive terms of two to 10 years in prison and one to four years behind bars and ordered to pay $346,155 in restitution. Bartczak pleaded guilty to felony theft/obtaining

State AG's Office Cracking Down on Mortgage Modification Scams - 8 News NOW    Page 4 of 4

more than $250 by material misrepresentation. He was placed on three years probation and ordered to pay $37,021 in restitution.

**This article originally identified the individuals in the story as having been "convicted" in Clark County of crimes where homeowners were victims. As explained in the above story, Jack Ferm was not convicted but instead entered a "no contest" plea agreement with the AG's office, in which he plead no contest to one count of "Theft-obtaining money in excess of $2,500 by a material representation", and agreed to pay restitution to the charged victims. The plea agreement also allows that if Ferm makes full restitution by the end of a probation period, he may request an amended criminal information reducing his charge to "Attempted Theft," a misdemeanor.

KLAS-TV 8 News NOW. 3228 Channel 8 Dr., Las Vegas, NV, 89109. 702-792-8888 | Advertising Information



All content © Copyright 2000 - 2012 WorldNow and KLAS. All Rights Reserved.
For more information on this site, please read our Privacy Policy and Terms of Service.

**EXHIBIT B**

Desert Underwater: Scam Artists Prey on Struggling Homeowners - 8 News NOW          Page 1 of 3





TODAY'S DEAL   |   ABOUT   PROGRAM GUIDE   CONTACT   E-ALERTS

# Desert Underwater: Scam Artists Prey on Struggling Homeowners

*Posted: Nov 16, 2011 6:21 PM PST*
*Updated: Aug 02, 2012 11:58 AM PDT*

By Colleen McCarty, Investigative Reporter - bio | email
By Kyle Zuelke, Photojournalist - email







**LAS VEGAS --** The 8 News NOW I-Team ran its first mortgage fraud story in 2007. The victim lost his home, a chunk of change to lawyers, and some measure of his pride. Four years later, thousands more like him can make similar claims.

Fraud remains rampant, and despite hundreds of prosecutions, there is no shortage of crooks ready to take a homeowner's last buck. Investigators say for every scammer they put out of business, there are 10 more eager to take their place. And unlike the crooks of old, some cons have ties to sophisticated criminal enterprises.

But perhaps what is most surprising is the lengths to which people will go to prey on the desperate, even after they land behind bars.

When state investigators came calling on the Good Government League, professional courtesies between the two didn't exactly sound like a meet and greet among public employees. Sonia Rodis, managing member of the League formerly called Biogreen Teck stands accused of theft and mortgage fraud, along with her alleged partner in crime, notary Hans Johns.

### Desert Underwater: Foreclosure Resource Guide

"The group of victims that we're seeing are already financially struggling -- they're losing their homes. That's why they're seeking help," said Chief Deputy Attorney General John Kelleher.

According to court records, Rodis and Johns sold a so-called zero mortgage program. For thousands of dollars up front, plus 10 percent of the mortgage over two years, Rodis would draft and Johns would notarize documents to eliminate the mortgage.

<u>Read the Criminal Complaint</u>

<u>Read the Affidavit in Support</u>

Ron and Dora Disbrow say they paid Rodis $1,000 to foreclose on their bank. They filed the papers and then received notice from their lender rejecting the claim.

"You think, 'Oh yeah, that's great. It's got to be on the up and up,'" said Ron Disbrow. "She talked a really good game, that's the scary part. How many people actually lost their homes because of this -- because of her?"

Rodis allegedly had an accomplice -- her boyfriend Alex Soria. He was missing from the raid on the Good Government League due to his current status as a federal prisoner, accused in a loan modification scheme. Yet state prosecutors allege Soria didn't let jail keep him from his business.

Court records reveal phone calls between Soria, Rodis, and Johns from behind bars suggest Soria directed their latest venture.

"This type of crime, we've never seen it on this scale before," said Chief Deputy Attorney General John Kelleher.

Kelleher supervises the Attorney General's Mortgage Fraud Task Force. Since its inception in 2007, the unit has prosecuted dozens of scammers accused of stealing millions of dollars collectively from unsuspecting homeowners.

"It's not ok for our banking, real estate, and mortgage businesses to be a spider web where every time you enter into it, you're waiting for that spider to pounce. That's not ok, and we're seeing the result of that kind of business approach going on for too long," said Kelleher.

<u>SLIDESHOW: People Arrested for Foreclosure Scams</u>

Jack Ferm, was ordered to pay nearly $200,000 in restitution to his victims. Ferm, doing business as US Justice Foundation in Las Vegas, was indicted by the grand jury in October 2009 for running a scam in which he used television ads to lure homeowners into believing the company would provide assistance to clients in the preparation of both complaints against predatory lenders and documents to stop foreclosures. He pled no contest and agreed to pay restitution. (See note below.)

Joseph Yorkus is currently serving up to 10 years in prison for mortgage fraud and theft. Yorkus and co-defendant James Bartczak convinced homeowners they were their new mortgage servicers.

And Cindy Birkland, owner of Sapphire Mortgage, pleaded guilty to conspiracy. She admitted to forging millions of dollars worth of mortgage documents to skim cash from the loan proceeds.

"We have a handle on the loan modification scams and then boom, foreclosure scams start popping up. We start addressing those or the origination fraud and now we're seeing fraud or scams in the short sales. Start looking at those and we see scams in the rentals. This is an unprecedented scheme," said Kelleher.

Rodis holds herself out as a homeowner's advocate, according to court records. Yet when questioned about her methods, the outspoken champion had nothing to say to the *I-Team* or to her alleged victims.

"I'd like to see these people put away for a long time so they can never do this again to somebody else," said Disbrow.

According to court records, Soria is a close to a deal on his federal charges. The state counts involving Soria, Rodis, and Johns are just starting to move through the system.

<u>Report Suspected Fraud to the Attorney General's Office</u>

**This article originally identified the individuals in the story as having been "convicted" in Clark County of crimes where homeowners were victims. As explained in the above story, Jack Ferm was not convicted but instead entered a "no contest" plea agreement with the AG's office, in which he plead no contest to one count of "Theft-obtaining money in excess of $2,500 by a material representation", and agreed to pay restitution to the charged victims. The plea agreement also allows that if Ferm makes full restitution by the end of a probation period, he may request an amended criminal information reducing his charge to "Attempted Theft," a misdemeanor.

KLAS-TV 8 News NOW. 3228 Channel 8 Dr., Las Vegas, NV, 89109, 702-792-8888 | Advertising Information

 All content © Copyright 2000 - 2012 WorldNow and KLAS. All Rights Reserved.
For more information on this site, please read our Privacy Policy and Terms of Service.