1  Todd E. Kennedy, Nevada Bar No. 6014
   Martina L. Jaccarino, Nevada Bar No. 5676
2  Black & LoBello
   10777 West Twain Avenue, Third Floor
3  Las Vegas, Nevada 89135
   702-869-8801 (Telephone)
4  702-869-2669 (Fax)
   tkennedy@blacklobellolaw.com
5  mjaccarino@blacklobellolaw.com

6  *Attorneys for Defendants Colleen McCarty,*
7  *Steve Kanigher and KLAS, LLC*

8              **UNITED STATES DISTRICT COURT**

9                 **DISTRICT OF NEVADA**

10  JACK FERM,

11          Plaintiff,                    Case No. 2:12-cv-00782-RFB-(PAL)

12  vs.

13  COLLEEN MCCARTY, an individual;
    STEVE KANIGHER, an individual; and
14  KLAS, LLC, a Nevada limited liability
    company,
15
16          Defendants.

17   **OPPOSITION TO FERM'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND**

18         **REQUEST FOR RELIEF PURSUANT TO F.R.C.P. 56(D).**

19

20

21

22

23

24

25

26

27

28

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1

# <u>TABLE OF CONTENTS</u>

|  |  | <u>**Page**</u> |
|---|---|---|
| Table of Contents |  | ii |
| Table of Authorities |  | iv |
| <u>Memorandum of Points & Authorities</u> |  |  |
| I. | Preliminary Statement | 1 |
| II. | Statement of Facts | 2 |
|  | A. Statement of Undisputed Facts | 2 |
|  | B. Disputed Material Facts | 8 |
|  | C.  The News Reports Upon Which Ferm's Claims Are Based | 11 |
|  |   1.  The November 15, 2011, News Report | 11 |
|  |   2.  The November 16,2011, Newscast | 12 |
|  |   3.  The November 16,2011, News Article | 13 |
| III. | Legal Standard | 14 |
| IV. Law and Argument |  | 15 |
|  | A. | The Evidence Before The Court Conclusively Demonstrates Ferm Is A Public Figure And Defendants Did Not Knowingly Make Untrue Statements Of Fact Or Publish False Statements With Reckless Disregard |
|  |  | 16 |
|  |   1. | Ferm Voluntarily Thrust Himself Into The Mortgage/ Foreclosure Crisis And Is Therefore A Limited Public Figure |
|  |  | 16 |
|  |   2. | Defendants Did Not Act With Reckless Disregard When They Published Their New Report |
|  |  | 22 |
|  | B. | Truth Is A Defense To Defamation And False Light, And KLAS' Reference To Ferm As Having Been "Convicted" Or As A "Notable Conviction" Is Trust Or Substantially True |
|  |  | 28 |
|  | C. | Defendants' Reports Are Absolutely Privileged By Fair Report Privilege |
|  |  | 37 |
|  | D. | Because Ferm Has Failed To Meet His Burden As To Defamation, His Request For Summary Judgment On His False Light And IIED Fails The Same Reasons, And Others. |
|  |  | 41 |
|  |   1. | False Light |
|  |  | 41 |
|  |   2. | Intentional Infliction of Emotional Distress |
|  |  | 41 |

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

E.   Ferm's Request for Summary Judgment on His Claim for Intentional Infliction of Emotional Distress Fails Because That Claim is Subsumed By His Defamation Claims ............ 41

F.   Summary Judgment In Favor Of Ferm On His Claim For Intentional Infliction Of Emotional Distress Unwarranted And Would Be Improper ........................................... 42

　　1.   The Evidence Does Not Establish That Defendants Engaged In Extreme And Outrageous Conduct ........ 42

　　2.   The Evidence Does Not Establish That Defendants Intended To Cause Ferm Emotional Harm ............ 44

　　3.   The Evidence Does Not Establish That Ferm Is Suffering From Severe Emotion Distress ............ 45

　　4.   The Evidence Does Not Establish That Ferm's Claimed Emotional And Mental Injuries Were Caused By Defendant ........................... 47

G.   Defendants Are Entitled To Take Further Discovery To Prove And Support Their Defenses ........................ 49

V.   Conclusion ........................................... 49

CERTIFICATE OF SERVICE ............................... 50

1

**TABLE OF AUTHORITIES**

2

**Statues & Rule**                                                          **Page**

3

NRS 47.240(2); 47.250(11)                                                      6

4

NRS 47.250(11)                                                                 6

5

FRE 407                                                                       13

6

Fed. R. Civ. P. 56(c)-                                                        14

7

NRS 47.240(2)                                                                 29

8

NRS 47.250(11)                                                                29

9

NRS 41B.070                                                                   35

10

NRS 116A.600                                                                  35

11

15 U.S.C. § 80a-2(a)(10)                                                      35

12

15 U.S.C. § 80b-2(a)(6)                                                       35

13

12 U.S.C. § 5104                                                              35

14

20 U.S.C. § 1002(a)(4)(B)                                                     35

15

20 U.S.C. § 1078-2(a)(1)(B)                                                   35

16

20 U.S.C. § 1091(a)(6)                                                        35

17

8 U.S.C. § 1101(a)(43)                                                        35

18

37 C.F.R. § 11.1                                                              35

19

NRS 119.167                                                                   36

20

NRS 624.266                                                                   36

21

NRS 630.301                                                                   36

22

NRS 598.870(5)                                                                36

23

Nevada Supreme Court Rule 111(1)                                              36

24

NRS 638.140                                                                   36

25

NRS 638.1515                                                                  36

26

NRS 639.006                                                                   36

NRS 640E.270                                                                  36

27

NRS 641.285                                                                   36

28

NRS 645.633                                                                   36

NRS 645C.570                                                                                  36

NRS 645D.235                                                                                  36

NRS 645H.750                                                                                  36

NRS 604A.605                                                                                  36

NRS 623A.280                                                                                  36

NRS 625.410                                                                                   36

NRS 630A.340                                                                                  36

NRS 632.320                                                                                   36

NRS 645A.090                                                                                  36

NRS 648.1493                                                                                  36

NRS 649.085                                                                                   36

Rule 56(d)                                                                                    49

**Cases**                                                                                    **Page**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S.
242, 250, 253, 255-56 (1986)                                          2,14,15,16,23, 24, 49

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 587 (1986)                                                          2, 14,15

*Posadas v. City of Reno*, 851 P.2d 438, 443 (Nev. 1993)                          10,15,19,22

*New York Time Co. v. Sullivan*, 376 U.S. 254, 280, 286, 287 (1964)      10, 22, 24, 27, 38

*Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)                                      10, 22

*CRM Collateral II, Inc. v. TriCounty Metro. Transp. Dist. of Oregon*,
669 F.3d 963, 968 (9th Cir. 2012)                                                        14

*Pegasus v. Reno Newspapers, Inc.,*
57 P.3d 82, 88, 90, 91,92,93 (Nev. 2002);                   15, 16, 17, 25, 26, 28, 29,30, 33, 38

*Nevada Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 344 (Nev. 1983)          15, 16, 22, 26

*Flowers v. Carville*, 266 F. Supp. 2d 1245, 1252 (D. Nev. 2003);                         15

*PETA v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1273 n.4 (Nev. 1995)                       15

*City of Las Vegas Downtown Redevelopment Agency v. Hecht*,
940 P.2d 134, 138 (Nev. 1997)                                                             15

*Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1551 (4th Cir. 1994)                16

*Lundell Mfg. Co., Inc. v. Am. Broad. Co.*, 98 F.3d 351, 362 (8th Cir. 1996)              16

*Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 251 (1st Cir. 2000)                     16

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

*Gertz v, Robert Welch, Inc.*, 418 U.S. 323, 351-52, 94,349-50 S.Ct. 2997 (1974)     17, 26, 42

*Journal-Gazette Co. v. Bandido's*, 712 N.E.2d 446, 449-50 (Ind. 1999)     17

*Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 619 (2d Cir. 1988)     17

*Street v. Nat'l Broad. Co.*, 645 F.2d 1227, 1235-36 (6th Cir.), cert. granted, 454 U.S. 815, cert. dismissed, 454 U.S. 1095 (1981)     17

*Medure v. Vindicator Printing Co.*, 273 F. Supp. 2d 588, 631 (W.D. Pa. 2002)     17

*Mosesian v. McClatchy Newspapers*, 233 Cal. App. 3d 1685, 1703, 285 Cal. Rptr. 430, 441 (Cal. Ct. App. 1991)     17

*Bongiovi v. Sullivan*, 138 P.3d 556 (Nev. 2006)     19, 21

*Makaeff v. Trump University,* 715 F.3d 254, 266-68 (9th Cir. 2013)     19

*Steaks Unlimited v. Deaner*, 623 F.2d 264, 273 (3rd Cir. 1980)     19

*Blue Ridge Bank v. Veribanc, Inc.* 866 F.2d 681, 687 (4th Cir. 1989)     19

*Nat'l Found. For Cancer Research, Inc. v. Council of Better Bus. Bureaus, Inc. (NFCR)* 705 F.2d 98 (4th Cir. 1983)     19

*Dameron v. Washington Magazine, Inc.* 779 F.2d 736 (D.C. Cir. 1985)     20

*St. Amant v. Thompson,* 390 U.S. 727 P. 414-15, 731-732 (1968)     22, 23, 24

*Harte Hanks Comm., Inc. v. Connaughton*, 491 U.S. 657, 667 and n.7 (1989)
*Harte-Hanks*, 491 U.S. at 666-67, 688 and n.7.     22, 23

*Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167,  (Tex. 2003)     22

*Franklin Prescriptions, Inc. v. The New York Times Co.*, 267 F. Supp. 2d 425, 433 (E.D. Pa. 2003)     23

*Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1060 (9th Cir. 1998)     23, 24

*Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 84-85 (1967)     23

*Bose Corp. v. Consumers Union*, 84 F.R.D. 682, 685 (D. Mass. 1980)     24

*Bose Corp. v. Consumers Union,* 466 U.S. 485, 512, 513 (1984)     24, 27

*Buendorf v. Nat'l Public Radio, Inc.,* 822 F. Supp. 6, 12 (D.D.C. 1993)     24

*Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 430 (D. Md. 2005)     25

*Marcone v. Penthouse Int'l Magazine For Men*, 754 F.2d 1072, 1091 (3d Cir. 1985)     25

*Machleder v. Diaz*, 801 F.2d at 55     26

*Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 425 (Tex. 2000)     26

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

*Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510 (1991), P. 519,517    26, 28,30, 38

*Kennedy v. Sheriff of East Baton Rouge,* 935 So.2d 669 (La. 2006) P. 675-77    26

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939 (1985)    26

*Obsidian Finance Group, LLC v. Cox,* 740 F.3d 1284 (9th Cir. 2014)    26

*Nevada Indep. Broadcasting Corp. v. Allen*, 99 Nev. 404, 664 P.2d 337 (1983)    27

*Bustos v. A&E Television Networks,* 646 F.3d 762, 765 769 (10th Cir. 2011)    29, 30

*D.A.R.E Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1288 (C.D. Cal. 2000)    29

*Maheu v. Hughes Tool Co.*, 569 F.2d 459, 465 (9th Cir. 1977)    29

*Thomas v. Telegraph Pub. Co.,* 929 A.2d 993, 1013 (N.H. 2007)    29

*Hopkins v. Keith*, 348 So. 2d 999, 1002 (La. Ct. App. 1977)    30, 31

*Koniak v. Heritage Newspapers, Inc.,* 499 N.W.2d 346, 348-49 (Mich. App. Ct. 1993)    30, 31

*Dostert v. Washington Post Co.*, 531 F. Supp. 165, 168 (N.D. W. Va 1982)    31

*Colt v. Freedom Commc'ns, Inc.*, 1 Cal. Rptr. 3d 245, 247-48; 251  253 (Cal. Ct. App. 2003)    31, 39, 40

*Lindemuth v. Jefferson Co. Sch. Dist. R-1*, 765 P.2d 1057, 1058 (Colo. Ct. App. 1988)    31

*Jennings v. Telegram-Tribune Co.*, 210 Cal. Rptr. 485, 488-89 (Cal. Ct. App. 1985)    31

*Montgomery v. State*, 897 So.2d 1282, 1285 (Fla. 2005)    32. 33

*Kasckarow v. Board of Examiners of Sex Offenders of State*, 33 Misc. 3d 1028, 1031-32, 936 N.Y.S.2d 498 (N.Y. Sup. Ct. 2011)    32

*Com. v. Moser*, 999 A.2d 602, 606 (Pa. 2010)    32

*United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004)    32

*Tseung Chu v. Cornell*, 247 F.2d 929, 938 (9th Cir. 1957)    32

*Pensacola Lodge No. 497 v. State*, 77 So. 613, 614 (Fla. 1917)    33

*Jones v. State*, 771 P.2d 154, 156 (Nev. 1989)    33

*Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992)    33, 38, 39, 40

*Dostert v. Washington Post Co.*, 531 F. Supp. 165, 168 (N.D. W. Va. 1982)    33, 34

*United States v. Meijas*, 47 F.3d 401, 404 (11th Cir. 1995)    33

*United States v. Maupin*, 520 F.3d 1304, 1306 (11th Cir. 2008)    33

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1    *United States v. Storer*, 413 F.3d 918, 922 (8th Cir. 2005)    33

2    *James v. State*, 433 S.E.2d 700, 701 (Ga. 1993)    33

3    *State v. Gomes*, 930 P.2d 701, 705 (Nev. 1996)    33

4    *State v. Lewis*, 178 P.3d 146, 147 (Nev. 2008)    33

5    *Jennings v. Telegram-Tribune Co.*, 210 Cal. Rptr. 485, 488-89 (Cal. Ct. App. 1985)    34

6    *Sahara Gaming v. Culinary Workers Union Local 226,* 984 P.2d 164, 166 (Nev. 1999)    34, 38

7    *Seymour v. A.S. Abell Co.*, 557 F. Supp. 951, 956 (D. Md. 1983)    35, 44

8    *Fendler v. Phoenix Newspapers Inc.*, 636 P.2d 1257, 1262 (Ariz. 1981)    37

9    *Wynn v. Smith*, 16 P.3d 424, 429 (Nev. 2001)    37

10    *Unelco Corp. v. Rooney,* 912 F.2d 1049, 1057 (9th Cir. 1990)    38

11    *Dorsey v. Nat'l Enquirer*, 973 F.2d 1431, 1434-37 (9th Cir. 1992)    38

12    *Riley v. Harr,* 292 F.3d 282, 296 (1st Cir. 2002)    39

13    *Yohe v. Nugent*, 321 F.3d 35, 43 (1st Cir. 2003)    39

14    *Machleder v. Diaz*, 801 F.2d 46, 55 (2d Cir. 1986)    39

15    *Virgil v. Time, Inc.*, 527 F.2d 1122, 1129 (9th Cir. 1975)    39

16    *Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 425 (Tex. 2000)    39

17    *Grillo v. Smith*, 144 Cal. App. 3d 868, 874, 193 Cal. Rptr. 414, 418
(Cal. App. Ct. 1983)    40

18

19    *Dameron v. Wasthington Magazine, Inc.* 779 F.2d 736, 739 (D.C. 1985)    40

20    *Vail v. Pioneer Mutual Life Ins.*, 2010 WL 3951916 at *2 (D. Nev. 2010)    41

21    *Dun & Bradstreet, Inc.* 472 U.S. 749    42

22    *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981)    42

23    *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001)    42

24    *Candelore v. Clark Co. Sanitation Dist.*, 752 F. Supp. 956, 962 (D. Nev. 1990)    42

25    *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993)    42, 45, 47

26    *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009)    42

27    *Norman v. Gen. Motors Corp.*, 628 F. Supp. 702, 704-705 (D. Nev. 1986)    42

28    *Lowe v. Hearst Communications, Inc.*, 414 F. Supp. 2d 669 (W.D. Tex. 2006),
judgment aff'd, 487 F.3d 246 (5th Cir. 2007)    42

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

*Smith v. Montgomery Ward & Co., Inc.*, 567 F. Supp. 1331, 1335 (D. Colo. 1983) ......... 43

*Pottenger v. Potlatch Corp.*, 329 F.3d 740 (9th Cir. 2003) ......... 44

*Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998) ......... 44

*Rouch v. Enquirer & News of Battle Creek,* 487 N.W.2d 205, 260 (1992) ......... 44

*Ricci v. Venture Magazine, Inc.*, 574 F. Supp. 1563, 1567 (D. Mass. 1983) ......... 44

*Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) ......... 45

*Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993) ......... 45, 47

*Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ......... 46

*Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998) ......... 46

*Hagerty v. L & L Marine Servs., Inc.*, 788 F.2d 315, 318 (5th Cir.),
modified on other grounds, 797 F.2d 256 (5th Cir. 1986) ......... 46

*Anthan v. Prof'l Air Traffic Controllers*, 672 F.2d 706, 709-711 (8th Cir. 1982) ......... 46

*Kennedy v. Town of Billerica*, 617 F.3d 520, 530-31 (1st Cir. 2010) ......... 47

*Jones v. Warner*, 686 S.E.2d 835, 839 (Ga. App. Ct. 2009) ......... 47

*York v. Amer. Tel. & Tel.* 95 F.3d 948, 957 (10th Cir. 1996) ......... 48

*Jones v. City of Odessa*, 574 S.W.2d 850, 854 (Tex. Ct. App. 1978) ......... 49

*Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 397, 89 Cal. Rptr.
78, 90 (Cal. Ct. App. 1970) ......... 49

*California Union Ins. Co. v. American Diversified Sav. Bank*, 914 F.2d 1271,
1278 (9th Cir. 1990) ......... 49

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck
Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) ......... 49

*Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir. 2001)
(citing *Anderson,* 477 U.S. at 250 n.5) ......... 49

*St. Surin v. Virgin Islands Daily News, Inc.,* 21 F.3d 1309, 1314 (3d Cir. 1994) ......... 49

*Hall v. State of Hawaii*, 791 F.2d 759, 761 (9th Cir. 1986) ......... 50

**Other Authorities**                                                      **Page**

RESTATEMENT (SECOND) OF TORTS §652(e) (1977) ......... 23

*Sahara Gaming,* 984 P.2d at 166 ......... 25

*Banditos,* 712 N.E.2d at 468 ......... 27

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

RESTATEMENT (SECOND) OF TORTS § 581A cmt. c at 236 (1977)   29

53 C.J.S. *Libel and Slander; Injurious Falsehood* § 34 (2005)   30

*Bennett v. Ackerman*, 2002 WL 1609050 (Cal. Ct. App. 2002)   31, 34

BLACK'S LAW DICTIONARY 358, 402 (8th ed. 2004)   32

*Plea of Nolo Contendere Or Non Vult Contendere*, 89 A.L.R.2d 540 (1963)   32

*Colt v. Freedom Commc'ns, Inc.*, 1 Cal. Rptr. 3d 245, 253 (Cal. Ct. App. 2003)   34

RESTATEMENT (SECOND) OF TORTS § 611 (1965)   38

*Reader's Digest Ass'n v. Superior Court*, 690 P.2d 610, 621 (Cal. 1984)   38

RESTATEMENT (SECOND) OF TORTS § 46, Illus. h, *Outrageous Conduct Causing Severe Emotional Distress* (1979)   43, 45

*Chehade Refai*, 614 F. Supp. 2d at 1121   44

*Norman*, 628 F. Supp. at 704-705   44

FED. R. EVID. 701(c)   46

*Ainsworth v. Newmont Mining Corp.*, 2012 WL 987222 *4 (Nev. 2012)(unpublished)   47

*Bradford v. Gleason*, 2009 WL 2461270, at *8 (N.J. Super. Aug. 13, 2009)   47

1 MCCORMICK ON EVIDENCE at § 196   47

*Louden v. City of Whittier*, 2005 WL 6000502 at *2 (C.D. Cal. Oct. 27, 2005)   47

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1  Todd E. Kennedy, Nevada Bar No. 6014
   Martina L. Jaccarino, Nevada Bar No. 5676
2  Black & LoBello
   10777 West Twain Avenue, Third Floor
3  Las Vegas, Nevada 89135
   702-869-8801 (Telephone)
4  702-869-2669 (Fax)
   tkennedy@blacklobellolaw.com
5  mjaccarino@blacklobellolaw.com

6  *Attorneys for Defendants Colleen McCarty,*
   *Steve Kanigher and KLAS, LLC*
7

8              **UNITED STATES DISTRICT COURT**

9                  **DISTRICT OF NEVADA**

10  JACK FERM,

11        Plaintiff,                        Case No. 2:12-cv-00782-RFB-(PAL)

12  vs.

13  COLLEEN MCCARTY, an individual;         **Opposition To Ferm's Motion For Partial**
    STEVE KANIGHER, an individual; and      **Summary Judgment And Request For**
14  KLAS, LLC, a Nevada limited liability   **Relief Pursuant To F.R.C.P. 56(d).**
    company,
15
          Defendants.
16

17  **I.      PRELIMINARY STATEMENT**

18        From 2009 to 2011, Ferm was involved in a criminal prosecution by the Nevada Attorney

19  General's Mortgage Fraud Task Force for multiple counts of theft by misrepresentation.  Ultimately,

20  Ferm pled *nolo contendere* to felony theft by misrepresentation and agreed to pay nearly $200,000 in

21  restitution.  KLAS tracked Ferm's story, including the facts preceding Ferm's arrest and the facts

22  postdating his Plea Agreement.  Now, he's pursuing a defamation lawsuit against KLAS, accusing

23  Defendants of defamatory conduct for referring to him as "convicted of a crime."  However, Ferm did

24  commit a crime.  He admitted as much in his Plea Agreement.  App. Exh 29.[1]  Ferm's criminal

25  troubles actually resulted from his own activities with the U.S Justice Foundation ("USJF").  He was

26  found in contempt (after evidentiary hearings) by two judges, one federal and one state, for the

27  _____

28  [1]  Defendants' evidence in support of this Opposition have been filed separately as an Appendix of Exhibits.  Many of the records
    relied upon are public records for which Defendants request the Court take judicial notice.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1   unauthorized practice of law, who also sanctioned him and acted to protect the public by enjoining

2   his unlawful conduct.  The Nevada Attorney General then indicted him, and Ferm does not dispute he

3   entered a Plea Agreement wherein he agrees to the entry of a criminal conviction and sentencing.

4    In Ferm's Motion for Summary Judgment (Doc. 219), he principally argues that Defendants

5   have defamed him as a matter of law by referring to him as having been "convicted of a felony."

6   Ferm's claims fail for at least four reasons.  First, Defendants' news reports do <u>not</u> say what Ferm has

7   alleged.  Second, the challenged news reports are not actionable because they are true or substantially

8   true in the context of a defamation claim.   Third, the statements are protected by the fair report

9   privilege.   Last, Ferm is at least a limited public figure as to his conduct with respect to the

10   foreclosure crisis and his mortgage rescue operation preying upon a large number of Clark County

11   residents and families, and there are no facts supporting Ferm's claim that Defendants acted with

12   actual malice.

13    Ferm has simply failed to demonstrate the absence of material facts that entitles him to

14   summary judgment, since, in reviewing a motion for summary judgment, this Court *must* assume that

15   conflicts in the evidence will be resolved in Defendants' favor and Defendants are entitled to all

16   reasonable inferences in their favor from the evidence.  While at the appropriate time, the Court could

17   resolve the above issues in favor of Defendants on summary judgment, it is abundantly clear that

18   Ferm has failed to carry his burden.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986);

19   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

20   **II.** **STATEMENT OF FACTS**

21    **A.  STATEMENT OF UNDISPUTED FACTS**

22    The following facts are not in dispute:

23    1. Ferm was the founder and executive director of USJF.  *See* Ferm Dec., Doc. 138-1 at ¶

24   2; 9/21/11 News Report, attached as Exhibit C to Second Amended Complaint, Doc. 131 ("SAC").

25   Ferm is not a licensed attorney in any state.  App. Exh 18-19 at 55:24-25; doc. 140 at 1-2.

26    2. Ferm funded USJF to purportedly address the "mortgage foreclosure crisis" and

27   promised to stop foreclosures and protect homeowners from losing their homes due to foreclosure.

28   Exhibit C to SAC; App. Exh. 14.  Ferm and USJF promised the public that, for a fee of a few

thousand dollars, they would "prepare all of the paperwork necessary to keep you in your home." *Id*. The USJF "Retainer Agreement" provides: "The U.S. Justice Foundation will prepare all of the paperwork necessary to keep you in your home" and "I hereby retain the US Justice Foundation to prepare the paperwork necessary to keep me in my home." App. Exh. 15.

3.     In 2008 and into 2009, Ferm regularly appeared on a local television program in Las Vegas—KVVU Fox5 Las Vegas where--he was interviewed and represented himself as a "Consumer Advocate" whose mission it was to "inform the public of the extent of the foreclosure problem and how that could be stopped." See App. Exh 16 (Verified Complaint) at ¶12; Ferm Affidavit, Doc. 219-6, at ¶¶11, 14; Ferm's "Blog" entry on February 1, 2009, App. Exh. 32; App. Exh. 16 at ¶ 12.

4.     In 2008 and 2009, Ferm volunteered to be interviewed by the media on issues related to the mortgage/foreclosure crisis, presenting himself as an "expert" on the issue. *Id*.; App. Exh. 20; App. Exh. 1 at ¶5; Doc. 138-1 at ¶13 (Ferm Declaration discussing him being interviewed by Channel 5); App. Exh 31; App. Exh. 33.

5.     Ferm represented to the public that he could assist them in legal proceedings and save their homes from foreclosure by filing lawsuits against lenders, mortgage servicers, title companies and other entities associated with the underlying loans.  App Exh. 20.  Ferm estimates that during the six months USJF was operating, it caused approximately 500 of these lawsuits to be filed in Clark County, Nevada.  Doc. 138-1 at ¶7; Doc 219-6 at ¶10 (in excess of 400).

6.     On February 5, 2009, the Honorable Roger Hunt, U.S. District Court Judge, issued an Order to Show Cause to Jack Ferm directing that he appear and show cause why he should not be held in contempt for having committed the unauthorized practice of law.  App. Exh. 17.

7.     Although Ferm initially did not respond to KLAS's efforts to contact him in connection with investigating and preparing the initial reports on problems and complaints surrounding the U.S. Justice Foundation, once the courts started taking action against him, Ferm reached out to McCarty and requested an interview.  App. Exh. 1 at ¶5; App. Exhs. 2, 3.

8.     At the hearing on March 5, 2009, the Court held Jack Ferm in contempt for the unauthorized practice of law.  App. Exh. 20.  The Court made a number of factual findings and, among other sanctions, permanently enjoined Jack Ferm and USJF "from filing further claims,

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

preparing documents, or assisting people in preparing documents to file complaints against mortgage companies and foreclosure trustees, or in an effort to prevent them from being evicted or to stop the foreclosure of their property." *Id.*; App. Exh. 18-19. McCarty attended. App. Exh. 1, at ¶8.

9.     During the March 5, 2009, hearing, Judge Hunt noted that he had encountered a number of complaints prepared by USJF "[a]nd in each of those cases in which the Court has conducted hearings on Motions to Dismiss the Court has observed/found that the complaints were frivolous and that they were without any foundation in law or fact." App. Exh. 18 at 5:6-12.

10.     At the hearing, the Court made the following findings of fact:

a.     [Ferm] held himself out to the news media and to the public as one able to represent clients in legal proceedings.
b.     [Ferm] gave legal advice to members of the public that came to the U.S. Justice Foundation for legal help to prevent the foreclosure of their real property.
c.     [Ferm] caused clients of the U.S. Justice Foundation to sign a retainer agreement which promised to (1) prepare a complaint, lis pendens and an application for TRO; (2) oppose all motions by defendants; (3) prepare all discovery; (4) prepare answers and motions in an unlawful detainer action; and (5) prepare motions to compel discovery, for summary judgment and all other necessary motions.
d.     [Ferm] misled clients of the U.S. Justice Foundation to believe they were being represented by attorneys.
e.     [Ferm] charged clients of the U.S. Justice Foundation $2,500 up front and $150 per month thereafter for the aforementioned legal services.

App. Exh. 20.____

11.     On February 17, 2009, Nevada State District Court Judge Ken Cory issued an Order to Show Cause to Ferm and USJF.  App. Exh 21; *see also* Exhibit G to SAC.  The hearing was held on March 10, 2009.  App. Exh. 22.  McCarty attended.  App. Exh. 1 at ¶9.

12.     On March 10, 2009, KLAS published a news article by McCarty entitled "*More Legal Trouble for U.S. Justice Foundation*" which discusses Ferm's contempt hearing before Judge Cory.  Exhibit F to SAC, Doc. 131; App. Exh. 4.

13.     On February 27, 2009, Nevada State District Court Judge Kathleen Delaney issued an Order To Show Cause to Ferm to appear and show cause why he should not be found to have committed the unauthorized practice of law and held in contempt.  App. Exh. 23.

14.     On March 11, 2009, Judge Delaney reached the same conclusions as Judge Hunt, and found that Ferm had engaged in the unauthorized practice of law and that the complaints and motions

prepared and filed by USJF "were frivolous in nature."  App Exh. 24, 25.  Judge Delaney ordered Ferm and USJF to cease activities and disgorge fees received.  *Id*.  McCarty attended this hearing as well.  App. Exh. 1 at ¶11-12

15.     The contempt orders entered by Judge Hunt and Judge Delaney effectively shut down USJF's operations.  Ferm Decl., Doc. 219-6, at ¶26.

16.     On March 9, 2009, the State Bar of Nevada filed a civil lawsuit against Ferm and USJF, alleging both had engaged in the unauthorized practice of law.  App Exh. 26.

17.     On March 11, 2009, the Nevada Attorney General's Office (the "AG") arrested Ferm on "two counts of felony theft and related charges in connection with the operation of U.S. Justice Foundation."  App. Exh. 27.  The arrest was publicized by the AG in a Press Release that refers to Ferm's business with USJF as "a mortgage rescue scam."  *Id*.

18.     On October 2, 2009, a Grand Jury Indictment was filed containing charges against Ferm on several criminal offenses related to his activities with USJF.  App. Exh. 28.   The Attorney General issued a press release entitled "Attorney General Announces Indictments In Foreclosure Rescue Scam Involving Former Las Vegas Radio Host."   App. Exh. 34.   In a web-published interview, Ferm described the AG's publicized press releases regarding him as having destroyed his reputation.  App. Exh. 35.

19.     KLAS was among several local media to report regarding Ferm's legal troubles.  App. Exh. 33, 36.

20.     On September 21, 2011, Ferm entered into a Plea Agreement with the AG.  App. Exh. 29.  Ferm *pled nolo* contendere to "Theft - Obtaining Money in Excess of $2,500 by Material Misrepresentation     from     a     Person     Over     Sixty     Years     of     Age."  *Id*.  As part of the Plea Agreement, Ferm agreed to pay $192,168.00 in restitution to the "charged victims."  <u>If</u> Ferm pays the full amount within a specific period of time, Ferm may request that the State file an Amended Criminal Information charging him with Attempted Theft to which he will plead guilty.  *Id*. at p. 1.  As part of the Plea Agreement, Ferm also (a) admitted that "the State could, at trial, prove the facts which support all the elements of [felony theft]"; (b) waived his "right to appeal the ***conviction***"; and (c) acknowledged, "I believe that ***pleading guilty*** and accepting this plea

1    bargain is in my best interest and that a trial would be a contrary to my best interest." *Id.* at p. 3-4

2    (emphasis added).[2]

3        21.    During the court hearing on September 21, 2011, when the Plea Agreement was

4    entered, the following exchange occurred between Judge Mosley, Ferm and counsel:

| | |
|---|---|
| THE COURT: | I want to hear him in what he's saying. |
| THE DEFENDANT: | I'm not contesting anything. |
| THE COURT: | It's alleged here, sir, that you, basically, committed what I would call mortgage fraud, meaning that you took money from various individuals in excess of $2500, promising them to do some work to cure their problems with the mortgages, and you did not perform as you represented you would do. Is that correct? |
| THE DEFENDANT: | I did not perform on the cases; yes, Your Honor. |
| THE COURT: | You're not contesting that? |
| THE DEFENDANT: | No. |
| THE COURT: | In review of the file of that information that has been submitted to the Court, ***I determine that this gentlemen is, in fact, guilty, notwithstanding his nolo contendere plea.*** I'm going to stay adjudication in the matter. I'm going to allow restitution to be paid in the manner that was suggested, a minimum of $7,000 by the month of January of next year. |
| | * * * |
| THE COURT: | So as a practical matter, what we're doing is staying adjudication and passing the sentencing hearing to a future date; is that correct? |
| [PROSECUTOR]: | That's correct. |
| [FERM'S ATTORNEY]: | That's correct. |

App. Exh. 30 at 6:15-7:25 (emphasis added).

        22.    On September 21, 2011, KLAS published a news report by McCarty about Ferm's

Plea Agreement, which was entitled "*Head of Mortgage Modification Takes Plea Deal.*" Exhibit C

---

[2]  The public, including the media, is of course, entitled to read the plain language and presume that the terms of the agreement, entered into in open court and approved by a Nevada judge, will in fact be carried out. *Cf.* NRS 47.240(2); 47.250(11). Hence it is not speculation to read the Plea Agreement as providing for Ferm's conviction of a crime.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

to SAC; App. Exh. 6.  Ferm alleges that the content of this news report is "substantially true" and has attached a copy of this news report to the SAC, so there is no dispute regarding its content.  SAC at ¶ 9, Doc. 131.

23.     On October 31, 2011, Defendant Steve Kaniger requested information from the AG for an article he was writing about successful prosecutions by the AG's Mortgage Fraud Task Force. Kaniger Decl. App. Exh. 9 at ¶5; App. Exh. 10.  Specifically he sought "a list of names of those individuals who have been convicted through the Attorney General's Office of mortgage-related fraud in the past few years." *Id*.  Several days later, on November 9, 2011, Mr. Kaniger sent another email to the AG requesting "the list of people convicted of mortgage fraud through the AG's office." *Id*.  On November 9, 2011, Mr. Kaniger received a response from the AG — the body of the AG's response email indicated that here is "the list [he] requested", and it included as an attachment a list of people the AG considered "convicted" of mortgage related fraud.  *Id*.  On this list, Jack Ferm was among those the AG considered "convicted." *Id*.

24.     On November 15, 2011, KLAS published a news report by Kaniger entitled "*State AG's Office Cracking Down on Mortgage Modification Scams*."  Exhibit E to SAC; Kaniger Declaration, App. Exh. 9 at ¶7, Exhibit H to SAC; Original Article, App. Exh 11.

25.     On November 16, 2011, as part of a series entitled "Desert Underwater," KLAS published a broadcast by McCarty which referenced Ferm.  Script of Broadcast, Exhibit B to SAC, Doc. 131; App. Exh. 7.

26.     On November 16, 2011, KLAS published a news report by entitled "*Desert Underwater: Scam Artists Prey on Struggling Homeowners*."  Article, attached as Exhibit E to SAC, Doc. 131, and App. Exh. 8.

27.     In April, 2012, Ferm sent a written demand for retraction.  Although at no time did Defendants believe the stories were improper or false, as a courtesy to Ferm, the stories were amended to clarify the timing of a formal entry of conviction and revised to refer to individual's "convicted or who entered plea agreements."  Clarifying notations were added to the web stories, and similar clarifications were broadcast in April, 2012.  App. Exh. 1 at ¶22; App. Exh. 8; App. Exh. 9 at ¶13; App. Exh. 37; App. Exh. 12.

27.    The recession and foreclosure crisis that commenced in 2008 was a matter of preeminent public concern and controversy in Southern Nevada, with large segments of the population losing or at risk of losing their family home and looking for help, private or public.  The crisis was the subject of substantial public comment on how to address the crisis and assist local residents, legislation and action by public officials, subject to substantial media coverage, and the rise of many commercial enterprises who sought to profit in the "mortgage rescue" business of which there were many disreputable enterprises preying on scared and vulnerable citizens.  This was also the subject of significant media coverage and action by public officials to protect the public from scams—including the formation by the Attorney General of a Mortgage Fraud Task Force.  App. Exh. 1 at ¶24; App. Exh. 9 at ¶14; App. Exh. 36; App. Exh. 34.

**B.    DISPUTED MATERIAL FACTS**

In Ferm's Motion, Ferm makes many wholly conclusory factual assertions which represent pure speculation or unwarranted conclusions.  Many items he states as "fact" are legal conclusions or argument.  Below is a list of some of material disputes that preclude summary judgment.[3]

1.    Ferm contends that "Defendants' Statements of November 15-16 accused Plaintiff of having been convicted of a crime, that Plaintiff had been convicted of a Felony for Mortgage Fraud" were false  Doc. 219 at 5:6-9 and "Plaintiff's Nolo Plea Agreement where adjudication was withheld demonstrates there was no conviction for any crime."  Doc. 219 at 7:16-18.  These assertions are disputed.  App. Exh 1 at ¶14-22, 25, 26; App. Exh. 9 at ¶¶5-13.  Actually, the Plea Agreement states that adjudication is "stayed" pending the restitution period.  App. Exh. 6; App. Exh. 29 at 2:8-10.  The Plea Agreement does <u>not</u> state that Ferm's plea will not be adjudicated, or will never be adjudicated. *Id*.  Indeed, a reasonable understanding of the Plea Agreement and the colloquy at the hearing is that what is really left for "adjudication" is sentencing.  *Id.*; App. Exh. 30 at 7:4-23.  The Plea Agreement explicitly states Ferm shall be convicted and sentenced accordingly—the only contingency is whether or not Ferm pays restitution, which would allow him to be sentenced for the

---

[3]    Defendants have made as complete list in the time allowed to respond to Ferm's filing. It is by no means a list of all disputed facts, but an attempt to provide the material disputes that preclude summary judgment.  Defendants' argument further disputes Ferm's factual assertions/conclusions and shows that, at a minimum, Ferm has failed to meet his burden on summary judgment such that the issues in this action such as substantial truth may be taken away from the jury at this time.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

attempted crime (having given the money back) as opposed to the completed "Theft By Material Misrepresentation."    In the event Ferm makes full restitution the indictment will be amended to charge Ferm with "Attempted Theft" rather than "Theft" and Ferm will be sentenced accordingly. *Id.* at 2:1-22.  If Ferm fails to pay restitution, he will be sentenced for the completed Theft and receive a much harsher sentence. *Id.* at 2:15-22.

Additionally the "falsity" of Defendants stories is directly disputed by Defendants App. Exh 1 at ¶14-22, 25, 26; App. Exh. 9 at ¶¶5-13.   A central issue in this case is whether it is true or substantially true to characterize the outcome of Ferm's criminal case as a conviction (as did the Attorney General).   The basis for this dispute is discussed in Section IV. B, *infra.*    Moreover, McCarty *never* used the word felony in connection with Ferm and Kanigher only used it to *accurately* state that he had pled *nolo contendere* to one count of "Theft - Obtaining Money in Excess of $2,500 by Material Misrepresentation from a Person Over Sixty Years of Age." App. Exh 7; App. Exh. 11.

2.     Ferm's contention that the transcript of Ferm's Plea Agreement hearing shows the articles are "false." (doc. 219 at 5:27-28).  As shown by Undisputed Fact No. 21 above, quite to the contrary.  The court actually found Ferm guilty.  Indeed, the transcript *reinforces* the understanding that Ferm's Plea Agreement provides for his conviction and that sentencing remains to be adjudicated.[4]

3.     Ferm's assertion that Steve Kanigher admits he knew his use of the word "conviction" was false when he published it.  Doc. 219 at 6:13-15.  Steve Kanigher has submitted affidavit testimony directly disputing this assertion.  App. Exh. 9 at ¶5-12.  As for prior declarations, they do not say what Ferm claims they do

4.     Ferm's assertion that McCarty "acknowledged that [she] knew and knows the statements were not true when they made them." (Doc. 219 at 7:1-2).   McCarty has submitted testimony directly disputing this accusation.  App. Exh. 1 at ¶14-22, 25, 26.  Ferm cites only to

---

[4]  This is from the entirety of the transcript, but certainly the Court' pronouncing Ferm, in fact, guilty as well as the discussion regarding "staying sentencing" leads the common observer to conclude that Ferm's conviction is a reality and what is being passed until another time is sentencing after Ferm pays restitution.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1  McCarty's September 21, 2011, story which in no way demonstrates McCarty said anything

2  "knowing" it was false.

3      5.      "McCarty reported that Plaintiff had been convicted and of a felony."  Doc. 219 at

4  9:10-11.  This is disputed.  App Exh. 1 at ¶21.  McCarty never used the word "felony" in any

5  connection with Ferm.  *Id.;* App. Exh. 7.

6      6.      The removal of stories about Ferm from the KLAS Website "concedes" falsity.  This

7  is pure supposition by Ferm that the removal had anything to do with him. The stories no longer

8  appear because of a change of web host and technical issues prevented significant amounts of old

9  content—not just stories about Ferm from being transferred.

10     7.      Ferm's contentions regarding the existence of "evidence" regarding actual malice (i.e.,

11  that the November reports were made knowing they were false or in reckless disregard) is shown by

12  the McCarty's September 21, 2011 Article.  Doc. 219 at 8:7 to 16:23.  Ferm's laundry list of what he

13  contends are items "evidencing" "constitutional malice" (i.e., that defendants made "false" statements

14  (which is itself disputed) knowing they were false or in reckless disregard are directly contradicted by

15  the testimony of McCarty and Kanigher.  App. Exh. 1 and App. Exh. 9.[5]  While hardly the only

16  evidence of an absence of actual malice, fatal to Ferm's Motion is the fact that Defendants were

17  relying upon, in part, the characterization of Ferm as "convicted" by the Attorney General.  App.

18  Exh. 1 at ¶18-19; App. Exh. 9 at ¶5-12.  Moreover, as will be discussed in Section __, *infra*, as a

19  matter of law, Ferm's "evidence" of malice simply does not pass constitutional muster as relevant or

20  probative.[6]  But regardless, it is patent that Ferm has not, and cannot, establish the absence of a

21  material issue of fact regarding actual malice (which he must establish to the high burden of "clear

22  and convincing") and Ferm's Motion must be denied.

23  ///

---

[5]   Both the Nevada and U.S. Supreme Court defines "reckless disregard" for the truth as "a 'high degree of awareness of [the]
probable falsity [of the statement].'"  *See Posadas v. City of Reno*, 851 P.2d 438, 443 (Nev. 1993), citing *New York Time Co. v.
Sullivan*, 376 U.S. 254, 280 (1964). *Id.*, quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  As the Supreme Court has stated, it
exists when the defendant *actually entertained* serious doubts regarding the truth of the challenged assertion but published it anyway.

[6]   For example, Ferm cites as "malice" the fact that Defendants are exercising their *right* to defend this lawsuit.  This is probative of
nothing other than Defendants believe their stories were not improper and Ferm's claims lack merit.  But arguing in court that they
are not liable to Ferm *has absolutely nothing to do* with the Constitutional requirements regarding actual malice.

8.      Ferm's assertions that stated he was "indicted for running a scam by which I was alleged to have used TV ads to "Lure Homeowners to believe the company could provide assistance . . . 'Is also a fabricated statement by McCarty'" or otherwise using the word "scam" in connection with him.  Doc. 219-6 at p. 10 at ¶41-2; Doc 219 at 11:5-10.    Ferm well knows he was indicted, App. Exh. 28, and that the indictment charges him with precisely that conduct.  Ferm's assertion that "scam" is false is directly denied.  App Exh. 1 at ¶26; App. Exh. 9 at ¶12.  Ferm also incorrectly contends the *Desert Underwater* article states he was "indicted for running a Mortgage Modification Scam."   No story by McCarty states that.   App. Exh. 7.   Additionally, the distinction between mortgage rescue and modification is one without difference—all involve unlawful conduct in connection with mortgages and the foreclosure.

C.      **THE NEWS REPORTS UPON WHICH FERM'S CLAIMS ARE BASED**

1.      **The November 15, 2011, News Report**

Ferm alleges that the news report published on November 15, 2011, entitled "State AG's Office Cracking Down on Mortgage Modification Scams," was inaccurate.  SAC at ¶¶ 7, 18-19, 32, Doc. 131.  The introductory paragraphs of this news report discuss the AG's efforts to curb the vast number of scams preying upon vulnerable homeowners, and then states that "[t]hese are recent examples of individuals who have been convicted for crimes where homeowners were victims." App. Exh. 11.  This news report then discusses seven different cases which had recently been pursued by the AG, one of them being the prosecution of Ferm.  *Id*. With respect to Ferm (and his cohort Mario Sanders), the article provides:

> Ferm and Sanders, doing business as U.S. Justice Foundation in Las Vegas, were indicted by the grand jury in October 2009 for running a scam in which they used television ads to lure homeowners into believing the company would provide assistance to clients in the preparation of both complaints against predatory lenders and documents to stop foreclosures.  Instead, the two men were accused of collecting fees from each of five Southern Nevada homeowners without providing services.  Ferm was charged with doing the same to five additional victims, including a 79-year-old woman and 65-year-old man. In September, Ferm pleaded no contest to felony theft/obtaining more than $2,500 by material misrepresentation and agreed to pay $192,168 in restitution.  Sanders pleaded guilty to the same charge in September.  Sentencing is pending.

*Id*.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

The SAC and Ferm's Motion does not allege that any of the language specifically discussing Ferm is false or inaccurate.  Instead, Ferm takes exception to the introductory paragraph of the news report and alleges that it "states that Plaintiff Jack Ferm has been convicted of a Felony."  SAC at ¶¶ 7, 18, Doc. 131; Doc. 219 at 5.  However, it does not actually say that.  The article plainly (and accurately) states that Ferm had pled no contest, and also accurately states the terms of the Plea Agreement.  Ferm's allegations require the Court to focus solely on the introductory paragraph (which does not even identify or reference Ferm) and ignore the actual discussion of Ferm.

Ferm has also alleged that a revision to this new article, made on May 5, 2012, exacerbated the false statements.  SAC at ¶ 10.  The news report was amended to change the language of the introductory paragraph to read "These are recent examples of individuals who have been convicted of *or who have reached plea agreements* in Clark County for crimes where homeowners were victims."  Revised 11/15/11 News Report, App. Exh. 12.  The amendment also added an endnote to news report which states:

> **This article originally identified the individuals in the story as having been "convicted" in Clark County of crimes where homeowners were victims.  As explained in the above story, Jack Ferm was not convicted but instead entered a "no contest" plea agreement with the AG's office, in which he plead no contest to one count of "Theft-obtaining money in excess of $2,500 by a material representation", and agreed to pay restitution to the charged victims.  The plea agreement also allows that if Ferm makes full restitution by the end of a probation period, he may request an amended criminal information reducing his charge to "Attempted Theft," a misdemeanor.

*Id*.  The SAC alleges that this amendment "reinforced [the] original article that Plaintiff had been convicted of a Felony by a plea agreement, stating further that Plaintiff plead [*sic*] no content [*sic*] to a felony and was now on probation."  Doc. 131 at ¶ 10.  Ferm's interpretation is curious, and is not supported by the plain text of the news report.

### 2.  The November 16, 2011, Newscast

Ferm also alleges that a television news broadcast aired November 16, 2011, which mentioned him briefly, was defamatory because McCarty referred to Ferm as one of the AG's "notable convictions."  Doc. 131 at ¶ 8; Doc. 219 at 5.

///

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

This newscast was about prosecutions against mortgage fraud.  App. Exh. 7.  The script's fifteen-line lead in, which was read over the air by two KLAS anchors before the cameras panned to McCarty, succinctly states that this newscast is about the prosecution of people in Nevada accused of defrauding vulnerable homeowners attempting to stave off foreclosure.  *Id*.  McCarty then read eleven lines of script regarding the prevalence and sophistication of these criminal enterprises in general, and then presented her report about the arrest of three individuals (unrelated to Ferm) who were accused of theft and mortgage fraud.  *Id*.  The newscast then discussed that unrelated case in detail, and included clips of interviews with a district attorney and an alleged victim.  *Id*.

The newscast then closes with a discussion of similar crimes recently prosecuted by the AG's Mortgage Fraud Task Force, which is the point where Ferm is mentioned.  *Id*.  In reference to the Task Force, McCarty stated, "notable convictions include Jack Ferm.  Recently ordered to pay nearly two hundred thousand dollars in restitution to his victims, Ferm, who is not an attorney, claimed he could help homeowners sue their lenders."  *Id*.  McCarty then discussed separate prosecutions against Joseph Yorkus and Cindy Birkland. *Id*.  As proven by a review of the actual script, Ferm's claims again require one to ignore the entirety and context of the report.   After receipt of Ferm's demand for retraction, KLAS broadcast as a courtesy to Ferm a series of clarifications which provided more specificity as to when formal entry of conviction would take place which were substantially similar to the end-notes placed on the web articles.   App. Exh. 37.  Like the other clarifications, these were as a courtesy to Ferm because the clarification did not affect the real content and import of the story and in no way reflect a belief that the original story was defamatory.[7]

### 3.    The November 16, 2011, News Article

Ferm also complains of a news report published on November 16, 2011, entitled "*Desert Underwater: Scam Artists Prey on Struggling Homeowners*."  Doc. 131 at ¶ 11; Doc 219 at 5.  This news report contains much of the same information presented in McCarty's broadcast of the same date about the AG's unrelated prosecution of another mortgage fraud case.  11/16/11 News Report, App. Exh. 8.  It presents the same quotes from the AG and victims that were also aired on that broadcast.  *Compare id*. to Broadcast Script, attached as Exhibit 7.  It links to a slideshow entitled

---

[7]  Of course, Ferm is prohibited in citing and relying on subsequent remedial measures as evidence of liability.  FRE 407.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

"People Convicted for Foreclosure Scams," which presents additional information regarding three prior prosecutions by the AG, including the prosecution of Ferm.  App. Exh. 8 Doc. 131 at ¶ 11.

This news report was revised on May 10, 2012.  Doc. 131 at ¶ 11; App. Exh 8; App. Exh. 1 at ¶22.  The content regarding Ferm states:

> Jack Ferm, was ordered to pay nearly $200,000 in restitution to his victims.  Ferm, doing business as U.S. Justice Foundation in Las Vegas, was indicted by the grand jury in October 2009 for running a scam in which he used television ads to lure homeowners into believing the company would provide assistance to clients in the preparation of both complaints against predatory lenders and documents to stop foreclosures.  He *pled no contest and agreed to pay restitution*.

App. Exh. 8 (emphasis added).   The title of the slideshow was changed to "People Arrested for Foreclosure Scams," and an endnote was added to both which is the same as the endnote added to the 11/15/11 News Report.

## III.     LEGAL STANDARD

This Court must review Ferm's motion for summary judgment in the light most favorable to Defendants.  *CRM Collateral II, Inc. v. TriCounty Metro. Transp. Dist. of Oregon*, 669 F.3d 963, 968 (9th Cir. 2012).   Summary judgment may only be granted in Ferm's favor if, after applying the relevant substantive law, there are no genuine issues of material fact <u>and</u> Ferm is entitled to judgment as a matter of law.  *Id*; FED. R. CIV. P. 56(c).

A party opposing summary judgment is not required to prove that an issue of material fact will be resolved conclusively in its favor; rather, the nonmoving party must simply present "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Thus, the judge reviewing a summary judgment motion does not weigh conflicting evidence of a disputed material fact or make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions.  *Id.* at 255-56.   Rather, at the summary judgment stage, the judge is asked to review whether direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party.  If a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Inferences must

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1   be drawn in the light most favorable to the nonmoving party and may be drawn from underlying facts

2   that are not in dispute, such as background or contextual facts, and from underlying facts on which

3   there is conflicting direct evidence but which the judge must assume may be resolved at trial in favor

4   of the nonmoving party.  *See Anderson*, 477 U.S. at 253-55; *Matsushita*, 475 U.S. at 587.

### IV.   LAW AND ARGUMENT

6       A plaintiff alleging defamation in Nevada must prove: (1) a false and defamatory statement

7   by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault,

8   amounting to at least negligence; and (4) actual or presumed damages.  *Pegasus v. Reno Newspapers,*

9   *Inc.,* 57 P.3d 82, 90 (Nev. 2002).  Where, as here, the plaintiff is a public figure, the requisite intent

10  required is elevated from negligence to actual malice.  *Id.* at 90.  Therefore, to succeed on a claim for

11  defamation, Ferm must demonstrate, ***by clear and convincing evidence***, that Defendants acted with

12  reckless disregard for the truth.  *Nevada Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 344 (Nev.

13  1983).

14      A claim of false light requires a plaintiff to prove that (1) the defendant gave publicity to a

15  matter concerning plaintiff that placed plaintiff before the public in a false light and would be highly

16  offensive to a reasonable person; (2) the defendant made at least an implicit false statement of

17  objective fact; and (3) the defendant acted with "actual malice," i.e., having had knowledge of, or

18  acted in reckless disregard as to, the falsity of the publicized matter.  *Flowers v. Carville*, 266 F.

19  Supp. 2d 1245, 1252 (D. Nev. 2003); RESTATEMENT (SECOND) OF TORTS §652(e) (1977).  This is the

20  same standard for showing "actual malice" as in a defamation action.  *See Posadas v. City of Reno*,

21  851 P.2d 438, 443 (Nev. 1993).  The false light action differs from a defamation action in that the

22  injury in privacy actions is mental distress from having been exposed to public view, while the injury

23  in defamation actions is damage to reputation."  *PETA v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1273

24  n.4 (Nev. 1995), overruled in part on other grounds by *City of Las Vegas Downtown Redevelopment*

25  *Agency v. Hecht*, 940 P.2d 134, 138 (Nev. 1997).

26      While Ferm cannot obtain summary judgment on his false light claim for additional reasons,

27  Ferm's claim for false light fails for the same reasons his claim for defamation fails—he has not and

28  cannot establish a lack of dispute of fact regarding the elements of his claims; no materially false

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

statement exists and Defendants did not act with "actual malice" when they reported on the criminal case against Ferm.

Notably Ferm's motion does not cite a single case upholding summary judgment in favor of a plaintiff.  Nor does he cite a single case holding that describing a *nolo contendere* plea as a conviction is defamatory as a matter of law.  While Ferm has failed to demonstrate the absence of a material question of fact regarding the first element, the publication of a false statement, because the stories were either true or substantially true in the context of defamation and additionally protected by the fair report privilege, the Court need not go into that analysis to determine that Ferm's Motion must be denied.  Even if it were false to characterize the outcome of Ferm's criminal action as a "conviction," which Defendants deny, Ferm is a public figure and he has not, and cannot, establish that there exists no material disputed facts regarding whether Defendants published anything with actual malice.

> **A.**   **THE EVIDENCE BEFORE THE COURT CONCLUSIVELY DEMONSTRATES FERM IS A PUBLIC FIGURE AND DEFENDANTS DID NOT KNOWINGLY MAKE UNTRUE STATEMENTS OF FACT OR PUBLISH FALSE STATEMENTS WITH RECKLESS DISREGARD**

A defamation plaintiff must also prove fault.  *Pegasus v. Reno Newspapers, Inc.,* 57 P.3d 82, 90 (Nev. 2002).  When the plaintiff is a public figure, he must prove, by clear and convincing evidence that the defendants acted with actual malice when they expressed the supposed defamatory statements.  *Id.*; *Nevada Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 344 (Nev. 1983); *Anderson* 477 U.S. at 254-55.  The clear and convincing standard must be considered on summary judgment.  *Id.*  Whether Ferm is a public figure is a question of law for the Court.  *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1551 (4th Cir. 1994); *Lundell Mfg. Co., Inc. v. Am. Broad. Co.*, 98 F.3d 351, 362 (8th Cir. 1996); *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 251 (1st Cir. 2000).

///
///
///
///
///

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1.    **Ferm Voluntarily Thrust Himself Into The Mortgage/Foreclosure Crisis And Is Therefore A Limited Public Figure**

The parties do not dispute that Ferm is a public figure for the purpose of the defamation claim and that he must establish actual malice by clear and convincing evidence.  Motion, Doc. 219, at pp. 3, 8.    Indeed, Ferm seeks summary judgment on the issue of *"constitutional malice"* which he describes as "reckless disregard" and not *negligence*, conceding the point.  *Id.*[8]

There are two categories of public figures: general public figures and limited public figures. *Pegasus*, 57 P.3d at 91; *Gertz v, Robert Welch, Inc.*, 418 U.S. 323, 351-52, 94 S.Ct. 2997 (1974).  A limited purpose public figure is "a person who voluntarily injects himself or is thrust into a particular public controversy or public concern, and thereby becomes a public figure for a limited range of issues." *Id.*  Generally, when a person injects themselves voluntarily into a matter of public concern, they become a public figure with respect to publications concerning them related to that issue.

In *Pegasus*, the Nevada Supreme Court conclusively determined that a person or entity that offers goods or services to the public and advertises its goods and services to the public is a limited public figure for the purpose of news reporting covering the quality of those services.  *Pegasus*, 57 P.3d at 92 ("We agree with our sister states' rationale that a place of public accommodation has voluntarily injected itself into the public concern for the limited purpose of reporting on its goods and services.").   In reaching that conclusion, Court quoted approvingly a decision from the Indiana Supreme Court:

> "Restaurants and other establishments that actively advertise and seek commercial patronage have been routinely held to be public figures, at least for the limited purpose of consumer reporting on their goods and services.  Hence while Bandito's may not necessarily have been a public figure before the health department closed the restaurant, we find that it certainly became a public figure for the limited purpose of issues concerning the health department's report and the circumstances giving rise to the closing of the restaurant."

*Id.* at 720-21 (quoting *Journal-Gazette Co. v. Bandido's*, 712 N.E.2d 446, 449-50 (Ind. 1999)).

---

[8]  Ferm in other filings has conceded he was a limited public figure.  Doc. 139 at 11:5-13.  In that filing he argued he was no longer a public figure in 2011.  Numerous courts have concluded that an individual who becomes a limited purpose public figure with respect to a particular controversy retains that status for the purpose of later commentary on that same controversy.  *See Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 619 (2d Cir. 1988); *Street v. Nat'l Broad. Co.*, 645 F.2d 1227, 1235-36 (6th Cir.), cert. granted, 454 U.S. 815, cert. dismissed, 454 U.S. 1095 (1981); *Medure v. Vindicator Printing Co.*, 273 F. Supp. 2d 588, 631 (W.D. Pa. 2002); *Mosesian v. McClatchy Newspapers*, 233 Cal. App. 3d 1685, 1703, 285 Cal. Rptr. 430, 441 (Cal. Ct. App. 1991).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

A person or entity that offers goods or services to the public and advertises its good and services to the public is thus a limited public figure for the purpose of news reporting covering the quality of those services, particularly when those good and services, like Ferm, become the subject of a public controversy (such as an indictment and criminal prosecution). *Id*. Thus, Ferm is a limited public figure in connection with the USJF and subsequent criminal prosecution against him for his misconduct arising out of that mortgage rescue operation.

Additionally, starting in 2008, Ferm voluntarily and pervasively thrust himself into the middle of what has been termed the "mortgage/foreclosure crisis" in Southern Nevada—an area that is unquestionably a matter of public concern.  In 2009, Ferm referred to himself as a "regular" on a television station—KVVU Fox 5 Las Vegas—where he acted as a so-called "Consumer Advocate" to "inform the public of the extent of the foreclosure problem and how that could be stopped."  App. Exh 16 at ¶ 12; App. Exh. 32.[9]

 Ferm admits that he made regular television appearances in Las Vegas from about October 2008 until the end of January, 2009.  *Id*.  He also offered himself for interviews as an expert to other media sources to comment on the foreclosure crisis.  App. Exh. 31; Doc. 138-1 at ¶13.   In Ferm's most recent declaration, he discusses his regular More Show appearances and his statements while being interviewed on the program criticizing the Nevada Attorney General and her response, or in his opinion lack of response, to the foreclosure crisis.  Ferm Dec., Doc. 219-6, at ¶14.

Importantly, at least *nine* witnesses called to testify against Ferm before the Grand Jury saw Ferm on television—during one of his KVVU Fox 5 "More" show broadcasts—and were therefore persuaded to contact Ferm and the U.S. Justice Foundation *because of* the broadcast.  App. Exh. 38-39 at pp. 12-15, 36-37, 53, 79, 107, 128, 177, 190-191, 208.

Ferm has suggested in prior filings that he paid a fee to be interviewed on The More Show

---

[9]  Ferm writes in his web-blog:

      Since October, 2008, I was a regular on television station KVVU Fox 5 Las Vegas on The More Show.  As a Consumer Advocate, I was informing the public of the extent of the foreclosure problem, and how that could be stopped.  The Attorney General of Nevada and or the Governor could initiate a Foreclosure Moratorium, as was done in the last great Depression of 1933.  But they have no interest in stopping foreclosures, and I would ask why not?? App. Exh. 32.

and therefore should not be considered a public figure.[10]   First, in Nevada (and many other jurisdictions), when one voluntarily inserts oneself into the public eye by prominently advertising ones goods or services and encouraging the public to utilize them,  one *is* a limited public figure for public controversy that arises over those services.  *Posadas*, *supra*.[11]   Further, many courts have found that aggressive advertising alone can render a person a limited public figure when public controversy arises regarding the goods or services advertised.  *See*, *e.g.*, *Makaeff v. Trump University*, 715 F.3d 254, 266-68 (9th Cir. 2013) (aggressive advertising can inject person or entity into a public controversy that arises from the subject of that advertising); *Steaks Unlimited v. Deaner*, 623 F.2d 264, 273 (3rd Cir. 1980) (aggressive local advertising that "appears to have created" a controversy sufficient for public figure status); *Blue Ridge Bank v. Veribanc, Inc.* 866 F.2d 681, 687 (4th Cir. 1989) (limited public figure not only because of aggressive advertising but also because of a "direct relationship between the promotional message and the subsequent defamation (indicating plaintiff's pre-existing involvement in the particular matter of public concern and controversy." (describing *Nat'l Found. For Cancer Research, Inc. v. Council of Better Bus. Bureaus, Inc. (NFCR)* 705 F.2d 98 (4th Cir. 1983)).  Key in these cases is the existence of a public controversy connected to the subject matter of the advertising.  *Id.*

///

///

///

///

---

[10]  Ferm has made this bare contention in the past but has provided no evidence beyond his bare assertion.  But that Ferm compensated Fox 5, if he did, does not change the nature of the More Show as a regular local television show using an interview format which Ferm participated in.  His private desire--and alleged willingness to pay--to bring publicity and public prominence for himself does not change his voluntary involvement in a public controversy.  Indeed, that he accessed the More show to provide an air of "legitimacy" for his "expert" opinions offered on the More Show is telling.

[11]  *Bongiovi v. Sullivan*, 138 P.3d 556 (Nev. 2006), is not to the contrary.  There, one plastic surgeon competing for a patient with another told the patient that the other had "killed a patient" and was "under investigation."  This was wholly fabricated.  The defendant argued that the plaintiff's status as a well respected physician made him a limited public figure.  The Nevada Supreme Court found that to be insufficient, but made it clear that the outcome would have been different had that physician were to voluntarily insert himself into a public debate about a local or national issue.  The national foreclosure crisis arising out of the "great recession" of 2008 had its epicenter in Southern Nevada, devastating large segments of the population and threatening many more.  It, and what desperate homeowners could do, along with the many predatory operations that arose promising to help, were a large issue and public controversy.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

Ferm, of course, did much more than merely advertise.  He voluntarily injected himself into the very public mortgage foreclosure crisis.  Indeed, he admits he formed the USJF mortgage rescue operation *because of that public controversy*.  Doc. 219-6.  He offered himself to the media for comment on those issues.  App. Exh. 16 at ¶12, App. Exh. 32, 31, Doc. 138-1 at ¶13.  He contacted public officials to seek to influence the controversy.  *Id.*

Ferm's *More* Show appearances, by his own admission, were far more than 30 second purely commercial spots.  He has described the *More* Show (under oath) as a "daily" local show broadcast by KVVU Fox 5 Las Vegas hosted by news anchor Monica Jackson.  App. Exh. 16 at ¶4.  He further describes his regular appearances where he would be "interviewed" on the mortgage foreclosure crisis and offer his position on the actions, or inactions, of public officials.  Ferm Dec., Doc. 219-6 at ¶14; App. Exh. 32.  He even would comment on how public officials could address the problem.  *Id.* This is far more than mere innocuous commercial advertising wholly unconnected to any issue of public concern.

Indeed, his appearances on the Fox 5 *More* Show generated, by his own words, massive public interest in his "solutions" and he had unquestionably inserted himself into a matter of public concern *before* he was arrested, indicted and ultimately entered into a Plea Agreement with respect to his U.S. Justice Foundation mortgage rescue enterprise—and of course the arrest and prosecution of a mortgage rescue fraud is a public controversy as well.[12]

This is not a case where a person having no involvement in a public controversy has one created by the defendants around him.[13]  Ferm injected himself into the foreclosure crisis, formed a business to take advantage of it, sought publicity and attention for himself and his USJF operation. He, quite intentionally and voluntarily, injected himself into the massive public controversy which

---

[12]  In addition, a case cited by Ferm further supports his status as a public figure.  *Dameron v. Washington Magazine, Inc.* 779 F.2d 736 (D.C. Cir. 1985) There the appeals court affirmed entry of summary judgment for defendants on the grounds that the plaintiff, an air traffic controller, was a public figure.  Although, unlike Ferm, the controller did nothing to voluntarily insert himself into a public controversy, he became a limited public figure with respect to an air crash because he was inherently connected to that public controversy.  Ferm intentionally injected himself into the mortgage crisis and the very public controversy regarding rescue scams; and his arrest, prosecution and conclusion of his criminal case was certainly a matter of public concern.

[13]  One article in the Las Vegas Review Journal from October 3, 2009 reported that the Attorney General was then prosecuting 140 separate mortgage modification or foreclosure consultation fraud cases.  App. Exh. 36.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

was the foreclosure crisis arising out of the recession commencing in 2008 affecting and devastating large segments of Southern Nevada.  His activities caused the filing, by his own admission, of hundreds of lawsuits of dubious merit.  The public controversy and his voluntary involvement existed before he drew the attention of the public regarding accusations of misconduct and ultimately, public attention to his arrest and prosecution.

Unlike the physician in *Bongiovi*, Ferm and his USJF are no private actors engaged in purely private business.  In that case, the Court found the physician was not a public figure precisely because that physician did *not* engage in the conduct that shows that Ferm is at least as to the foreclosure crisis, the USJF and his criminal case.   Unlike the physician in *Bongiovi,* Ferm voluntarily inserted himself into matters of public concern by broad advertising, giving interviews on public issues, contacting public officials and the like.  Ferm thrust himself into the public eye calling himself a "consumer advocate" and publicly addressing, through his regular interview appearances on the *More* Show, among other avenues, the very pressing foreclosure crisis public controversy.  He was certainly a public figure for the purpose of media attention with respect to his subsequent arrest, indictment and prosecution when the "consumer advocate" was accused of being a "consumer fraud" (and ultimately entered into his Plea Agreement).

Other evidence demonstrating Ferm's status as a public figure includes Ferm contacting Defendant McCarty for an interview in connection with the issues that ultimately led to his prosecution.  App. Exh. 1 at ¶5.  And, Ferm's biography brags about his numerous guest appearances on radio and television shows "across the country" as well as his authorship of books regarding asset protection.  App. Exh. 14.  When the AG issued a Press Release covering his arrest, the AG referred to Ferm as "a former talk show host in Las Vegas, Nevada."  App. Exh. 27.  Additionally, Ferm has stated, under oath, that when local attorney Bob Massi (a Fox legal commentator) did an interview (ironically on the *More* Show) discussing and warning the public regarding mortgage rescue scam operations, never mentioning Ferm or the USJF, the viewing public immediately assumed Massi was referring to Ferm, App. Exh 16 at 32, showing that Ferm was very prominent and well known to the public in the context of "mortgage rescues."

///

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

As a result of this voluntary and pervasive effort to insert himself into the public discourse on a matter of significant public concern and controversy, through broadcast appearances among other things, Ferm is clearly a public figure as to matters related to the foreclosure crisis including his criminal prosecution arising out of his USJF mortgage rescue operation. In addition to effectively conceding his status, his Motion wholly fails to establish the absence of a material question of fact regarding his public figure status.

>    **2.    Defendants Did Not Act With Reckless Disregard When They Published Their News Reports**

Because Ferm is a public figure, he must demonstrate, by <u>clear and convincing evidence</u> that Defendants acted with actual malice. *Nevada Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 344 (Nev. 1983). He cannot do so. Defendants' statement that Ferm was "convicted" was based upon (1) a reasonable understanding of the Plea Agreement, (2) a statement they received directly from the Attorney General regarding Ferm's criminal proceedings and (3) the actual proceedings at the hearing when Ferm's plea was entered. Exhibit 1 at ¶¶14-20, 24-26; Exhibit 9 at ¶¶5-12; Exhibit 10; Exhibit 30. Defendants did not have any doubts, or reason to doubt, the truth of their news reports. (*Id.*).

Nevada law defines actual malice as a defendant's "knowledge of the falsity of the statement or a reckless disregard for the truth." *Posadas*, 851 P.2d at 443, citing *New York Time Co. v. Sullivan*, 376 U.S. 254, 280 (1964).[14] Reckless disregard, in turn, is defined as "a 'high degree of awareness of [the] probable falsity [of the statement].'" *Id.*, quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Nevada aligns with other jurisdictions in applying a very narrow definition and test for what amounts to "reckless disregard" with respect to allegedly tortious speech: reckless disregard for the falsity of a statement is demonstrated through clear and convincing evidence that the defendant entertained "serious doubts as to the truth of the statement, but published it anyway." *Posadas*, 851 P.2d at 443. The test is therefore a subjective one—i.e., whether the defendant "entertained <u>serious doubts</u>" regarding the truthfulness of the statement. *Id.* at 414-15, citing *St. Amant v. Thompson,* 390 U.S. 727 (1968). "[T]he focus [is] on what the defendant *believed* and

---

[14] As the US Supreme Court has commented, use of the phrase "actual malice" is unfortunately confusing "because it has nothing to do with bad motive or ill will." *Harte Hanks Comm., Inc. v. Connaughton*, 491 U.S. 657, 667 and n.7 (1989).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1  *intended to convey,* not what a reasonable person would have understood the message to be." *Id.* at

2  415.[15]

3        Defendants have categorically and directly disputed Ferm's allegations of actual malice.  App.

4  Exh. 1 and 9.  There are generally three types of circumstantial evidence that support a finding of

5  actual malice: evidence the report was: (1) fabricated or a product of the reporter's imagination; (2)

6  based on an unreliable source, or; (3) "so inherently improbable that only a reckless man would have

7  put them in circulation.  *St. Amant*, 390 U.S. at 732; *see also Franklin Prescriptions, Inc. v. The New

8  *York Times Co.*, 267 F. Supp. 2d 425, 433 (E.D. Pa. 2003).  Malice cannot be alleged or shown by

9  failure to investigate alone.  *St. Amant*, 390 U.S. at 731.[16]  Similarly, it may not be shown through

10  negligence, or ill will, spite or desire to harm the plaintiff.  *Harte-Hanks*, 491 U.S. at 666-67 and n.7.

11  "Nor can the fact that the defendant published the defamatory material in order to increase its profits

12  suffice to prove actual malice."   The Supreme Court recognizes that this high standard renders a

13  significant number of statements to be inactionable, and noted that its definition of malice as

14  subjective awareness of falsity:

15        may be said ... [to] put[] a premium on ignorance, encourage[] the irresponsible
        publisher not to inquire, and ***permit[] the issue to be determined by the defendant's***
16        ***testimony that he published the statement in good faith and unaware of its***
        ***probable falsity***.  Concededly the reckless disregard standard may permit recovery
17        in fewer situations than would a rule that publishers must satisfy the standard of the
        reasonable man or the prudent publisher.  But *New York Times* and succeeding cases
18        have emphasized that the stake of the people in public business and the conduct of
        public officials is so great that neither the defense of truth nor the standard of
19        ordinary care would protect against self-censorship and thus adequately implement
        First Amendment policies.  Neither lies nor false communications serve the ends of
20        the First Amendment, and no one suggests their desirability or further proliferation.
21        ***But to insure the ascertainment and publication of the truth about public affairs,***
        ***it is essential that the First Amendment protect some erroneous publications as***
22        ***well as true ones***.

23  *St. Amant*, 390 U.S. at 731-32 (emphasis added).

24  ───────────────

25  [15]  *See also Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167,   (Tex. 2003) ("Reckless disregard is a subjective standard, focusing on the defendant's state of mind. [citation omitted].  Mere negligence is not enough.").

26  [16]  *See also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)(holding that "failure to investigate before
27  publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); *Beckley
  Newspapers Corp. v. Hanks*, 389 U.S. 81,  84-85 (1967)("[I]t cannot be said on this record that any failure of petitioner to make a
28  prior investigation constituted proof sufficient to present a jury question whether the statements were published with reckless
  disregard of whether they were false or not.").

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1    In order to be entitled to summary judgment, Ferm must establish a lack of a dispute of

2    material fact that KLAS published the content in question with knowledge of its falsity or with

3    reckless disregard for their truth or falsity.  *Anderson,* 477 U.S. at 255-56; *Dodds v. Am. Broad. Co.,*

4    145 F.3d 1053, 1060 (9th Cir. 1998); *Bose Corp. v. Consumers Union*, 84 F.R.D. 682, 685 (D. Mass.

5    1980) ("the plaintiff bears the burden of responding to declarations of good faith by introducing facts

6    from which the existence of actual malice might be inferred.").  Ferm must show that <u>no</u> genuine

7    issues of material fact exist with respect to whether KLAS seriously and "subjectively doubted the

8    veracity of the statements."  *Dodds*, 145 F.3d at 1060, citing *Bose Corp. v. Consumers Union,* 466

9    U.S. 485, 513 (1984).

10    Ferm has not, and cannot, establish a knowing false statement or recklessness.  McCarty and

11    Kanigher have both provided sworn statements that they believed the stories to be true and still

12    believe them to be true.  App. Exh. 1 and 9.[17]  The news reports were not fabricated.  Instead, they

13    were based on reliable sources—a reasonable lay understanding of the Plea Agreement itself and a

14    statement received directly from the Attorney General regarding Ferm's criminal proceedings.  *Id*.

15    There is <u>no</u> direct evidence that Defendants acted with malice or recklessly when they published a

16    broadcast noting Ferm as among one of numerous "notable convictions."  Ferm's bare declarations to

17    the contrary and claimed list of circumstances that he argues allow the inference of actual malice fall

18    far short of satisfying his burden on summary judgment.  Defendants believed the result of the

19    prosecution of Ferm was a "notable conviction" both based on their understanding of the Plea

20    Agreement and the Attorney General's own characterization of the case in addition to the judge

21    declaring Ferm "guilty" at his hearing.   This fact alone precludes summary judgment because malice

22    is based on the <u>subjective</u> understanding of the reported information.  Ferm's claims and wholly

23    circumstantial arguments do not establish malice.  Rather, he asks the Court to infer it.  But even if

24    his "facts" were true and relevant, Ferm cannot obtain summary judgment through inference, where

25    the Court must assume the truth of Defendants' evidence and give Defendants' all inferences.

26    *Anderson, supra*.

27

28
---
[17]   Ferm's conclusory assertions that they have "admitted" to knowing false publication are simply incorrect; they have made no such admission no matter how grossly Ferm misconstrues their testimony.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

Ferm's argument is also belied by the research and investigation by KLAS in developing their reports.  As explained by Kanigher, while developing stories for KLAS's coverage of mortgage-related crimes, he requested information from the Attorney General's Office.  App. Exh. 9 at ¶ 5.  In response, the Attorney General's office sent Kanigher a list of individuals recently convicted of mortgage-related crimes, and that list has Ferm's name amongst others in a column with the heading "convictions."  *Id*; Exh. 10.  Defendants also reviewed the actual Plea Agreement and other court records.  Defendants did not base their stories on "unreliable sources" or entertain "serious doubts" about either the truthfulness of their reports or the veracity of their source.  *St. Amant, supra*; *Buendorf v. Nat'l Public Radio, Inc.,* 822 F. Supp. 6, 12 (D.D.C. 1993)(finding that even where defendants "could have been more diligent in their research," the failure to do so does not constitute "reckless disregard."); *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 430 (D. Md. 2005) (holding plaintiff's defamation claim failed as a matter of law because defendant publication had relied upon court records and statements from prosecutors).  Defendants' news stories were not fabricated or a product of Defendants' imagination. They were, at worst, a variance in legal terminology.

Ferm also makes much ado about McCarty's news report on September 21, 2011, regarding Ferm's Plea Agreement, because it differs from what she reported on November 16, 2011—i.e., that Ferm was among a list of "notable convictions."[18]  But the law holds otherwise.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964)(media's mere failure to check a story against its own internal files is not actual malice); *Marcone v. Penthouse Int'l Magazine For Men*, 754 F.2d 1072, 1091 (3d Cir. 1985)(actual malice not shown when "mistakes appear to be the result of insufficient editorial verification and checking procedures, but not of a conscious decision to present [plaintiff] in a false light."); *Pegasus*, 57 P.3d at 93 ("failure to investigate alone, or to read other previously printed

---

[18] It is certainly worth noting, however, that the September 21st news report was solely about Ferm and the entry of his Plea Agreement.  In contrast, the three news reports at issue in this case were much broader—they each discussed a number of successful prosecutions including the prosecution of Ferm.  These three reports only referenced Ferm in passing and in such circumstances it was necessary to describe the result of his prosecution in summary fashion.  The media's need to summarize complex proceedings is precisely why courts do not allow plaintiffs to manufacture defamation claims out of appropriate exercises of editorial discretion in the context of summarizing court proceedings and provide significant leeway on technical terms.  *See Pegasus,* 57 P.3d at 88; *Sahara Gaming,* 984 P.2d at 166; and other authorities cited *supra*.

1   material is not grounds for a finding of actual malice.").   Similarly, Defendants' refusal to "tell the

2   other side of the story" is not evidence of malice.  *Machleder v. Diaz*, 801 F.2d at 55; *Huckabee v.*

3   *Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 425 (Tex. 2000) (holding that "the First Amendment

4   protects [a media] organization's choice of which material to include in its broadcast.").[19]

5        Ferm's other items of claimed "evidence of malice" are irrelevant or simply wrong.  Ferm

6   repeats multiple times the suggestion, citing Louisiana cases, that malice is presumed where the

7   alleged defamation is *per se*.  But that is not the law of Nevada nor it the Constitutional limits

8   established by the Supreme Court.  *Pegasus*, 57 P.3d at 91; *Nevada Indep. Broadcasting Corp. v.*

9   *Allen*, 99 Nev. 404, 664 P.2d 337 (1983) (per se case, requiring proof of actual malice); *Gertz,* 418

10  U.S. at 351-52; *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510 (1991) (as a matter of

11  constitutional requirement actual malice must be proven by clear and convincing evidence and

12  "[m]ere negligence does not suffice.").

13       Even Ferm's cases don't hold as he represents.  In *Kennedy v. Sheriff of East Baton Rouge*,

14  935 So.2d 669 (La. 2006) (cited by Ferm at pp. 3, 8, and 16), the Louisiana Supreme Court did

15  discuss *Louisiana* common law rules for defamation regarding defamation per se and what

16  presumptions are applied in *that* state, which includes malice, *but the court went on to recognize* that

17  state specific common law rules are subject to and limited by, U.S. Constitutional requirements

18  regarding the First Amendment.  *Id.* at 675-77.   Indeed, where you have a public figure and a matter

19  of public concern being reported, Supreme Court precedent suggests that state common law

20  presumptions for injury in "per se" defamation are entirely inapplicable.  *See Gertz v, Robert Welch,*

21  *Inc.*, 418 U.S. 323, 349-50, 94 S.Ct. 2997 (1974) (plaintiff may not recover presumed or punitive

22  damages without a showing of actual malice); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,

23  472 U.S. 749, 105 S.Ct. 2939 (1985) (plurality opinion discussing and potentially limiting *Gertz;*

24  actual malice not required for private plaintiff and the speech at issue does not involve a matter of

25  public concern); *Obsidian Finance Group, LLC v. Cox*, 740 F.3d 1284 (9th Cir. 2014).  *See also*

---

[19]   Ferm's repeated reference to a couple of declarations he has submitted are *apropos* of nothing.  These declarations, Billion, for

27  example, are of insiders whose credibility was suspect.  Further, declarations about events over one year prior to the stories at issue
    and not offering a single fact relevant to Ferm's Plea Agreement *have nothing to do with a report regarding Ferm's Plea Agreement*

28  and the issue of actual malice.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1  *Nevada Indep. Broadcasting Corp. v. Allen*, 99 Nev. 404, 664 P.2d 337 (1983) (finding the general

2  damage award improper because "the damage award far exceeds any conceivable damage that might

3  have been done to [plaintiff's] political reputation or damages suffered as a result of any humiliation

4  or mental suffering brought about by the defamatory material presented in this case."). Hence,

5  showing injury is also not resolvable on summary judgment where, as here, Ferm himself claims

6  multiple possible sources of injury to his reputation. App. Exh. 16; 32.[20]

7        Ferm's arguments suggesting Defendant's defense of his lawsuit is somehow evidence of

8  malice is specious and circular. Defendants have a right to defend and have a right to challenge

9  Ferm's accusations.[21] Arguing that Ferm does not have a viable defamation claim has no bearing on

10  Defendants' subjective beliefs at the time of publishing regarding actual malice. To be clear,

11  Defendants and their counsel deny Ferm's incessant and harassing accusations of litigation

12  misconduct, but his accusations mean nothing to the Constitutional issues going to the merits.

13        Ferm also has lengthy discussion regarding "failure to retract" as circumstantial evidence of

14  actual malice. Ferm reads far too much into the very limited authorities. Ferm's authority merely

15  recognizes that in some limited circumstances, a flat refusal to retract could be taken as some

16  circumstantial evidence of actual malice. But the Supreme Court in *New York Times Co. v. Sullivan*,

17  376 U.S. 254, 286 (1964) noted it was not adequate evidence, although there are time is may be

18  pertinent. But the record shows that, although Defendants did not consider the stories defamatory,

19  once Ferm demanded retraction, they amended the stories to clarify and provide more specifics as to

20  Ferm's Plea Agreement and the timing of formal entry of conviction to try to address the issues he

21  raised as a courtesy. Hence Ferm's contentions on this point are a red herring. Moreover where a

22  flat refusal to correct in the face of clear error may be some circumstantial evidence, a willingness to

23  take corrective action tends to negate any suggested inference the publication was done with actual

24  malice. *Banditos,* 712 N.E.2d at 468 (willingness to clarify or correct is strong evidence negating

25  proof of actual malice). Ferm made certain complaints and Defendants, although they did not agree

26  ───────────────

27  [20] Further Ferm's vague references to lost business opportunities are inadmissible and insufficient. None of his claims competently show any lost business was because of the use of the word "conviction" here.

28  [21] *Bose Corp.,* 466 U.S. at 512 (disputing claim of falsity not evidence of actual malice).

with him that the stories were inaccurate, attempted to accommodate him.  Rather than evidence of knowing falsehood or reckless disregard, it is evidence of the absence of actual malice.

Contrary to Ferm's beliefs, this case does not involve an international conspiracy.  The successful prosecution of Ferm was a newsworthy event in Las Vegas, particularly because of Ferm's injection into the mortgage-foreclosure crisis debate.  The Attorney General's office themselves said this was a "conviction."  Having reviewed the Plea Agreement and received a list from the Attorney General, Defendants believed they could accurately report this as a "conviction."  The news reports that Ferm complains about provide a materially accurate summary of various successful prosecutions in Nevada of people preying on homeowners attempting to avoid foreclosure.  Ferm cannot overcome this evidence because he has failed to present any admissible evidence of his own indicating Defendants acted in reckless disregard—just his own speculation, inference and rhetoric.  Ferm *was* successfully prosecuted—he admitted guilt, and when the Plea Agreement was entered Judge Mosely stated for the record that notwithstanding the nolo plea "I determine that this gentlemen is, in fact, guilty."  App. Exh. 29; Exh. 30 at 6:15-7:25).  Ferm may find it highly meaningful that Defendants listed him as a "notable conviction", but this is not an occasion where reckless disregard for the truth may be found.  In *Masson v. New Yorker Magazine,* 501 U.S. 496, 519 (1991), the Court, in discussing a prior decision, noted that "We refused to permit recovery for a choice of language which, though perhaps reflecting a misconception, represented 'the sort of inaccuracy that is commonplace in the forum of robust debate to which the *New York Times* rule applies." The facts and the law both demand that Ferm's motion for summary judgment be denied.

**B.     TRUTH IS A DEFENSE TO DEFAMATION AND FALSE LIGHT, AND KLAS' REFERENCE TO FERM AS HAVING BEEN "CONVICTED" OR AS A "NOTABLE CONVICTION" IS TRUE OR SUBSTANTIALLY TRUE**

Ferm must establish an absence of a question of fact that KLAS made *false* statements about him that were defamatory. *Pegasus*, 57 P.3d at 90.  Ferm alleges that Defendants defamed him by referring to him as "convicted" and as having been "convicted of a felony."  These statements are not actionable because under the facts of this case they are true or substantially true.  Ferm has failed to meet his burden to show an absence of a dispute regarding this factual issue.

///

BLACK & LOBELLO

10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1    Truth or substantial truth is an absolute defense to a claim for defamation.  *Pegasus,* 57 P.3d

2    at 90.  "Truth—as it is in defamation—is a complete defense to a false light invasion of privacy cause

3    of action.  *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 499 (1975) (Powell, J., concurring).

4    Whether a publication is "substantially true" is a question of law the court may decide. *Bustos*

5    *v. A&E Television Networks,* 646 F.3d 762, 769 (10th Cir. 2011); *D.A.R.E Am. v. Rolling Stone*

6    *Magazine*, 101 F. Supp. 2d 1270, 1288 (C.D. Cal. 2000).  But substantial truth defense is an issue of

7    fact where substantial truth "is not <u>evident</u> to the court."  *D.A.R.E Am.,* 101 F. Supp. 2d at 1288,

8    citing *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 465 (9th Cir. 1977).   In this case, the Court has

9    previously declined to rule on the substantial truth question as a matter of law.

10    When the news media reports on matters of public interest that involve legal and judicial

11    proceedings, the First Amendment only requires that a report be "fair and true."  *Pegasus*, 57 P.3d at

12    88.   When it comes to reporting on crimes and criminal conduct, and the challenged statement

13    involves the allegation of the commission of a specific crime, "the statement is true if the plaintiff did

14    commit that crime."  RESTATEMENT (SECOND) OF TORTS § 581A cmt. c at 236 (1977).  Similarly, if

15    the accusation more generally implies the commission of "unspecified misconduct of a particular

16    type, the statement is true if the plaintiff committed any misconduct of that type."  *Id.; see also*

17    *Thomas v. Telegraph Pub. Co.,* 929 A.2d 993, 1013 (N.H. 2007) ("'If the defamatory statement is a

18    specific allegation of the commission of a particular crime, the statement is [deemed] true [for

19    purposes of a substantial truth defense] if the plaintiff did commit that crime.").  Although absolute

20    truth is generally considered at the time of publication, there is a large difference between a report

21    regarding and summarizing a Plea Agreement—a public document and court record providing that

22    certain things have happened (in the context of an expressly pronouncement by a judicial officer)

23    take place and a technical dispute as to how that may be construed and some blind injurious

24    accusation that was not true when made but becomes true by mere happenstance.[22]   Particularly

25    where the terminology in question is a legal term whose usage varies depending on the context.

26

27

28    _____
[22] *Cf.* NRS 47.240(2); 47.250(11).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1   Moreover this has no bearing on the question of substantial truth where an alleged inaccuracy is

2   irrelevant if it would not cause a reasonable person to think differently of the plaintiff.

3          Correspondingly, the requirement that a news report be "fair and true" necessarily leaves

4   room for some inaccuracies. *Pegasus,* 53 P.3d at 88; *Hopkins v. Keith*, 348 So. 2d 999, 1002 (La. Ct.

5   App. 1977).   Under Nevada law, reporting errors and inaccuracies are acceptable under the

6   "substantial truth" doctrine unless Ferm demonstrates there is a <u>material variation</u> between the truth

7   and the published content. *Pegasus,* 53 P.3d at 88; *Masson v. New Yorker Magazine, Inc.*, 501 U.S.

8   496, 517 (1991).  To be material, "the alleged misstatement must be likely to cause reasonable people

9   to think 'significantly less favorably' about the plaintiff than they would if they knew the truth."

10  *Bustos*, 646 F.3d at 765.  On the other hand, "a misstatement is not actionable if the comparative

11  harm to the plaintiff's reputation is real but only modest."  *Id*.   Importantly, when considering

12  whether a statement is true or substantially true, a court must analyze the challenged report in the

13  context and under the circumstances of its publication because "the context of a statement can

14  significantly affect its fair and natural meaning."  53 C.J.S. *Libel and Slander; Injurious Falsehood* §

15  34 (2005).  In other words, where the plaintiff challenges particular statements in an article, each of

16  the statements must be evaluated in the context of the article as a whole. *Id*.

17          Courts routinely dismiss defamation claims where the plaintiff claims he has been defamed by

18  the media for reporting that he was "convicted" when he technically entered into a nolo contendere

19  plea. *See Koniak v. Heritage Newspapers, Inc.,* 499 N.W.2d 346, 348-49 (Mich. App. Ct. 1993)

20  (story reporting plea of "no contest" which was taken under advisement and later dismissed was

21  substantially the same as reporting a "conviction").[23]   In a case on point, a Louisiana court

22  determined that two articles which referred to plaintiff as "convicted" and as "having been convicted"

23  of gambling related crimes were "substantially true" where the plaintiff was not technically

24

_____

25  [23] *Koniak* is on all fours with this case.  The report was of a *nolo contendere* plea to assault charges and describing it as the defendant

26  being "willing to accept the consequences of the conviction."  The court did not formally accept the plea but rather took it under
    advisement with an "informal" parole arrangement.  If the defendant adhered to the requirement of "no contact" between the

27  defendant and the victim, the case would be dismissed.   The court concluded that "this is a typical example of a 'technically
    incorrect or flawed use of legal terminology' that should cause us to invoke the substantial truth doctrine.  **This was a minor**

28  **inaccuracy that did not materially alter the gist or sting of the article**." (emphasis added).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

convicted, but had forfeited a substantial bond on those charges.   *Hopkins v. Keith*, 348 So. 2d 999, 1002 (La. Ct. App. 1977).  In so deciding, the *Hopkins* court explained:

> While a bond forfeiture is not technically or legally the same as a conviction and carries significant legal distinctions, the similarities between the two, particularly in the lay mind, cannot be overlooked.  A conviction is a judicial determination of guilt.  A forfeiture of bond is a decision by the person charged not to appear for trial, thereby avoiding a judicial determination of guilt or innocence.  The Legislature has equated bond forfeiture to convictions in some instances. . . . Viewed in context, the error is relatively insignificant and a relatively minor deviation from the truth.

*Id*. at 1002.[24]

Ferm accuses Defendants of reporting that he was "convicted of a felony."  Ferm, of course, cannot cite to any publications that include this exact statement because they do not exist.

Even if Defendants did so expressly or by implication, this Court may conclude that Defendants' statements are true or substantially true as a matter of law or at a minimum, that the issue is one for the trier of fact.  Ferm contends, exactly like the plaintiffs in *Hopkins* and *Koniak*, that referring to him as having been "convicted" or among "notable convictions" is false and defamatory.  Thus, Ferm's claim of "falsity" turns on the technical legal distinction between a nolo contendere plea and a conviction.  His claims are based upon a technical distinction that does not materially differ from the truth.  The trouble with Ferm's argument is that he has already admitted that he committed a crime and he fails to acknowledge that, for example, he expressly waived the "<u>right to appeal the</u> <u>***conviction***</u>" or that he "believ[ed] that ***pleading guilty . . .*** [was in his] best interest."  App. Exh 29.  Moreover, Ferm was found to be guilty—at the time the plea was entered, Judge Mosley stated on the record that "I determine that this gentlemen is, in fact, guilty, notwithstanding his nolo contendere plea."  App. Exh. 30 at 7:4-7.

---

[24]  *See also Dostert v. Washington Post Co.*, 531 F. Supp. 165, 168 (N.D. W. Va 1982) (dismissing libel claim where newspaper headline characterized the entry of a nolo plea as an admission of guilt because "such a headline is substantially true and does not provide any basis for a libel action"); *Bennett v. Ackerman*, 2002 WL 1609050 (Cal. Ct. App. 2002) (dismissing defamation claim based upon statement that a city council member was a convicted embezzler and an ex-con when he had actually entered a plea of nolo contendere to grand theft, and holding that as a result of the nolo contendere plea the statements at issue were substantially true); *Colt v. Freedom Commc'ns, Inc.*, 1 Cal. Rptr. 3d 245, 253 (Cal. Ct. App. 2003) ("The situation is analogous to that of an accused criminal who enters a plea of nolo contendere.  His action for defamation against a reporter of the details of the crime with which he was charged would fail."); *Lindemuth v. Jefferson Co. Sch. Dist. R-1*, 765 P.2d 1057, 1058 (Colo. Ct. App. 1988) (upholding summary judgment in favor of defendants in defamation action arising from statements that plaintiff was a "child molester" and that he had been convicted of child molestation; statements were substantially true because plaintiff had pleaded nolo contendere to charges of child molestation fourteen years earlier); *Jennings v. Telegram-Tribune Co.*, 210 Cal. Rptr. 485, 488-89 (Cal. Ct. App. 1985).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

Black's Law Dictionary defines "convict" as "[t]o find (a person) guilty of a criminal offense upon a criminal trial, a plea of guilty, or a plea of *nolo contendere* (no contest)." BLACK'S LAW DICTIONARY 358, 402 (8th ed. 2004). That is precisely what happened here. Under this definition, the terms of the Plea Agreement and Judge Mosley's finding of guilt dictate that Ferm was in fact convicted. *Id.* A number of legal authorities also hold that a nolo contendere plea is generally deemed a conviction; thus these authorities also dictate that Defendants' news reports were true and that consequently Ferm's claims fail.[25]

In an effort to establish actionable falsehood, Ferm cites a Florida case for the proposition that there is no conviction when adjudication is withheld. Notably, that is a criminal case involving sentencing issues, not a defamation action, involving when a nolo plea may be considered a conviction for sentence enhancement (a case having nothing to do with defamation) certainly are not dispositive on the issue. For instance, the Florida Supreme Court recently held that a criminal defendant's prior pleas of no contest, where adjudication was withheld, are to be considered as prior convictions for purposes of sentencing enhancement. *Montgomery v. State*, 897 So.2d 1282 (Fla. 2005). In determining that a nolo plea is an admission of guilt, the court began by quoting a Florida case from 1917 which explained:

> Where a plea of nolo contendere is accepted it is not necessary in passing sentence for the court to adjudge the party to be guilty, for that follows as a legal inference from the implied confession in the plea; but the court should adjudge that the defendant is convicted of the offense charged, and the sentence which follows should impose the penalty as provided by law.

*Id.* at 1285, quoting *Pensacola Lodge No. 497 v. State*, 77 So. 613, 614 (Fla. 1917). The *Montgomery* court also noted that Florida statutes define "conviction" as a "determination of guilt that is the result of a plea or a trial, ***regardless of whether adjudication is withheld***." *Id.* (emphasis

---

[25] *See Kasckarow v. Board of Examiners of Sex Offenders of State*, 33 Misc. 3d 1028, 1031-32, 936 N.Y.S.2d 498 (N.Y. Sup. Ct. 2011) (a nolo contendere plea is generally deemed a conviction); *Com. v. Moser*, 999 A.2d 602, 606 (Pa. 2010) (although a nolo contendere plea has the same effect as a guilty plea for purposes of sentencing and is considered a conviction, it is not an admission of guilt); *United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004) (While "a plea of nolo contendere is not an admission of guilt," it "has the same legal consequences as a plea of guilty and results in a conviction.") (citations omitted); *Tseung Chu v. Cornell*, 247 F.2d 929, 938 (9th Cir. 1957) (it is a majority rule that a plea of nolo contendere is an implied confession of guilt and has the same effect as a plea of guilty); Drechsler, *Plea of Nolo Contendere Or Non Vult Contendere*, 89 A.L.R.2d 540 (1963) ("most of the cases hold that the plea of nolo contendere, when accepted by the court, becomes an implied confession of guilt, and, for the purposes of the case only, equivalent to a plea of guilty").

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1  added).   A  number  of  federal  and  state  courts  have  reached  similar  conclusions,[26]  and  like

2  *Montgomery*  the  Nevada  Supreme  Court  has  also  determined  that  there  is  no  distinction  between

3  conviction  entered  upon  plea  of  guilty,  plea  of  nolo  contendere,  or  plea  of  not  guilty  for  purposes  of

4  determining  whether  a  criminal  sentence  may  be  enhanced  on  the  basis  of  prior  convictions.   *Jones v.*

5  *State*, 771 P.2d 154, 156 (Nev. 1989).[27]

6          Ferm's  attempt  to  establish  this  distinction  actually  supports  Defendants'  position,  because

7  the  test  here  is  what  a  lay  person  would  think,  not  the  technical  or  legally  precise  meanings  of  these

8  terms.   *Pegasus,*  57 P.3d at 88; *Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992).

9  Courts  routinely  dismiss  defamation  claims  where,  as  here,  the  plaintiff  contends  that  a  nolo

10  contendere  plea  was  improperly  reported  as  a  guilty  plea  or  conviction.   In  *Dostert v. Washington*

11  *Post Co.*, 531 F. Supp. 165 (N.D. W. Va. 1982), the plaintiff alleged in a libel action that a headline

12  published  in  the  Washington  Post  was  false  because  it  was  calculated  to  permit  the  reader  to  infer

13  that  Plaintiff  had  pled  guilty  to  or  was  found  guilty  of  a  crime,  when  in  fact  he  had  pled  nolo

14  contendere.   *Id*.   In  dismissing  the  defamation  claim,  the  court  held  "a  headline  which  characterizes

15  the  entry  of  a  nolo  plea  as  an  admission  of  guilt  cannot  be  considered  false  under  West  Virginia  law.

16  Rather,  such  a  headline  is  substantially  true  and  does  not  provide  any  basis  for  a  libel  action."   *Id*. at

17  168.   Similarly,  in  *Bennett v. Ackerman*, 2002 WL 1609050 (Cal. Ct. App. 2002), a city council

18  member  asserted  a  defamation  claim  based  on  a  statement  that  he  was  a  convicted  embezzler  and  an

19  ex-con  when  the  plaintiff  had  actually  entered  a  plea  of  nolo  contendere  to  grand  theft.   *Id*. at *3-4.

20  The  court  held  that  as  a  result  of  the  nolo  contendere  plea,  the  statements  at  issue  were  substantially

21  true  and  thus  dismissed  the  claim.   *Id*. at *4.   The court explained:

22  ///

23  ///

24

[26]  *See United States v. Meijas*, 47 F.3d 401, 404 (11th Cir. 1995) (defendant's plea of nolo contendere where adjudication was
25  withheld qualified as a prior conviction for purposes of sentencing enhancement); *United States v. Maupin*, 520 F.3d 1304, 1306
(11th Cir. 2008) (same); *United States v. Storer*, 413 F.3d 918, 922 (8th Cir. 2005) (same); *James v. State*, 433 S.E.2d 700, 701 (Ga.
26  1993) (previous nolo plea could be considered a conviction for sentencing purposes).

27  [27]  *See also State v. Gomes*, 930 P.2d 701, 705 (Nev. 1996) (a *nolo contendere* plea is equivalent to a guilty plea in that it "authorizes
the court to treat the defendant" as if the defendant had pleaded guilty); *State v. Lewis*, 178 P.3d 146, 147 (Nev. 2008) (a nolo
28  contendere plea is equivalent to a guilty plea in that it authorizes the court to treat the defendant as if the defendant had pleaded
guilty).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

> Bennett's plea is the equivalent of a guilty plea, which is a conclusive admission of guilt to every element of the offense, except that his admissions could not be used against him in any civil suit arising out of his criminal act.  The fact that his plea is an admission of guilt defeats his argument.

*Id.*[28]

Hence, a report that an individual had been convicted of tax fraud (a felony) when in fact the defendant pled no contest to a misdemeanor crime of "failing to file a tax return" is "substantially true" (and therefore not defamatory) and sufficiently "fair" to be absolutely privileged.  *Jennings v. Telegram-Tribune Co.*, 210 Cal. Rptr. 485, 488-89 (Cal. Ct. App. 1985).  "'Tax fraud' and 'tax evasion' are harsh terms; but we cannot say the average reader would have viewed the offenses differently . . ." Id. at 489.  The *Jennings* court went on to conclude that "while perhaps overblown or exaggerated, the terms are easily within the literary license concept . . ." Id.

At best, Ferm has merely shown that the terms are so often interchanged in criminal proceedings that it has been necessary for appellate courts and other bodies (such as the Florida Attorney General) to clarify to both trial courts and the criminal bar as to the technical distinctions. If you have to consult a lawyer, judge or case law to be aware of and understand the technical distinctions Ferm seeks to draw, it is the type of technical distinction that is precisely what the law of defamation says is non-actionable. Because Ferm's claims rely upon this technical distinction, his claims fail as a matter of law as a result of the substantial truth doctrine and the long-standing rule that "technical errors in legal nomenclature in reports on matters involving violation of the law are of no legal consequence."  *Sahara Gaming v. Culinary Workers Union Local 226,* 984 P.2d 164, 166 (Nev. 1999); *Seymour v. A.S. Abell Co.*, 557 F. Supp. 951, 956 (D. Md. 1983).   Certainly the competing evidence, Ferm's contentions that the articles are not substantially true vs. Defendants' testimony that they are, makes it clear Ferm cannot obtain summary judgment on this issue at this time.[29]

---

[28]  *See also Colt v. Freedom Commc'ns, Inc.*, 1 Cal. Rptr. 3d 245, 253 (Cal. Ct. App. 2003) ("The situation is analogous to that of an accused criminal who enters a plea of nolo contendere.  His action for defamation against a reporter of the details of the crime with which he was charged would fail. And this would be true even if the reporter noted that he had been charged with attacking his victim with a tire iron when in reality it had been a ball-peen hammer.")

[29]  Ferm's various claims about how others have viewed him are not proper evidence.  He claims potential employers (for whom he continues to refuse to provide Defendants any discovery) saw stories on the web and declined to do business with him.  But Ferm is either speculating or reporting inadmissible hearsay.  His exhibit AN is inadmissible but also non-probative. There is nothing in

A number of authorities also support the conclusion that the terms are often used interchangeably and thus any misuse of technical legal terms in Defendants' news reports would not have any negative impact upon the general public.   For instance, a large number of Nevada and federal[30] statutes explicitly state that nolo contendere pleas are considered to be "convictions." Relevant Nevada statutes include:

- NRS 41B.070 states that "'Convicted' and 'conviction' mean a judgment based upon: 1. A plea of guilty, guilty but mentally ill or nolo contendere."

- NRS 116A.600 requires managers of common interest communities to provide notification to state agencies "in writing if he or she is convicted of, **or enters a plea** of guilty, guilty but mentally ill or nolo contendere to, a felony or any offense involving moral turpitude." (emphasis added).

- NRS 119.167 requires real estate developers to provide notification to state agencies "in writing if he or she is convicted of, **or enters a plea** of guilty, guilty but mentally ill or nolo contendere to, a felony or any offense involving moral turpitude." (emphasis added).

- NRS 624.266 requires contractors to provide notification to the state "not more than 30 days after the conviction or **entry of the plea** of guilty, guilty but mentally ill or nolo contendere." (emphasis added).

- Pursuant to NRS 630.301, governing licensure of physicians, "**A plea of nolo contendere is a conviction for the purposes of this subsection.**" *See also* NRS 630A.340 ("A plea of nolo contendere to any offense listed in this subsection shall be deemed a conviction."). (emphasis added).

- The Nevada statutes governing trade regulations and practices similarly equate nolo pleas with convictions when requiring disclosures to prospective buyers or investors. NRS 598.870(5).

---

there to show whether these purported potential opportunities declined to do business with him because of Defendant's stories or someone else's.  App. Exh. 36.  Moreover, at the time of this email chain, any story referencing "conviction" had been removed. Finally, Ferm refuses to recognize that they may not have wanted to do business with him because of his multiple contempt charges for the unauthorized practice of law, indictment, and nolo plea where, even if he fully repays his "victims" he agrees to plead guilty to "attempted theft."  The declaration of Dr. Alwes, the parts that are relevant, are also inadmissible hearsay or lacking in foundation. What doesn't say is significant—she reports the negative media coverage would conclude Ferm is a crook and a criminal.  But she does not say anyone ever reached that conclusion because the word "conviction" was used.

[30] In the Investment Company Act of 1940, Congress expressly provided that the term "convicted" includes "a verdict, judgment, or plea of guilty, *or a finding of guilt on a plea of nolo contendere*, if such verdict, judgment, plea, or finding has not been reversed, set aside, or withdrawn, *whether or not sentence has been imposed*." 15 U.S.C. § 80a-2(a)(10).  The same definition was used in the Investment Advisers Act of 1940. 15 U.S.C. § 80b-2(a)(6).     Federal laws establishing minimum standards for bank licensing provide that a nolo contendere plea is equivalent to a conviction. 12 U.S.C. § 5104**.** Federal laws governing institutions of higher learning also equate a nolo plea with a conviction.  20 U.S.C. § 1002(a)(4)(B); 20 U.S.C. § 1078-2(a)(1)(B); 20 U.S.C. § 1091(a)(6). *See also* 8 U.S.C. § 1101(a)(43) (defines "conviction" with regards to an alien to include when adjudication of guilt has been withheld but alien has entered a plea of nolo contendere and been ordered some form of punishment or penalty); 37 C.F.R. § 11.1 (governs practice before the US Patent and Trademark Office and defines "conviction or convicted" to include any entered plea including nolo contendere).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

- Nevada Supreme Court Rule 111(1), governing the licensure of attorneys, expressly defines "conviction" to include "**a plea of guilty or nolo contendere**".  (emphasis added).

- The Nevada statutes governing licensure of the following professions also explicitly state that pleas of nolo contendere are considered as "convictions": veterinarians, pharmacists, dieticians, psychologists, real estate brokers, appraisers, building inspectors, asset managers, persons offering title loans and check-cashing services, landscape architects, professional engineers and land surveyors, homeopaths, nurses, escrow agents, private investigators, and collection agencies.  *See* NRS 638.140; NRS 638.1515; NRS 639.006; NRS 640E.270; NRS 641.285; NRS 645.633; NRS 645C.570; NRS 645D.235; NRS 645H.750; NRS 604A.605; NRS 623A.280; NRS 625.410; NRS 630A.340; NRS 632.320; NRS 645A.090; NRS 648.1493; NRS 649.085.

Thus, the laws enacted by state and federal legislatures also confirm that the terms can synonymous and used interchangeably.

Moreover, KLAS' summary description of the net effect of the Plea Agreement as a "notable conviction" is immaterial as a matter of law--or at a minimum, taking all of Defendants evidence as true and giving them the benefit of all inferences, Ferm cannot establish the absence of a question of fact sufficient to remove the issue in his favor from the trier of fact.  The "gist" or the "sting" of the article is that Ferm was successfully prosecuted by the AG for criminal conduct.  The prosecution has indisputably ended in a plea that is the equivalent of a guilty plea (with a resulting conviction).  Thus, reporting that Ferm was among "notable convictions" for a mortgage related crime is <u>not</u> substantially different from Ferm's no contest plea to that <u>same</u> crime.[31]

The fact that sentencing will be delayed is inconsequential.  For example, in *Fendler v. Phoenix Newspapers Inc.*, 636 P.2d 1257, 1262 (Ariz. 1981), the plaintiff brought a claim for defamation, arguing that an editorial report was defamatory because it stated that he had "commenced" a prison sentence when, in fact, he was technically free on bond pending appeal.  In rejecting his claim, the Court stated that while "appellant personally found it highly meaningful that he had been released on bond rather than being incarcerated in prison pending his appeal . . . we believe the inaccuracy in the editorial was not significant."  636 P.2d at 1262.  By virtue of the Plea

---

[31]  Respectfully, Ferm has failed to demonstrate that it is even plausible, much less established as a matter of law, that a member of the general public would view a nolo plea to the completed crime of "theft by misrepresentation" (in lay terms "fraud") any different than a guilty plea to attempted theft by misrepresentation.  Indeed, as many courts have concluded, such distinctions are not actionable defamation as a matter of law.  *See* Note 2, *supra*, and corresponding text.

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

Agreement, Ferm determined not to appear for trial, opting instead to plead no contest to the criminal charges of felony theft.[32]   He therefore avoided a technical judicial determination of guilt or innocence by agreeing that the State would be able to prove each of the elements of the charges against him if he had gone to trial.  (Exhibit 15).  Most importantly, Ferm agreed he *will* be convicted and sentenced.  (*Id.*).

The summary and characterization of Ferm as a "notable conviction" is true or substantially true. Ferm has nevertheless failed to establish the absence of a question of fact on this material element.  Because the determination turns on whether a variation in terms is likely to change the perception of a reasonable person's impression of the report, the evidence submitted by Defendants and authority above certainly precludes summary judgment in Ferm's favor on the issue.

C.   DEFENDANTS' REPORTS ARE ABSOLUTELY PRIVILEGED BY THE FAIR REPORT PRIVILEGE

Ferm cannot prevail on his defamation claims because the stories and articles at issue are absolutely protected by the fair report privilege.  *Wynn v. Smith*, 16 P.3d 424, 429 (Nev. 2001).  The privilege has been described to protect any defamatory matter that is generated from an official report or proceeding that deals with an issue of public concern, so long as "the report is accurate and complete or a fair abridgment of the occurrence reported."  *Id.*, quoting RESTATEMENT (SECOND) OF TORTS § 611 (1965).  Arising from the First Amendment, the privilege provides absolute immunity to the media where it has published a fair and accurate report of judicial proceedings.  *See Sahara Gaming v. Culinary Workers*, 984 P.2d 164, 166 (Nev. 1999); *Pegasus,* 57 P.3d at 88; *Unelco Corp. v. Rooney,* 912 F.2d 1049, 1057 (9th Cir. 1990) ("A factual statement need only be substantially true in order to be protected from a suit for defamation.").   The question thus becomes whether Defendants' news reports qualify as being fair and true.  If so, the Court must dismiss Ferm's defamation claims.

The "fair and true report" requirement does not limit the privilege to statements that contain

---

[32]  However, as the Plea Agreement establishes: (1) Ferm pled no contest to one count of criminal fraud; (2) Ferm admits that the state can prove each element of the charge against him; (3) Ferm agreed to pay $192,168 in restitution to victims during a probationary period; (4) Ferm agreed to waive the right "to appeal the *conviction*"; and (5) if Ferm fully repays his victims, Ferm would enter a plea of *guilty* to the crime of attempted criminal fraud ("Attempted Theft") and be sentenced accordingly.  (Exhibit 15).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

no errors.  *Pegasus,* 53 P.3d at 88; *Masson v. New Yorker Magazine, Inc.* 501 U.S. 496, 517 (1991).

Mere inaccuracies do not make a report false unless it "'would have a different effect on the mind of

the reader from that which the pleaded truth would have produced."  *Id.*   Hence, if the strict

technical truth would have had the same negative effect on the audiences' perception of the plaintiff

as the story as reported, the statement is not false.  Courts recognize that an "[e]rroneous statement is

inevitable in free debate, and ... must be protected if the freedoms of expression are to have the

'breathing space' that they 'need ... to survive.'"  *Reader's Digest Ass'n v. Superior Court*, 690 P.2d

610, 621 (Cal. 1984), quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-71 (1964).

When the alleged statements concern reporting on judicial proceedings, the publication is

privileged so long as the substance of the proceedings is described accurately.  *Sahara Gaming,* 984

P.2d at 166; *Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992).  "The law has long

recognized a special privilege of absolute immunity from defamation given to the news media and

the general public to report newsworthy events in judicial proceedings."  *Sahara Gaming,* 984 P.2d

at 166.  This privilege provides absolute immunity for fair and accurate reports with respect to court

proceedings.  *Dorsey v. Nat'l Enquirer*, 973 F.2d 1431, 1434-37 (9th Cir. 1992).  As the Ninth

Circuit has recognized, courts should account for "a 'certain amount of literary license' and exercise

of a 'degree of flexibility' in determining what is a 'fair report.'"  *Id.*

A newspaper report is fair and true if it captures "the substance, the gist, the sting of the

libelous charge"—it need not track verbatim the underlying proceeding.  *Crane*, 972 F.2d at 1519.

*See also Dorsey v. Nat'l Enquirer*, 973 F.2d 1431, 1434-37 (9th Cir. 1992); *Riley v. Harr,* 292 F.3d

282, 296 (1st Cir. 2002) ("A 'fair' report need not be a verbatim report; it is enough that the report be

'a rough-and-ready summary that is substantially correct.'").  Similarly, it does not matter whether

the events that underlie an official report are true; rather, the "accuracy for fair report purposes refers

only to the factual correctness of the events reported and not to the truth about the events that

actually transpired."  *Yohe v. Nugent*, 321 F.3d 35, 43 (1st Cir. 2003).  Only if the deviation is of

such a substantial character that it produces a different effect on the reader will the privilege be

suspended.  *Crane*, 972 F.2d at 1519.  News articles, in other words, need only convey the substance

of the proceedings on which they report, as measured by their impact on the average reader.  *Id.*

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1  Finally, a reporter need not "resolve the merits of the charges" or "present the [plaintiff's] version of

2  the facts" to invoke the privilege. *Id.*

3      Similarly, the media is not required to report every aspect or detail presented in legal

4  documents or legal proceedings.[33]   Defamation claims based on fine distinctions between the

5  underlying proceeding and the subject news article, such as Ferm's, fail as a matter of law.   For

6  instance, in *Colt v. Freedom Commc'ns, Inc.*, 1 Cal. Rptr. 3d 245 (Cal. Ct. App. 2003), the plaintiffs

7  entered into a consent decree with the SEC after they were accused of a "pump and dump" stock

8  scheme.  *Id.* at 247-48.   The plaintiffs later sued a newspaper, alleging defamation based upon

9  factual discrepancies between the articles and the underlying SEC case.  *Id.*  On appeal, the court

10  held the claims failed because the "gist" of the articles were substantially true.  The court rejected

11  plaintiff's arguments based upon a "detailed parsing of words", stating that courts should not engage

12  in a "hermeneutical exercise" in an effort to piece together a defamatory statement:

13      Were we to accept plaintiffs' arguments, we would require that newspapers be limited
        to word-for-word quotations from legal documents. Of course, the law imposes no
14      such requirement.

15  *Id.* at 251.

16      Ferm's claims must be rejected for the same reasons.  Ferm's Plea Agreement cannot be

17  summarized without losing some fact that is perceived as important by someone.  Regardless of any

18  technical inaccuracies, the gist of the news stories by Defendants are substantially true.  Defendants

19  explained to the citizens of Nevada that their government officials saw people taking advantage of

20  desperate homeowners who were about to lose their homes, and took action and successfully

21  prosecuted those who were preying on the collapsed housing market.  (*Id.*).  Defendants cannot be

22  held liable merely because Ferm does not like the stories, or because Ferm interprets the stories

23  differently than the average reader would.  *Grillo v. Smith*, 144 Cal. App. 3d 868, 874, 193 Cal.

24

25  [33]  The media is not liable for defamation or false light simply because it "failed to include additional facts which might have cast the
    plaintiff in a more favorable or balanced light."  *Machleder v. Diaz*, 801 F.2d 46, 55 (2d Cir. 1986); *see also Virgil v. Time, Inc.*, 527
26  F.2d 1122, 1129 (9th Cir. 1975)(the requirement that published information be true does not serve to "unduly limit[ ] the breathing
    space needed by the press for the exercise of effective editorial judgment"); *Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d
27  413, 425 (Tex. 2000) (holding that "the First Amendment protects [a media] organization's choice of which material to include in its
    broadcast.").  An omission is only relevant if it distorts the listener's perception in way that presents a "<u>substantially false</u> impression
28  of the event."  *Huckabee*, 19 S.W.3d at 425.

Rptr. 414, 418 (Cal. App. Ct. 1983) ("A publication is not responsible for every strained interpretation a plaintiff might put on its words).  The public perception of Ferm would not have changed because the State has allowed him time to repay his victims before he is sentenced.  *Crane*, 972 F.2d at 1519.  At a minimum, there exists a clear dispute of fact on this issue, precluding summary judgment.

Finally, Ferm also argues that the news reports do not qualify for the privilege because they are not attributed and it is not apparent that they are reporting on official proceedings.  This Court can easily determine otherwise by reviewing the actual news reports—all three of them are summaries of various prosecutions against various criminal defendants (including Ferm) for mortgage-related crimes.   It is obvious on their face that these news reports are discussing and summarizing court proceedings.[34]

### D.   BECAUSE FERM HAS FAILED TO MEET HIS BURDEN AS TO DEFAMATION, HIS REQUEST   FOR SUMMARY JUDGMENT ON HIS FALSE LIGHT AND IIED FAILS FOR THE SAME     REASONS, AND OTHERS.

#### 1.   False Light

Ferm cannot obtain summary judgment on his false light claim for the same reasons it is precluded on defamation where those elements overlap, such as falsity and actual malice.  Those reasons alone are sufficient to deny Ferm's motion at this time.  But Ferm's Motion also fails to establish the absence of a material issue of fact as to the elements for additional reasons.

Ferm has failed to fulfill the first element of his false light claim, particularly those aspects of his claim based on Defendants' description of him and USJF as a "scam" and similar descriptions.  This was accomplished beforehand by the Nevada Attorney General's Office, which

---

[34]  Ferm's attribution argument is circular.  He essentially argues that one cannot summarize an order, or judgment or outcome of a judicial proceeding and have the benefit of the fair report privilege without "attribution."  But he cites no such caselaw (in Nevada or otherwise).  Fundamentally, to discuss the outcome of a proceeding, or the entry of a plea, or an order of restitution is to reference the proceeding. While Nevada has never imposed any express "attribution" requirement, those jurisdictions that do recognize that attribution can be express or implicit from the context.  *Dameron v. Washington Magazine, Inc.* 779 F.2d 736, 739 (D.C. 1985) (express attribution not required, just must be apparent for reader to understand summarizing, paraphrasing or reporting official document or proceeding from the context).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

issued a Press Release referring to Ferm and USJF as a "scam" and a "scheme." App. Exhs. 27, 34.

Additionally, Ferm's criminal prosecution was widely reported by newspapers and other news

stations in Las Vegas.  App. Exh. 36.  Accordingly, Ferm is unable to allege a false light invasion

of privacy claim that is plausible on its face and, at a minimum, factual issues preclude summary

judgment in Ferm's favor.  *See Vail v. Pioneer Mutual Life Ins.*, 2010 WL 3951916 at *2 (D. Nev.

2010) (dismissing false light claim because statements at issue had previously been publicized "by

the Nevada Secretary of State's February 2008 press release and Fox 5 News' article").

### 2.     Intentional Infliction of Emotional Distress

Because there are substantial disputes whether the stories are defamatory or actionable,

precluding summary judgment on Ferm's defamation claims, Ferm's IIED claim is similarly not ripe

for summary judgment either because Ferm cannot escape the First Amendment and numerous other

doctrines protecting the media from frivolous defamation claims by instead pursuing separate claims

for emotional distress.  The Supreme Court has regularly held that, where, as here, the issue is speech

on a matter of public concern and involving a public figure, liability cannot be had without

establishing falsity and actual malice. *E.g., Gertz v, Robert Welch, Inc.*, 418 U.S. 349-50; *Dun &*

*Bradstreet, Inc.* 472 U.S. 749 (plurality opinion discussing and potentially limiting *Gertz;* actual

malice not required for private plaintiff and the speech at issue does not involve a matter of public

concern).

### E.     SUMMARY JUDGMENT IN FAVOR OF FERM ON HIS CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS UNWARRANTED AND WOULD BE IMPROPER

The elements for intentional infliction of emotional distress are: (1) extreme and outrageous

conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for

causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional

distress; and (4) causation.  *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981).  Liability for emotional

distress does not extend to "mere insults, indignities, threats[,] annoyances, petty oppressions, or

other trivialities." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001), *quoting Candelore v.*

*Clark Co. Sanitation Dist.*, 752 F. Supp. 956, 962 (D. Nev. 1990).  Instead, "[l]iability is only found

in extreme cases where the actions of the defendant go beyond all possible bounds of decency, are atrocious and utterly intolerable." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993).

### 1. The Evidence Does Not Establish That Defendants Engaged in Extreme And Outrageous Conduct

Ferm has not provided evidence establishing that Defendants engaged in extreme and outrageous conduct. Because Ferm has failed to meet his evidentiary burden, summary judgment must be denied. More importantly, granting Ferm the requested affirmative relief on his emotional distress claims would be improper. A plaintiff simply cannot obtain summary judgment on such a claim. This is an ultimate issue to be decided by the finder of fact. While a trial court may preliminarily screen a claim to determine whether the alleged conduct is so extreme and outrageous as to permit recovery—and enter summary judgment ***against*** a plaintiff when a claim does not reach this requirement and thus fails as a matter of law—when reasonable persons might differ the question of whether the conduct at issue is sufficiently extreme and outrageous to merit recovery is for the jury, not the judge. *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009), citing *Norman v. Gen. Motors Corp.*, 628 F. Supp. 702, 704-705 (D. Nev. 1986) ("The Court determines whether the defendant's conduct may be regarded as extreme and outrageous as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability.").[35]

Rather than "extreme and outrageous" conduct, the actual record before the Court shows that Defendants accurately reported the successful criminal prosecution of Ferm. Defendants attended court hearings and reviewed Ferm's Plea Agreement, and at the time they made their reports KLAS had been informed directly by the Attorney General that Ferm was one of many "convictions" the State had obtained in its prosecution of people preying upon homeowners. KLAS's coverage of Jack Ferm and the U.S. Justice Foundation was just one of the many aspects it covered under a broad umbrella of mortgage-related crimes, prosecutions, investigations, etc. App. Exh. 1 at ¶17-22, 24-27

---

[35] *See also* RESTATEMENT (SECOND) OF TORTS § 46, Illus. h, *Outrageous Conduct Causing Severe Emotional Distress* (1979) ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."); *Smith v. Montgomery Ward & Co., Inc.*, 567 F. Supp. 1331, 1335 (D. Colo. 1983) (explaining that issues relating to the outrageous conduct claim were factual and were to be resolved by a jury according to the conscience of the community).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

App Exh. 9 at 5-12.  These stories were part of an overall station effort to address the housing crisis called "Desert Underwater" which began with a series of weekly stories with accompanying web content and culminated with an hour long documentary.  *Id*.  That effort won broadcasting's most prestigious award, the Peabody.  *Id*.

The mere reporting of Ferm's legal plights is not outrageous.  *See Lowe v. Hearst Communications, Inc.*, 414 F. Supp. 2d 669 (W.D. Tex. 2006), judgment aff'd, 487 F.3d 246 (5th Cir. 2007) (dismissing IIED claim because the media publication of truthful, but embarrassing, information cannot constitute extreme and outrageous conduct).  The successful prosecution of Ferm was a newsworthy event in Las Vegas, particularly because of Ferm's injection into the mortgage-foreclosure crisis debate.  While Ferm now quibbles with the verbiage used by Defendants, Ferm has previously admitted his guilt, admitted that the State could prove its criminal case against him, and has agreed that at some point he will be sentenced for his wrong-doing. The use of technically imprecise terms is not considered "extreme and outrageous" and will not support an IIED claim.[36] *See Pottenger v. Potlatch Corp.*, 329 F.3d 740 (9th Cir. 2003) (statements allegedly inferring that employee was discharged for misconduct or because he was "deadwood," and that incorrectly stated that he "elected" early retirement did not rise to the level of "very extreme conduct" required to support a finding intentional infliction of emotional distress).  Equally fatal is Ferm's complaint that Defendants referred to him as a "notable conviction" because that is how the Nevada Attorney General characterized Ferm's Plea Agreement in a communication between the Nevada Attorney General and Defendants.  (Exhibit 8).

Similarly, describing Ferm as a "scam" is not outrageous or extreme.  For instance, in *Cook v. Winfrey*, a suit for intentional infliction of emotional distress against celebrity Oprah Winfrey, the court held that statements by Ms. Winfrey calling the plaintiff a "liar" and referring to his lawsuit as

---

[36]  Similarly, courts also conclude that the use of technically inaccurate legal terms will not support relief on a defamation claim, as long as the report itself remains full, fair and accurate.  *See, e.g., Rouch v. Enquirer & News of Battle Creek*, 487 N.W.2d 205, 260 (1992) (the substantial truth doctrine is typically invoked where there are minor inaccuracies and "technically incorrect or flawed use of legal terminology." . . . Although the popular sense of a legal term may not be technically accurate, the Court stated that "if technical and common parlance yield different interpretations of the same word, the constitutionally required breathing space affords protection of the writer's choice."); *Ricci v. Venture Magazine, Inc.*, 574 F. Supp. 1563, 1567 (D. Mass. 1983) ("a journalist's report need not describe legal proceedings in technically precise language."); *Seymore v. A.S. Abell Co.*, 557 F. Supp. 951, 956 (D. Md. 1983) ("technical errors in legal nomenclature in reports on matters involving violation of the law are of no legal consequence.").

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

"a pack of lies" on her nationally syndicated talk show were not "extreme and outrageous" as required by the tort.  *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998).

Even in the unlikely event this Court concludes that the alleged conduct is sufficiently extreme and outrageous to maintain a prima facie case for IIED, it would be improper to enter summary judgment in favor of Ferm.  Instead, that is a determination to be made by the jury.  *Chehade Refai*, 614 F. Supp. 2d at 1121; *Norman*, 628 F. Supp. at 704-705.  Neither the evidence nor the law support Ferm's motion, and if must therefore be denied.

### 2.  The Evidence Does Not Establish That Defendants Intended to Cause Ferm Emotional Harm

Ferm has not established intent or reckless disregard.  Instead, he offers hyperbole and conjecture.  Ferm guesses that Defendants wrote their articles with the intent to cause him mental injury.  The reality is that McCarty and Kanigher intended merely to report a newsworthy criminal proceeding to the public.  *See generally* App. Exh. 1 and App. Exh. 9.  McCarty and Kanigher both deny making the statements knowing that they were false or that they were made with reckless disregard to their truth or that they were prepared with the intent to cause Ferm mental or emotional harm.  Defendants believed he was a "notable conviction" based on their review of the Plea Agreement, and the Nevada Attorney General confirmed it.  This fact alone precludes summary judgment because intent and reckless disregard are both based on the <u>subjective</u> understanding of the reported information.

Defendants' news stories were not fabricated or a product of Defendants' imagination.  They were, at worst, a variance in legal terminology.  Ferm has not carried his burden of establishing the absence of a question of fact on this issue.

### 3.  The Evidence Does Not Establish That Ferm Is Suffering From Severe Emotional Distress

Ferm has not established that he is in fact suffering from severe emotional distress.  This is insufficient.  In Nevada, a plaintiff is required to demonstrate that he has suffered some physical manifestation of emotional distress in order to support an award of emotional damages.  *See, e.g.*, *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) ("[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1  physical impact must have occurred or, in the absence of physical impact, proof of `serious emotional

2  distress' causing physical injury or illness must be presented."). Moreover, the law requires that a

3  claimed mental injury must be significant. *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D.

4  Nev. 1993) (feelings of "inferiority, headaches [and] irritability" are not enough to amount to severe

5  emotional distress); *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993) (explaining that

6  insomnia and general physical or emotional discomfort are insufficient). Finally, even if Ferm had

7  presented sufficient evidence to create a factual issue, summary judgment in his favor would be

8  inappropriate because this is a factual determination to be made by the jury. RESTATEMENT

9  (SECOND) OF TORTS § 46, Illus. j, *Outrageous Conduct Causing Severe Emotional Distress* (1979)

10 ("It is for the court to determine whether on the evidence severe emotional distress can be found; it is

11 for the jury to determine whether, on the evidence, it has in fact existed.").[37]

12      In his motion for summary judgment, Ferm offers his conclusory assertion he is "under

13 stress" which he attributes to Defendants' stories. Doc. 219-6 at 39. There is simply no competent

14 basis offered to suggest, much less show the absence of a question of fact, that stress, if he is

15 experiencing it, is caused by Defendants rather than his indictment, plea agreement, restitution

16 obligation and eventual sentencing pursuant to his Plea Agreement. App. Exh. 29. To be sure, Ferm

17 has provided no discovery on this issue (refusing all of Defendant's requests) and offers no

18 competent medical evidence establishing he is suffering from severe emotional distress.

19      Further, Ferm does not provide the Court with any admissible evidence regarding his claimed

20 mental injuries. Ferm's own opinions and diagnoses of his alleged medical ailments are inadmissible

21 because Ferm is a lay witness who is not qualified to offer opinion testimony on medical issues. FED.

22 R. EVID. 701(c); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[M]edical diagnoses are

23 beyond the competence of lay witnesses and therefore do not constitute competent evidence.").

24 Ferm's complaints that he suffers from stress, which are the only admissible evidence before the

25

26      [37] *See also Hagerty v. L & L Marine Servs., Inc.*, 788 F.2d 315, 318 (5th Cir.), modified on other grounds, 797 F.2d 256

27 (5th Cir. 1986) (explaining that it is for the jury to decide questions such as the existence, severity and reasonableness of claimed emotional distress); *Anthan v. Prof'l Air Traffic Controllers*, 672 F.2d 706, 709-711 (8th Cir. 1982) (stating that it is a jury issue to determine whether severe emotional distress exists; although proof of emotional distress could be inferred from extreme and outrageous conduct, this inference was simply evidence and did not establish the necessary proof of emotional distress as a matter of

28 law).

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1   Court, are insufficient to state a prima facie case let alone obtain summary judgment.  *See Miller v.*

2   *Jones*, 970 P.2d 571, 577 (Nev. 1998) ("We conclude that Miller's brief depositional testimony

3   regarding depression was insufficient to raise a genuine issue of material fact as to whether he

4   suffered severe emotional distress.").

5        Ferm's sole "scientific support" for his claims is a prescription.[38]  No admissible evidence is

6   offered to tie the medication to any form of emotional distress.  Ferm's claimed emotional injuries are

7   facially insufficient as a matter of law.  *See Alam*, 819 F. Supp. at 911; *Chowdhry*, 851 P.2d at 462;

8   *Kennedy v. Town of Billerica*, 617 F.3d 520, 530-31 (1st Cir. 2010) (plaintiff's alleged fear of going

9   to court, fear of the police, nightmares, and loss of sleep did not meet the severity of harm

10  requirement to find liability on an IIED claim); *Jones v. Warner*, 686 S.E.2d 835, 839 (Ga. App. Ct.

11  2009) (restaurant patron's purported anxiety, nervousness, sleeplessness, and irritability for one

12  month resulting from alleged false arrest did not rise to the level of severe emotional distress

13  necessary for actionable IIED claim); *Ainsworth v. Newmont Mining Corp.*, 2012 WL 987222 *4

14  (Nev. 2012)(unpublished) (physical symptoms of stress, sleeplessness and loss of appetite are

15  insufficient to establish severe emotional distress); *Bradford v. Gleason*, 2009 WL 2461270, at *8

16  (N.J. Super. Aug. 13, 2009) (finding that a plaintiff may not recover for "idiosyncratic emotional

17  distress that would not be experienced by average persons").

18        Further, Ferm's claims of suffering severe emotional distress are also belied by the many

19  similar claims he has asserted over the years.  App. Exh.16, 40, 41, 42/  The fact that he frequently

20  asserts IIED claims seriously undermines his credibility.  1 McCormick on Evidence at § 196

21  (stating evidence plaintiff has filed very similar prior lawsuits is admissible if the purpose is to

22  expose fraudulent claims).    Ferm has not established any emotional injury whatsoever, let alone a

23  severe emotional injury which is what is required to maintain an IIED claim in Nevada under these

24  circumstances.  Ferm's reliance on speculation as to the cause of his need for medication fails as a

25  matter of law, and his motion must be denied.

26  ///

27
28  [38]   Metformin is apparently prescribed to treat Type 2 Diabetes.  Which Ferm claims, but has not proven, he has.  He certainly has
    offered no evidence as to the *cause* of his diabetes.

4.      **The Evidence Does Not Establish That Ferm's Claimed Emotional and Mental Injuries Were Caused By Defendants**

Ferm's attempt to establish causation with a motion for summary judgment also fails.  Ferm has not presented any meaningful evidence on the subject, and even if he had presented evidence once again such a determination would be inappropriate as causation is to be decided by the finder of fact.

Further, there is an obvious question of fact whether any distress Ferm may be feeling is a result of Defendants' reports.  The reports Ferm complains of in this case were published in November of 2011.  At the time of those reports, Ferm's life was in chaos.  His business had been ordered shuttered by a federal judge and a state court judge.  He had been found in contempt (twice), sued by the Bar, sued in a class action by his clients, and indicted on multiple counts of theft by material misrepresentation (if convicted on all, could face decades in prison).  He agreed to plea nolo contendre (which is for all practical purposes identical to pleading guilty and is considered a conviction) and pay nearly $200,000 in restitution.  Additionally, Ferm had recently sued Bob Massi for the same conduct he now accuses Defendants, and in numerous prior lawsuits he has asserted claims for emotional distress.  All of these facts raise issues regarding causation which will require further discovery should Ferm's claim survive Defendants' motion to dismiss.

Ferm's prior lawsuits seeking damages on IIED claims, as well his arrest and the numerous contempt findings, are all relevant because they tend to prove an alternate cause for any emotional distress he claims to have suffered since the events giving rise to this suit.  *Louden v. City of Whittier*, 2005 WL 6000502 at *2 (C.D. Cal. Oct. 27, 2005).  If Ferm suffered no new or different symptoms after the incident in this case than he was already suffering, he should not be permitted to recover.  *Id*.  The court in *York v. Amer. Tel. & Tel. Co* addressed the specific issue presented here and wrote:

> In this case, the district court did not abuse its discretion by admitting the evidence [of York's prior psychiatric history].  York sought damages for emotional distress allegedly suffered as a result of not obtaining the positions that she sought.  She contended that she had become emotionally strained and had lost her self-esteem and enjoyment of life.  The defendants maintained that much, if not all, of York's emotional distress was rooted in her past, stemming from events that occurred well before her unsuccessful bid for the Operating Engineer position in 1992.  In particular, they note that her hospitalization in a psychiatric facility in 1988 was necessitated by various sources of stress in her life.  Because York chose to raise a claim of emotional

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

> distress, it was entirely appropriate for the court to allow the defendants to introduce evidence of alternate or multiple causes of such distress. The jury must be permitted to consider such relevant evidence of causation where damages are claimed for emotional distress.

95 F.3d 948, 957 (10th Cir. 1996).

The evidence already before the Court raises significant questions regarding Ferm's credibility and vulnerability to emotional distress. Ferm's credibility can be challenged based on the large number of prior IIED cases Ferm has filed and the lack of any credible medical evidence to support his claims. *Jones v. City of Odessa*, 574 S.W.2d 850, 854 (Tex. Ct. App. 1978) (a jury has the right to pass on the plaintiff's credibility and to find that the plaintiff suffered no mental pain and anguish, where the plaintiff testifies as to his or her physical condition and that he or she is under a physician's care but there is no medical testimony to establish any causation between the condition and the defendant's wrongful acts or omissions). Should this case proceed to discovery, Defendants intend on further developing this area of impeachment. Conversely, in the event Ferm is telling the truth about his claimed emotional distress, then Defendants are entitled to challenge that his vulnerability to such injuries negates causation. *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 397, 89 Cal. Rptr. 78, 90 (Cal. Ct. App. 1970) (a explaining that a plaintiff's vulnerability to emotional distress goes to the question of causation and causation is a question of fact for the jury).

Ferm has failed to present even a prima facie showing that his claimed emotional injuries were caused by Defendants and, even if he had, Defendants are entitled to pursue areas of impeachment on this subject so that the jury can make a proper determination.

**F.     DEFENDANTS ARE ENTITLED TO TAKE FURTHER DISCOVERY TO PROVE AND SUPPORT THEIR DEFENSES**

Fed. R. Civ. Pro. 56(d) gives the court reviewing a motion for summary judgment broad discretion to deny or continue the motion if the nonmoving party needs time to discover essential facts. *California Union Ins. Co. v. American Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990). Although a party *may* move for summary judgment at any time district courts should grant a Rule 56(d) motion when the nonmoving party has not had a "realistic opportunity to pursue discovery relating to its theory of the case." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). In fact, where the nonmoving party has

1    not had the opportunity to discover any information essential to its theory of the case, the Supreme

2    Court has "restated the rule as requiring, rather than merely permitting, discovery." *Metabolife Int'l,*

3    *Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir. 2001)(citing *Anderson,* 477 U.S. at 250 n.5); *St. Surin v.*

4    *Virgin Islands Daily News, Inc.,* 21 F.3d 1309, 1314 (3d Cir. 1994)(holding that summary judgment

5    was improper where there were outstanding discovery issues related to falsity and malice that would

6    have affected the outcome of the case).  To be entitled to Rule 56(d) discovery, the nonmoving party

7    must identify facts showing there is a genuine issue for trial. *Hall v. State of Hawaii*, 791 F.2d 759,

8    761 (9th Cir. 1986).

9         The Declaration of Todd E. Kennedy App. Ex. 44, demonstrates ample facts that would

10   require discovery should this court not be inclined to bar Plaintiff's claims as a matter of law. App.

11   Ex 44.

12   **V.    CONCLUSION**

13        For the foregoing reasons, Defendants request that this Court deny Plaintiff's Motion for

14   Summary Judgment because Plaintiff is not entitled to judgment as a matter of law.

15        Dated this 28th day of August, 2015.

16                                              BLACK & LOBELLO

17

18                                    By:

19                                         Todd E. Kennedy, Nevada Bar No. 6014
                                           Black & Lobello
20                                         10777 West Twain Avenue, Third Floor
                                           Las Vegas, NV 89135
21

22

23

24

25

26

27

28

BLACK & LOBELLO
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BLACK & LOBELLO**
10777 West Twain Avenue, Suite 300
Las Vegas, Nevada 89135
702-869-8801 FAX: 702-869-2669

## **CERTIFICATE OF SERVICE**

I certify that on the ___day of August, 2015, I caused to be served a true and correct copy of the foregoing Opposition to Ferm's Motion for Partial Summary Judgment And Request For Relief Pursuant to F.R.C.P. 56(d) by mailing in a first class, postage-paid envelope to the following:

Jack Ferm
1812 W. Sunset Blvd., Suite 1-134
St. George, Utah 84770

_____
An Employee of Black & Lobello